Sealed

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 19 _____ 25046 Cv- Williams



FILED BY ____ D.C.

DEC 09 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ON POINT GLOBAL LLC, a limited liability company, also d/b/a On Point,

ON POINT EMPLOYMENT LLC, a limited liability company,

ON POINT GUIDES LLC, f/k/a Rogue Media Services LLC, a limited liability company,

DG DMV LLC, a limited liability company,

ON POINT DOMAINS LLC, a limited liability company,

FINAL DRAFT MEDIA LLC, a limited liability company,

WALTHAM TECHNOLOGIES LLC, a limited liability company,

CAMBRIDGE MEDIA SERIES LLC, f/k/a License America Media Series LLC, a limited liability company,

ISSUE BASED MEDIA LLC, a limited liability company,

BELLA VISTA MEDIA LTD., a limited liability company, also d/b/a BV Media,

CARGANET S.A., a corporation, also d/b/a G8 Labs,

DRAGON GLOBAL LLC, a limited liability company,

DRAGON GLOBAL MANAGEMENT LLC, a limited liability company

**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF**

**<u>Filed Under Seal</u>**

1

DRAGON GLOBAL HOLDINGS LLC, a limited liability company,

DIRECT MARKET LLC, a limited liability company,

BLUEBIRD MEDIA LLC, a limited liability company,

BORAT MEDIA LLC, a limited liability company,

BRING BACK THE MAGIC MEDIA LLC, a limited liability company,

CHAMETZ MEDIA LLC, a limited liability company,

CHELSEA MEDIA LLC, a limited liability company,

COINSTAR MEDIA LLC, a limited liability company,

DOMAIN DEVELOPMENT STUDIOS LLC, a limited liability company,

DOMAIN DIVIDENDS MEDIA LLC, a limited liability company,

EAGLE MEDIA LLC, a limited liability company,

FALCON MEDIA LLC, a limited liability company,

GNR MEDIA LLC, a limited liability company,

ISLAND MEDIA LLC, a limited liability company,

LEATHERBACK MEDIA GROUP LLC, a limited liability company,

MACAU MEDIA LLC, a limited liability company,

CEG MEDIA LLC, f/k/a Matzoh Media LLC, a limited liability company,

MBL MEDIA LTD. INC., a corporation,

ORANGE AND BLUE MEDIA LLC, a limited liability company,

ORANGE GROVE MEDIA LLC, a limited liability
company,

PANTHER MEDIA LLC, a limited liability company,

PIRATE MEDIA LLC, a limited liability company,

PIVOT MEDIA GROUP LLC, a limited liability
company,

PJ GROOVE MEDIA LLC, a limited liability company,

SANDMAN MEDIA GROUP LLC, a limited liability
company,

SHADOW MEDIA LLC, a limited liability company,

SKYLAR MEDIA LLC, a limited liability company,

SLAYER BILLING LLC, a limited liability company,

SPARTACUS MEDIA LLC, a limited liability company,

VERY BUSY MEDIA LLC, a limited liability company,

WASABI MEDIA LLC, a limited liability company,

YAMAZAKI MEDIA LLC, a limited liability company,

BRONCO FAMILY HOLDINGS LP, a/k/a Bronco
Holdings Family LP, a limited partnership,

BAL FAMILY LP, a limited partnership,

CARDOZO HOLDINGS LLC, a limited liability
company,

714 MEDIA LTD., a corporation,

MAC MEDIA LTD., a corporation,

ON POINT CAPITAL PARTNERS LLC, a limited
liability company,

3

LICENSE AMERICA MANAGEMENT LLC, a limited
liability company,


LICENSE AMERICA HOLDINGS LLC, a limited
liability company,

BLACKBIRD MEDIA LLC, a limited liability company,

BURTON KATZ, individually and as an officer of Bella
Vista Media Ltd., also d/b/a BV Media, Bronco Family
Holdings LP, a/k/a Bronco Holdings Family LP,
Cambridge Media Series LLC, f/k/a License America
Media Series LLC, DG DMV LLC, Direct Market LLC,
Falcon Media LLC, GNR Media LLC, Issue Based Media
LLC, On Point Global LLC, also d/b/a On Point, On Point
Guides LLC f/k/a Rogue Media Services LLC, Orange
Grove Media LLC, and Waltham Technologies LLC,

BRENT LEVISON, individually and as an officer of BAL
Family LP, Bella Vista Media Ltd., also d/b/a BV Media,
Bring Back the Magic Media LLC, Cambridge Media
Series LLC, f/k/a License America Media Series LLC,
Chametz Media LLC, Direct Market LLC, Eagle Media
LLC, GNR Media LLC, MBL Media Ltd. Inc., On Point
Global LLC, also d/b/a On Point, and On Point Guides
LLC, f/k/a Rogue Media Services LLC,

ROBERT ZANGRILLO, individually and as an officer of
DG DMV LLC, Dragon Global LLC, Dragon Global
Management LLC, Dragon Global Holdings LLC, On
Point Capital Partners LLC, and On Point Global LLC,
also d/b/a On Point,

ARLENE MAHON, individually and as an officer of
Cambridge Media Series LLC f/k/a License America
Media Series LLC, Issue Based Media LLC, On Point
Global LLC, also d/b/a On Point, PJ Groove Media LLC,
and Waltham Technologies LLC,

ELISHA ROTHMAN, individually and as an officer of
Cambridge Media Series LLC, f/k/a License America
Media Series LLC, Direct Market LLC, Domain
Development Studios LLC, Mac Media Ltd., On Point
Global LLC, also d/b/a On Point, On Point Guides LLC

4

f/k/a Rogue Media Services LLC, Orange Grove Media
LLC, and Yamazaki Media LLC, and

CHRISTOPHER SHERMAN, individually and as an
officer of 714 Media Ltd., Coinstar Media LLC, Direct
Market LLC, Domain Development Studios LLC, GNR
Media LLC, Pirate Media LLC, and On Point Global
LLC, also d/b/a On Point,

       Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.     The FTC brings this action under Section 13(b) of the Federal Trade Commission
Act ("FTC Act"), 15 U.S.C. § 53(b), to obtain temporary, preliminary, and permanent injunctive
relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement
of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of
Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),
and 1345.

3.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (c)(1), (c)(2), (c)(3),
and (d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.     The FTC is an independent agency of the United States Government created by
statute. 15 U.S.C. §§ 41–58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),
which prohibits unfair or deceptive acts or practices in or affecting commerce.

5.     The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies.  15 U.S.C. § 53(b).

## DEFENDANTS

6.      Defendant On Point Global LLC also d/b/a On Point ("**On Point Global**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  On Point Global transacts or has transacted business in this District and throughout the United States.

7.      Defendant On Point Employment LLC ("**On Point Employment**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  On Point Employment transacts or has transacted business in this District and throughout the United States.

8.      Defendant On Point Guides LLC f/k/a Rogue Media Services LLC ("**On Point Guides**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  On Point Guides transacts or has transacted business in this District and throughout the United States.

9.      Defendant DG DMV LLC ("**DG DMV**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  DG DMV transacts or has transacted business in this District and throughout the United States.

10.      Defendant On Point Domains LLC ("**On Point Domains**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  On Point Domains transacts or has transacted business in this District and throughout the United States.

6

11.     Defendant Final Draft Media LLC ("**Final Draft Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Final Draft Media transacts or has transacted business in this District and throughout the United States.

12.     Defendant Waltham Technologies LLC ("**Waltham Technologies**") is a Florida limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Waltham Technologies transacts or has transacted business in this District and throughout the United States.

13.     Defendant Cambridge Media Series LLC f/k/a License America Media Series LLC ("**Cambridge Media Series**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Cambridge Media Series transacts or has transacted business in this District and throughout the United States.

14.     Defendant Issue Based Media LLC ("**Issue Based Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Issue Based Media transacts or has transacted business in this District and throughout the United States.

15.     Defendant Bella Vista Media Ltd. also d/b/a BV Media ("**BV Media**") is a Costa Rican entity with its principal place of business at 350 NE 60th St., Miami, FL 33137.  BV Media transacts or has transacted business in this District and throughout the United States.

16.     Defendant Carganet S.A. also d/b/a G8 Labs ("**G8 Labs**") is a Uruguayan entity with its principal place of business at 350 NE 60th St., Miami, FL 33137.  G8 Labs transacts or has transacted business in this District and throughout the United States.

17.     Defendant Dragon Global LLC ("**Dragon Global**") is a Delaware limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Dragon

Global transacts or has transacted business in this District and throughout the United States.

18.     Defendant Dragon Global Management LLC ("**Dragon Global Management**") is

a Delaware limited liability company with its principal place of business at 350 NE 60th St.,

Miami, FL 33137.  Dragon Global Management transacts or has transacted business in this

District and throughout the United States.

19.     Defendant Dragon Global Holdings LLC ("**Dragon Global Holdings**") is a

Delaware limited liability company with its principal place of business at 350 NE 60th St.,

Miami, FL 33137.  Dragon Global Holdings transacts or has transacted business in this District

and throughout the United States.

20.     Defendant Direct Market LLC ("**Direct Market**") is a Delaware limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Direct

Market transacts or has transacted business in this District and throughout the United States.

21.     Defendant Bluebird Media LLC ("**Bluebird Media**") is a Nevada limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Bluebird

Media transacts or has transacted business in this District and throughout the United States.

22.     Defendant Borat Media LLC ("**Borat Media**") is a Delaware limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Borat Media

transacts or has transacted business in this District and throughout the United States.

23.     Defendant Bring Back the Magic Media LLC ("**BBTMM**") is a Delaware limited

liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.

BBTMM transacts or has transacted business in this District and throughout the United States.

24.     Defendant Chametz Media LLC ("**Chametz Media**") is a Delaware limited

liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Chametz Media transacts or has transacted business in this District and throughout the United States.

25.     Defendant Chelsea Media LLC ("**Chelsea Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Chelsea Media transacts or has transacted business in this District and throughout the United States.

26.     Defendant Coinstar Media LLC ("**Coinstar Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Coinstar Media transacts or has transacted business in this District and throughout the United States.

27.     Defendant Domain Development Studios LLC ("**Domain Development Studios**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Domain Development Studios transacts or has transacted business in this District and throughout the United States.

28.     Defendant Domain Dividends Media LLC ("**Domain Dividends Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Domain Dividends Media transacts or has transacted business in this District and throughout the United States.

29.     Defendant Eagle Media LLC ("**Eagle Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Eagle Media transacts or has transacted business in this District and throughout the United States.

30.     Defendant Falcon Media LLC ("**Falcon Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Falcon Media transacts or has transacted business in this District and throughout the United States.

31.     Defendant GNR Media LLC ("**GNR Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  GNR Media transacts or has transacted business in this District and throughout the United States.

32.     Defendant Island Media LLC ("**Island Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Island Media transacts or has transacted business in this District and throughout the United States.

33.     Defendant Leatherback Media Group LLC ("**Leatherback Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Leatherback Media transacts or has transacted business in this District and throughout the United States.

34.     Defendant Macau Media LLC ("**Macau Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Macau Media transacts or has transacted business in this District and throughout the United States.

35.     Defendant CEG Media LLC f/k/a Matzoh Media LLC ("**CEG Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  CEG Media transacts or has transacted business in this District and throughout the United States.

36.     Defendant MBL Media Ltd. Inc. ("**MBL Media**") is a Delaware corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137.  MBL Media transacts or has transacted business in this District and throughout the United States.

37.     Defendant Orange and Blue Media LLC ("**Orange and Blue Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Orange and Blue Media transacts or has transacted business in this District

and throughout the United States.

38.     Defendant Orange Grove Media LLC ("**Orange Grove Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Orange Grove Media transacts or has transacted business in this District and throughout the United States.

39.     Defendant Panther Media LLC ("**Panther Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Panther Media transacts or has transacted business in this District and throughout the United States.

40.     Defendant Pirate Media LLC ("**Pirate Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Pirate Media transacts or has transacted business in this District and throughout the United States.

41.     Defendant Pivot Media Group LLC ("**Pivot Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Pivot Media transacts or has transacted business in this District and throughout the United States.

42.     Defendant PJ Groove Media LLC ("**PJ Groove Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  PJ Groove Media transacts or has transacted business in this District and throughout the United States.

43.     Defendant Sandman Media Group LLC ("**Sandman Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Sandman Media transacts or has transacted business in this District and throughout the United States.

44.     Defendant Shadow Media LLC ("**Shadow Media**") is a Delaware limited liability

company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Shadow Media transacts or has transacted business in this District and throughout the United States.

45.     Defendant Skylar Media LLC ("**Skylar Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Skylar Media transacts or has transacted business in this District and throughout the United States.

46.     Defendant Slayer Billing LLC ("**Slayer Billing**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Slayer Billing transacts or has transacted business in this District and throughout the United States.

47.     Defendant Spartacus Media LLC ("**Spartacus Media**") is a Nevada limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Spartacus Media transacts or has transacted business in this District and throughout the United States.

48.     Defendant Very Busy Media LLC ("**Very Busy Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Very Busy Media transacts or has transacted business in this District and throughout the United States.

49.     Defendant Wasabi Media LLC ("**Wasabi Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Wasabi Media transacts or has transacted business in this District and throughout the United States.

50.     Defendant Yamazaki Media LLC ("**Yamazaki Media**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137. Yamazaki Media transacts or has transacted business in this District and throughout the United States.

51.    Defendant Bronco Family Holdings LP a/k/a Bronco Holdings Family LP ("**Bronco Family Holdings**") is a Bahamas partnership with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Bronco Family Holdings transacts or has transacted business in this District and throughout the United States.

52.    Defendant BAL Family LP ("**BAL Family**") is a Delaware partnership with its principal place of business at 350 NE 60th St., Miami, FL 33137.  BAL Family transacts or has transacted business in this District and throughout the United States.

53.    Defendant Cardozo Holdings LLC ("**Cardozo Holdings**") is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Cardozo Holdings transacts or has transacted business in this District and throughout the United States.

54.    Defendant 714 Media Ltd. ("**714 Media**") is a Belize corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137.  714 Media transacts or has transacted business in this District and throughout the United States.

55.    Defendant Mac Media Ltd. ("**Mac Media**") is a Belize corporation with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Mac Media transacts or has transacted business in this District and throughout the United States.

56.    Defendant On Point Capital Partners LLC ("**On Point Capital Partners**") is a Delaware limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  On Point Capital Partners transacts or has transacted business in this District and throughout the United States.

57.    Defendant License America Management LLC ("**License America Management**") is a Delaware limited liability company with its principal place of business at

13

350 NE 60th St., Miami, FL 33137.  License America Management transacts or has transacted business in this District and throughout the United States.

58.     Defendant License America Holdings LLC ("**License America Holdings**") is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  License America Holdings transacts or has transacted business in this District and throughout the United States.

59.     Defendant Blackbird Media LLC ("**Blackbird Media**") is a Nevis limited liability company with its principal place of business at 350 NE 60th St., Miami, FL 33137.  Blackbird Media transacts or has transacted business in this District and throughout the United States.

60.     The Defendants described in Paragraphs 6 through 59 are collectively referred to as "**Corporate Defendants**."

61.     Defendant Burton Katz  ("**Katz**") is the founder, owner, and chief executive officer of On Point Global, the founder, owner, and Manager of DG DMV, the owner and manager of Issue Based Media, a director and officer of BV Media, a partner and officer of Dragon Global, owner and member of Bronco Family Holdings, Cambridge Media Series, Direct Market, Falcon Media, GNR Media, On Point Guides, and Orange Grove Media, and the *de facto* principal behind the Transaction Entities (as defined in Paragraph 83) that act as fronts for Corporate Defendants' websites.

62.     Katz is the mastermind behind the Corporate Defendants' operation.  He signs documents on behalf of Corporate Defendants, including corporate incorporation and registration documents.  Katz has authority over the websites offering the services that generate revenue for the Corporate Defendants.  Katz has obtained merchant accounts for Transaction Entities (as defined in Paragraph 83) and signed the application for a mail drop used by the Corporate

14

Defendants.  He is a signatory on numerous depository accounts containing funds from the Corporate Defendants' sales of guides and customer data.  Since 2016, Katz has personally received more than $2.5 million in distributions and salary from the Corporate Defendants.

63.    At all times material to this Complaint, acting alone or in concert with others, Katz has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Katz resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

64.    Defendant Brent Levison ("**Levison**") is the chief administrative officer, general counsel, and co-owner of On Point Global, the current or former acting operations manager of Bella Vista Media Ltd., and a member and manager of BAL Family, BBTMM, Cambridge Media Series, Cardozo Holdings, Chametz Media, Direct Market, Eagle Media, GNR Media, MBL Media, and On Point Guides.  Levison has organized and established Transaction and Operating Entities (as defined in Paragraphs 83 and 84), and signs legal documents, including incorporation and registration documents, on their behalf.

65.    Levison manages several aspects of the Corporate Defendants' operation. Levison's LinkedIn profile states that he "oversees the e-commerce and product fulfillment teams" for On Point Global and manages the company's "administrative functions."  Levison has opened mail drop accounts and obtained merchant accounts for Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use.  He is a signatory on numerous depository accounts containing funds from the Corporate Defendants' sales of guides and customer data.  Since 2016, Levison has personally received more than $1 million in distributions and salary from the Corporate Defendants.

15

66.     At all times material to this Complaint, acting alone or in concert with others, Levison has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Levison resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

67.     Defendant Robert Zangrillo ("**Zangrillo**") is the chairman, officer, and co-owner of On Point Global; an owner, officer, and partner of Dragon Global, Dragon Global Management, and Dragon Global Holdings; and a member and manager of DG DMV and On Point Capital Partners.  Zangrillo organized On Point Capital Partners in 2015 and raised venture capital funding for the Corporate Defendants' operation.  Zangrillo has signatory authority over at least two depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  Zangrillo's LinkedIn profile describes On Point's products as "reference guides, instructional books, and digital services," and notes that the company leverages consumer data gleaned through "premium and contextual domain names."  Zangrillo has personally received more than $2 million in distributions and salary from the Corporate Defendants.

68.     At all times material to this Complaint, acting alone or in concert with others, Zangrillo has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Zangrillo resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

69.     Defendant Arlene Mahon ("**Mahon**") is the senior vice president of finance and accounting for On Point Global; the senior vice president, chief financial officer, officer, and

owner of Waltham Technologies; the general manager for PJ Groove Media; and a manager for nearly every Transaction Entity and two Operating Entities (as defined in Paragraphs 83 and 84): Cambridge Media Series and Issue Based Media.

70.     Mahon has signatory authority over more than two dozen depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  In account opening documents for over 15 accounts held by Corporate Defendants at Regions Bank, Mahon used "arlene@issuebasedmedia.com" as her email address and identified her mailing address as 425 NW 26th Street, Miami, Florida.  Mahon has obtained a merchant account for a Transaction Entity (as defined in Paragraph 83) and signed the application for a mailbox used by the Corporate Defendants.

71.     At all times material to this Complaint, acting alone or in concert with others, Mahon has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Mahon resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

72.     Defendant Elisha Rothman ("**Rothman**") is a director of data processing, officer, and co-owner of On Point Global; a principal, officer, and owner of Direct Market; and an owner and manager of Cambridge Media Series, Domain Development Studios, Mac Media, On Point Guides, Orange Grove Media, and Yamazaki Media.

73.     Rothman has obtained merchant accounts for the Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use.  He is a signatory on numerous depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  In addition, Rothman has personally received more than $1 million in distributions and

salary from the Corporate Defendants.

74.     At all times material to this Complaint, acting alone or in concert with others, Rothman has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Rothman resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

75.     Defendant Christopher Sherman ("**Sherman**") is a director of data processing, officer, and manager of On Point Global; an officer and owner of Direct Market; and owner and manager of 714 Media, Coinstar Media, Domain Development Studios, GNR Media, and Pirate Media.

76.     Sherman has signatory authority over numerous depository accounts containing funds from Corporate Defendants' sales of guides and customer data.  Sherman has obtained merchant accounts for the Transaction Entities (as defined in Paragraph 83) and signed applications for mail drops they use.  In addition, Sherman is responsible for registering the domains Corporate Defendants use to gather consumers' personal information.

77.     At all times material to this Complaint, acting alone or in concert with others, Sherman has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Sherman resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

78.     Katz, Levison, Zangrillo, Mahon, Rothman, and Sherman are collectively referred to as "**Individual Defendants**."

79.     The Corporate and Individual Defendants are collectively referred to as

"**Defendants**."

**COMMON ENTERPRISE**

80.      Corporate Defendants have operated as a common enterprise while engaging in the deceptive and unfair acts and practices alleged below.  Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that commingled funds and employed unified marketing.

81.      Defendants frequently create and occasionally rename or abandon entities, leaving 52 currently active, known entities participating in their scheme.

82.      Each Corporate Defendant plays a role – whether transaction company, operating company, or holding company – in Defendants' unified web-marketing operation.

83.      The transaction entities are:  Bluebird Media; Borat Media; BBTMM; Chametz Media; Chelsea Media; Coinstar Media; Domain Development Studios; Domain Dividends Media; Eagle Media; Falcon Media; GNR Media; Island Media, Leatherback Media; Macau Media, CEG Media; MBL Media; Orange and Blue Media; Orange Grove Media; Panther Media; Pirate Media; Pivot Media; PJ Groove Media; Sandman Media; Shadow Media; Skylar Media; Slayer Billing; Spartacus Media; Very Busy Media; Wasabi Media; and Yamazaki Media (collectively referred to as "**Transaction Entities**").  The Transaction Entities obtain credit-card processing accounts and depository bank accounts to allow Defendants to receive money from consumers and lead buyers.  These Transaction Entities appear on Defendants' consumer-facing websites.  In numerous instances, Defendants' employees organized the Transaction Entities; in some instances, one or more Individual Defendants organized the Transaction Entities.

84.      The operating entities are:  BV Media; Cambridge Media Series; DG DMV; On

Point Domains; Final Draft Media; Direct Market; Dragon Global; Dragon Global Management; Dragon Global Holdings; Issue Based Media; On Point Employment; On Point Global; On Point Guides; G8 Labs; and Waltham Technologies (collectively referred to as "**Operating Entities**"). The Operating Entities carry out the business activities described below in Paragraphs 109-168.

85.     On Point Global, On Point Employment, and On Point Guides (collectively, "**On Point Defendants**"), are Defendants' primary umbrella companies and public face.  Defendants' operation uses unified "On Point" branding on social media, company websites, and job listings. The On Point Defendants hire and manage the writers and developers who create the guides and consumer-facing websites described below.  Individual Defendants Burton Katz, Robert Zangrillo, Elisha Rothman, and Brent Levison co-own the On Point Defendants.

86.     On Point Defendants' wholly owned subsidiaries BV Media and G8 Labs run Defendants' call center and web development office in Costa Rica and Uruguay, respectively. Employees of both BV Media and G8 Labs present themselves as On Point employees in social media postings, and each company presents itself as "an On Point company."  On Point Defendants' employee Karla Jinesta manages BV Media, and On Point Defendants' employee Ramiro Baluga manages G8 Labs.  The On Point Defendants' chief administrative officer and co-owner, Brent Levison, served as acting operations manager for BV Media when the On Point Defendants acquired BV Media.  The On Point Defendants' website lists job openings for both call-center operators in Costa Rica and web developers in Uruguay.  On Point Defendants' CEO, Burton Katz, stated in a LinkedIn post, "We have offices in Costa Rica and Uruguay with over 100 employees who elevate our front and back end development, graphics design, and call center support," and referred to the workers in Costa Rica and Uruguay as "our workforce."

87.     BV Media is a call center, handling calls with American consumers who

encountered Defendants' websites, in furtherance of Defendants' scheme.  BV Media handles

consumer complaints and issues or denies refunds to American consumers according to the On

Point Defendants' refund policies.  BV Media's company domain, bvmedia.com, is hosted on a

DNS server in Ashburn, Virginia, in the United States.

88.     G8 Labs creates web content targeting consumers who seek a service from an

American state or federal government agency, including a state motor vehicle or federal public

benefits agency.

89.     DG DMV, On Point Domains, and Final Draft Media hold and manage web

properties.  DG DMV is a Delaware limited liability company, owned by Individual Defendant

Burton Katz, that owns the URL DMV.com.  When Katz organized DG DMV in 2015, a Dragon

Global employee signed and filed its Florida registration papers and provided her Dragon Global

email address as the contact.  On Point Domains and Final Draft Media registered many of the

operation's consumer-facing domain names with Domains By Proxy, a service that shields the

identity of a domain name's registrant from public view.

90.     Waltham Technologies, Cambridge Media Series, and Issue Based Media handle

administrative tasks.  Waltham Technologies is listed on bank records as the employer of many

On Point employees.  Issue Based Media leases the operation's office space and pays its rent,

and holds some of the operation's mail-forwarding accounts.  Cambridge Media Series holds

central operating bank accounts and has jointly held leases with Issue Based Media.  Individual

Defendant and On Point Defendant chief executive officer Burton Katz owns Issue Based Media

and Cambridge Media Series; Individual Defendant and longtime On Point Defendant CFO

Arlene Mahon organized Waltham Technologies.

91.     Dragon Global, Dragon Global Management, and Dragon Global Holdings

(collectively, "**Dragon Global Defendants**") are Defendants' finance division. The Dragon Global Defendants' website presents these companies' business as venture capital funding. According to that website, the Dragon Global Defendants' sole "early stage control" investment is the On Point Defendants. The Dragon Global Defendants' website states that the venture capital firm has "controlling, majority ownership stakes" in and works "in close partnership" with On Point Global.

92.     The Dragon Global Defendants' three partners are On Point Defendants' Chairman Robert Zangrillo, CEO Burton Katz, and CFO Robert Bellack. The Dragon Global Defendants and On Point Global Defendants share the same board of advisors.

93.     Direct Market sells the consumer data the common enterprise gathered to lead buyers. Its website calls Direct Market "masters in building online audiences and data management" and says its "technology enables us to target the right persons at the right moment." Two of its five team members, Individual Defendants Chris Sherman and Elisha Rothman, are the On Point Defendants' directors of data processing. Individual Defendants and On Point Defendants' officers Burton Katz, Elisha Rothman, Chris Sherman, and Brent Levison co-own Direct Market.

94.     The holding companies are: Bronco Family Holdings, BAL Family, Cardozo Holdings, 714 Media, Mac Media, On Point Capital Partners, License America Management, License America Holdings, and Blackbird Media (collectively referred to as "**Holding Companies**"). The Holding Companies exist primarily to hold Defendants' assets, often offshore.

95.     Bronco Family Holdings is a Bahamas partnership consisting of Individual Defendant Burton Katz and his wife, Marjan Katz. Both Burton Katz and Marjan Katz are U.S.

citizens who reside in Miami, Florida. Bronco Family Holdings holds Katz's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. Bronco Family Holdings often uses Individual Defendant Katz's home address in Miami as its address when conducting financial transactions. It has no place of business or employees, other than Katz, and conducts no activities other than holding Katz's assets.

96.     BAL Family is a Delaware partnership in which Brent Levison is a partner. It receives proceeds from the operation described in this Complaint. BAL Family often uses Levison's home address in Miami as its address when conducting financial transactions. It has no place of business or employees, other than Levison, and conducts no activities other than holding Levison's assets.

97.     Cardozo Holdings is a Nevis limited liability company of which Brent Levison is the sole member and owner. Levison is a U.S. citizen who resides in Miami, Florida. Cardozo Holdings holds Levison's interests in the Corporate Defendants and receives proceeds from the operation described in this Complaint. It has no place of business or employees, other than Levison, and conducts no activities other than holding Levison's assets.

98.     714 Media is a Belize entity of which Chris Sherman is the sole member and owner. Sherman is a U.S. citizen who resides in Miami, Florida. 714 Media holds Sherman's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. It has no place of business or employees, other than Sherman, and conducts no activities other than holding Sherman's assets.

99.     Mac Media is a Belize entity of which Elisha Rothman is the sole member and owner. Rothman is a U.S. citizen who resides in Miami, Florida. Mac Media holds Rothman's interests in the Corporate Defendants and receives his proceeds from the operation described in

this Complaint.  It has no place of business or employees, other than Rothman, and conducts no activities other than holding Rothman's assets.

100.    On Point Capital Partners is a Delaware limited liability company of which Robert Zangrillo is the owner.  On Point Capital Partners holds Zangrillo's interests in the Corporate Defendants and receives his proceeds from the operation described in this Complaint. It has no place of business or employees, other than Zangrillo, and conducts no activities other than holding Zangrillo's assets.

101.    Blackbird Media, License America Management, and License America Holdings hold Corporate Defendants' assets.  License America Management is a Delaware limited liability company that is listed on corporate papers as a manager or member of other Corporate Defendants.  License America Holdings and Blackbird Media are Nevis limited liability companies that receive proceeds from Corporate Defendants, primarily in accounts in St. Lucia. License America Holdings often uses a post-office box in Miami held by Defendant Waltham Technologies as its address when conducting financial transactions.  Blackbird Media has paid Corporate Defendants' operating expenses from its account in St. Lucia.

102.    The Corporate Defendants share officers and employees.  Burton Katz is the CEO of the On Point Defendants and one of three partners in Dragon Global.  The second Dragon Global partner, Robert Zangrillo, is both Dragon Global's chairman and CEO and On Point's chairman.  Bob Bellack is On Point's current CFO and Dragon Global's third partner.  Arlene Mahon, On Point and Waltham Technologies' longtime CFO, is now On Point's senior VP of finance and accounting.  Elisha Rothman and Chris Sherman are On Point's directors of data processing and also the team leaders at Direct Market.  Brent Levison is On Point's chief administrative officer and general counsel, and he acted as BV Media's operations manager

when On Point acquired it.  Presently, On Point employee Karla Jinesta manages BV Media.
Ramiro Baluga is On Point's senior VP of publishing and CEO of G8 Labs.  On Point and
Dragon Global share the same roster of "advisors."  On Point's employees created the
Transaction Entities listed in Paragraph 83 to obtain merchant and bank accounts, and Arlene
Mahon oversees nearly all of Corporate Defendants' bank accounts.

103.    The Corporate Defendants share office space.  They have operated primarily from
two main Miami offices and one Boca Raton satellite offices.  The first Miami headquarters was
at 425 NW 26th St., which Issue Based Media leased from a third party and then "subleased" to
the transaction companies.  In 2016, Zangrillo acquired space for the second Miami office at 350
NE 60th St. through an LLC called Magic City Properties (a name Dragon Global uses for its
real estate developments) and leased it to Issue Based Media.  Some midlevel employees use the
recently opened satellite office at 900 N. Federal Highway in Boca Raton, which Issue Based
Media also leases and then "sublets" to the transaction companies.  The transaction companies
used mail drops across the country to obtain merchant accounts, but all of the mail drop
applications listed one of the two Miami addresses as the operation's physical address.  Some
Corporate Defendants use the two Miami-area office addresses interchangeably on corporate or
bank documents.

104.    The Corporate Defendants commingle funds.  They receive their revenues in the
Transaction-Entity accounts, then move the money into Operating-Entity accounts or distribute it to
business or personal holding accounts.  Wire transfer records show millions of dollars in inter-
company transfers over the past three years, including to the overseas Holding Companies.

105.    The Corporate Defendants use unified branding in non-consumer-facing
communications as "On Point" or "On Point Global."  The On Point subsidiaries, including BV
Media and G8, brand themselves as "an On Point company" and perform the operation's

25

essential functions under On Point's direction.  The operation's employees consistently use On Point's name on their personal LinkedIn profiles.  In contrast, the consumer-facing websites avoid giving any corporate markers except the transaction companies' names.  This practice keeps On Point's name off the deceptive websites and associated accounts.

106.    The Corporate Defendants operate under common control.  Burton Katz and Robert Zangrillo together own controlling shares in the enterprise's main Operating Entities (Dragon Global and On Point), with Elisha Rothman, Chris Sherman, and Brent Levison also holding shares in On Point and Direct Market.  The six individual defendants are signatories on dozens of the operation's bank accounts and the points of contact for many of its mail drops and merchant accounts.  Katz, Zangrillo, Rothman, Sherman, and Levison use their shell Holding Companies (Bronco Family Holdings, On Point Capital Partners, Mac Media, 714 Media, and Cardozo Holdings, respectively) to hold their interests in the other Corporate Defendants and to receive their share of the proceeds.

107.    Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Individual Defendants have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

108.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

109.    Since at least 2013, Defendants have operated websites that offer to conduct

government transactions (for example, renewing a driver's license, obtaining a fishing license, or checking eligibility for Section 8 housing benefits).

110.    Defendants obtain consumers' personal data and credit-card or debit-card information by promising the services described below.

111.    Defendants' sites do not deliver the services they tout.  Instead, they offer consumers who complete a transaction a PDF of general, publicly available information about the service the consumer sought.

112.    Defendants have published or caused to be published more than 200 consumer-facing sites to induce consumers to submit payment and personal information.  Their websites include but are not limited to those described and depicted in Paragraphs 113-168 below.

113.    Defendants' sites fall into categories: the largest segment offers motor vehicle-related transactions, including drivers' license services and car-registration services; some offer hunting and fishing licenses; and some offer eligibility determinations for public benefits, including housing vouchers, food stamps, or Medicaid.

114.    Within these categories, Defendants operate both "feeder" sites and "transaction" sites.  Feeder sites appear when consumers use search engines to seek information about certain government transactions, often but not always as sponsored links.  Feeder sites direct traffic to Defendants' transaction sites, which gather consumers' personal data and payment information.

115.    Defendants operate multiple nearly identical sites within each category (*e.g.*, motor vehicle-related transaction sites), which use similar wording, fonts, and graphics but various URLs (*e.g.*, license-driver.com, licenseguides.org, and registrationtags.com).

116.    Defendants purchase search-based advertising on search engine sites to place their sites high in the results when consumers search specified terms.  Defendants also use search-

engine optimization to ensure that their links appear high in the non-sponsored results when consumers search terms related to their websites.

117. For example, during test searches in the spring and summer of 2019, entering the phrases "section 8 housing apply," "renew Florida drivers license online," and "get fishing license" into online search engines brought up Defendants' sites as either the first- or second-listed link.

### Motor Vehicle-Related Websites

118. Consumers who click on Defendants' search-engine links for motor vehicle-related services often first reach a feeder site.

119. Defendants' most heavily used motor vehicle-related feeder site is DMV.com.

120. As shown below, DMV.com's home-page banner headline promises "The DMV Made Easier" and features links to "Renew your License," "Renew Car Registration," and similar services.



*DMV.com landing page, accessed Feb. 15, 2019*

121.    Clicking one of the links leads to another page on DMV.com specific to the selected service.  For example, clicking "Renew your License" leads to a page with a large-font hyperlink "Get Started Online with Drivers License Renewal Assistance" and a paragraph of text stating, "In most states, you can renew your drivers license online, by mail or in person. … During an online license renewal, you will be asked to identify yourself and pay the applicable service fees."  Further down, the page also includes a U.S. map in which each state is clickable.



*DMV.com Renew Driver's License page, accessed March 8, 2019*

122.    Clicking any of the "Get Started" links or one of the states in the clickable map brings consumers to one of Defendants' motor vehicle-related transaction sites (for example, license-driver.com, licenseguides.org, and registrationtags.com).

123.    Defendants' other motor vehicle-related feeder-site URLs often use the formulation "[state]driverslicense.org," "[state]driverslicenses.org," or a similar variation.  For example, they include floridadriverslicense.org, coloradodriverslicenses.org, californiadrivers.org, and texasdriverslicenses.org.

124.    These motor vehicle-related feeder sites include the outline of the referenced state and the URL at the top left, with the orange text, "Your source for [state] drivers information," a headline referencing the service the consumer searched for, and a large hyperlink reading, "Get Started with Online Application Assistance."  Clicking the links on the feeder site leads consumers to one of Defendants' transactions sites.

30



*Floridadriverslicenses.org, accessed from search results on March 8, 2019*

125.   As of March 8, 2019, reaching one of Defendants' transaction sites through a

feeder-site link did not prompt any pop-up windows to open.  Sometime between March 8, 2019,

and July 30, 2019, Defendants added a pop-up window that appears when consumers reach

transaction sites through a link.  The pop-up window appears as follows:



*Pop-up on mycartitles.com, accessed July 30, 2019*

31

126.    The transaction sites have gray backgrounds, with a white box in the center containing a bold-font headline about completing the selected motor vehicle-related service (for example, "Renew Drivers License In Your State") and orange text touting, "GET ALL THE INFORMATION TO COMPLETE THE PROCESS NOW."  A box within the center section contains the headline "VERIFY YOUR INFORMATION" and fields for the consumer's name, email address, and zip code.  Below is a large orange "CONTINUE" button.  At the bottom, the site contains a menu of links, including a link called "MONEY BACK GUARANTEE."



*License-driver.com landing page, accessed March 8, 2019*

127.    The transaction sites' landing pages also have several blocks or lines of text outside the central white-highlighted area that consumers are unlikely to see.  These include a small line of gray text on the gray background at the top of the page above the menu that reads, "[URL] is in no way or fashion affiliated with any federal or local governmental agency or

offices." The blocks of grey-on-grey text generally state as follows, or use substantially similar language:

> Welcome to license-driver.com, your comprehensive resource for all you [sic] driver license-related services. The services we provide are available for free in the official sites or local offices. You can purchase for $23.98 and download our comprehensive guide and resources, which contains [sic] vital information in order to perform any DMV service and also included is the Roadside Assistant Program and other benefits including official forms and helpful checklists. By clicking continue I represent that I am 18+ years of age, I agree to receive email newsletters and offers targeted to my interests, sent by license-driver.com and their Marketing Partners. Please fill out form below to get the process started. [*See* Paragraph 126.]

128.     Filling in the requested information and clicking "continue" leads a consumer to a second page with a list of services next to check-boxes, including "New Driver's License," "Replace Driver's License," and more; one box is pre-checked depending on which service the consumer selected on prior pages. This page includes the same blocks of text above and below the highlighted middle area as on the previous page.



*License-driver.com second page, accessed March 8, 2019 (redacted)*

129.    Filling in the additional information and clicking "continue" leads the consumer through a page that contains a gray box of text referencing the consumer's agreement to hyperlinked terms and conditions, then to a final billing-information page.  The billing information page displays the data the consumer previously entered, solicits payment information, and includes a large red "Submit" button.  Below this central area are two small blocks of text that extol the value of the site "to assist you completing the process today," repeat language stating that the consumer accepts unspecified terms and conditions, and state that the site is privately owned and operated.



*License-driver.com billing page, accessed March 8, 2019 (redacted)*

130.    When viewed on a mobile device, the drivers' transaction websites do not display the lines or blocks of text in the manner described in Paragraph 127.  Instead, they display only one line of text on the bottom of the first page stating that the site is privately owned, and a block of text substantially similar to the text quoted in Paragraph 127 on the final billing-information

screen. Consumers do not see any of the foregoing text unless they scroll to the bottom of the screen on which it appears.

131. After consumers submit payment, in some instances, the site simply links back to the landing page, and the consumer receives nothing. In other instances, the consumer receives an email containing a link to a downloadable PDF. The PDF contains general, publicly available information about the service the consumer sought *(i.e.,* driver's license or car-registration services).

132. Regardless of whether the consumer received the PDF guide, Defendants charge consumers' credit or debit card twice. The first charge is smaller (in numerous instances, $3.99), and the second is larger (in numerous instances, $19.99).

133. Through the representations described in Paragraphs 118-132 above and other substantially similar representations, Defendants' motor vehicle-related sites represent that completing a transaction through Defendants' sites will result in receipt of a valid license or car title, or other state motor-vehicle-related service.

134. Defendants do not deliver drivers' licenses, car registrations, or any other state motor-vehicle-related services.

### Defendants' State Licensing Websites

135. Defendants also operate sites related to state fishing and hunting licenses, including, for example, hunting-license.org and fishandgamelicenses.org.

136. Defendants' fishing and hunting license sites, like their other websites, often appear high in either sponsored links or search-engine results when consumers search words related to obtaining specific kinds of licenses.

137. For example, on June 27, 2019, using a search engine to search for the phrase "get

fishing license" brought up Defendants' site fishinglicense.org as the first sponsored link.

138.    Clicking Defendants' links leads consumers to a home page that offers to simplify

the process of obtaining a state license so consumers can begin the licensed activity (*e.g.*, hunting

or fishing).

139.    For example, clicking fishinglicense.org from search results opens a landing page

with a large photograph of a man fishing as the background.  A large headline reads, "New

[state] Fishing License Assistance," and a box next to the headline reads, "Skip the Hassle &

Start Fishing," and contains fields for entry of contact information. Below the contact

information data fields on a white background are an orange "Continue" button and a white

"VISIT GOVERNMENT SITE" button.  Small text below the button references fishing laws and

regulations and "preparing you to obtain a fishing license" and notes, "Additionally, you can

download our guide for only $28.98."  A line of small text at the top and bottom of the page that

consumers are unlikely to see states that the site is not affiliated with the government.



*Fishinglicense.org landing page, accessed June 27, 2019*

140.    Clicking "Continue" leads to a page soliciting "Billing Information," with an orange "Submit" button below the data fields.  A paragraph of small text below the "Submit" button again references a guide that costs $28.98 and notes in the final sentence that the site is privately owned.



*Fishinglicense.org billing information page, accessed June 27, 2019 (redacted)*

141.    Submitting payment information takes consumers to a link to "Download Your Guide to Becoming an Expert Fisherman Now."  Clicking that link opens a PDF titled, "Guide to Become an EXPERT FISHERMAN."  The PDF includes general, publicly available information about fishing licenses, fishing skills, and fishing logistics.

142.    Defendants then charge the debit or credit card the consumer provided.

143.    Through the representations described in Paragraphs 135-142 above and other substantially similar representations, Defendants' state licensing sites represent that completing a transaction through Defendants' sites will result in receipt of a valid state activity license, including hunting and fishing licenses.

144.    Defendants do not deliver hunting or fishing licenses, or any other state licenses.

**Defendants' Public Benefits Websites**

145.    Defendants own and operate two types of public benefits websites.  The first set of websites focuses on a single public benefit, including but not limited to Section 8 housing vouchers (*e.g.*, section-8-housing.org), food stamps (*e.g.*, food-stamps.com), or unemployment benefits (*e.g.*, unemploymentassistnace.org).  The second set asks consumers to select a public benefit from a menu of government programs (*e.g.*, veteran-affairs.org and texas-benefits.org).

146.    Defendants' public benefits websites, like their other websites, often appear high in either sponsored links or search-engine results when consumers search words related to seeking assistance with or applying for public benefits.

147.    Consumers who reach defendants' public benefits websites are directed through a series of webpages that solicit their personal information by promising to check their eligibility for public benefits.

148.    Defendants' public benefits websites contain similar functionality and representations about the services they offer.  These websites also solicit certain core pieces of personal information from consumers, including but not limited to their full name, address, date of birth, gender, telephone number, and email address.

149.    In some instances, consumers who reach the landing page for defendants' single benefit sites see a prominent data-entry form with some surrounding graphics and text.  This initial data-entry form asks for consumers' first name, last name, email, and zip code and contains a large orange "Continue >>" button.  The data-entry fields appear below a bold headline inviting consumers to "Find Out If You Are Eligible for [Public Benefit]."  There are typically several blocks or lines of text outside the central form area.  These include a small line

38

of text at the top and the bottom of the page that reads, "This site is privately owned and is neither affiliated with, nor endorsed by, nor operated by any government agency.  We provide time-saving information."

150.    For example, the landing page of Defendants' Section 8 housing vouchers website (section-8-housing.org), when accessed in April 2019, displayed data entry fields for the consumer's first name, last name, email address, and zip code below a prominent headline that read, "Find Out If You Are Eligible for the Section 8 Program."  A large orange "Continue >>" button appears underneath the data entry fields.



*Section-8-housing.org's landing page, access on April 17, 2019*

151.    In other instances, consumers who reach the landing page for defendants' single benefit sites see a prominent menu of two or more options, such as "ELIGIBILITY" and "HOW TO APPLY."  In most instances, the menu options are displayed as large yellow buttons against a blue background underneath a yellow headline that reads, "SELECT THE SERVICE YOU ARE LOOKING FOR."  Upon selecting any menu option, consumers reach a webpage with a data-entry form nearly identical to that described in Paragraph 150.

152.    Consumers who reach the landing page for defendants' multiple benefits sites see a menu of government programs, such as "MEDICAID" and "FOOD STAMPS," in brightly colored buttons underneath prominent headlines.  For example, the landing page of Defendants' Texas Benefits website (texas-benefits.org), when accessed in August 2019, showed six government program option underneath the headlines "Government Programs in Texas" and "SELECT THE SERVICE YOU ARE LOOKING FOR."



153.    In most instances, clicking on a program directs consumers to a page with further menu options displaying the services offered, such as "ELIGIBILITY" and "HOW TO APPLY." These intermediate pages vary in surrounding text and graphics, but the prominent features and representations largely resemble the pages described in Paragraph 151.  Similar to those pages, consumers are directed to "SELECT THE SERVICE YOU ARE LOOKING FOR."  Upon selecting a service, consumers reach a webpage with a data-entry form nearly identical to that described in Paragraph 150.

154.    Filling out the information on the initial data-entry page and clicking "Continue >>" directs consumers through a series of near-identical webpages that seek additional personal information.  In most instances, the subsequent webpages do not contain the blocks of text

underneath the central form area.



*Section-8-housing.org's second page, accessed on May 6, 2019*

155.   The form displays headlines about the selected transaction, such as "Confirm Your Address to Verify Eligibility" and "Confirm your information to get your Eligibility Guide." Underneath the headlines are questions or prompts for consumers.

156.   The sites ask consumers about various sensitive topics, including their employment status, income range, social security eligibility, health insurance, credit-card debt, and health conditions.  Consumers seeking public benefits would reasonably expect to answer such questions to obtain an eligibility determination.

157.   Answering "Yes" to certain questions causes the browser to open a new window directed to a third-party website with a marketing offer.  The original window navigates to the next webpage of the benefits website, continuing the series of questions.

158.   For example, when section-8-housing.org was accessed on May 6, 2019, clicking "Yes" in response to "Are you struggling with over $10k in debt?" on one webpage opened a page for Accredited Debt Relief, headlined "Reduce Your Debt & See How Much You Can Save." The original window navigated to the next webpage with a new question.



*Third-party webpage for acreliefnetwork.com, accessed on May 6, 2019*

159.    Proceeding through the end of more than a dozen questions on the public benefits websites causes consumers' browsers to open a new window to a different website that contains marketing offers and links.

160.    The original window navigates to a new webpage containing text at the top of the page stating, "Thank you, your guide has been sent to your email.  Please check your inbox." The page contains marketing links and blocks of text containing general information about the selected public benefit.

161.    For example, during the May 6, 2019 transaction, a prominent box with a headline "GET YOUR CREDIT REPORT" appeared right below the "thank you" text.  Below and to the right of the box, the page displayed numerous other links and blocks of text about housing assistance.



*section-8-housing.org "Thank You" page, accessed on May 6, 2019*

162.    Consumers who provide all the requested information on Defendants' public benefits websites do not receive the promised eligibility determination.

163.    Consumers who provide all the requested information on Defendants' public benefits websites may receive an email with a link to download a PDF guide.  The PDF guide contains general, publicly available information about the selected benefit.

164.    For example, after all the requested information was provided on Defendants' section-8-housing.org website during the May 2019 transaction, the email address provided during that transaction received an email with a link to download a PDF guide titled "Section 8 Housing."  The PDF contained general, publicly available information about Section 8 housing vouchers.

165.    After providing information on Defendants' public benefits websites, consumers almost immediately begin receiving marketing emails from Defendants and third parties.  Consumers also start receiving text messages containing marketing offers from Defendants and third parties.  The emails and texts contain various marketing offers, including job-search-

assistance, free gift cards, and homebuyer grants.

166.    Typical information collected by Defendants on their motor vehicle-related websites includes consumers' full name, address, date of birth, email address, gender, and telephone number.  Typical information collected by Defendants on their public benefits websites includes all of the above and consumers' employment status, income range, credit card debt, medical and health conditions, and health insurance status.

167.    Defendants have received millions of dollars from selling the personal data they collected from consumers through deceptive marketing.

168.    Based on the facts and violations of law alleged in this Complaint, the FTC has reason to believe that Defendants are violating or are about to violate laws enforced by the Commission.

## VIOLATIONS OF THE FTC ACT

169.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

170.    Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### Count I: Misrepresentations Related to Licensing and Motor Vehicle Services

171.    In numerous instances in connection with the advertising, marketing, promotion, offering for sale, or sale of guides, Defendants represent or have represented, directly or indirectly, expressly or by implication, that (1) consumers can complete state motor vehicle or state licensing transactions on Defendants' websites, and (2) consumers who submit payment and personal information will receive a state motor vehicle service or state license.

172.    In truth and in fact, (1) consumers cannot complete state motor vehicle or state

44

licensing transactions on Defendants' websites, and (2) consumers who submit payment and personal information do not receive a state motor vehicle service or state license.

173.    Therefore, Defendants' representation as set forth in Paragraph 171 are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### Count II: Misrepresentations Related to Public Benefits Services

174.    In numerous instances in connection the advertising, marketing, promotion of guides, Defendants represent or have represented, directly or indirectly, expressly or by implication, that (1) consumers can obtain eligibility determinations for public benefits on Defendants' websites; and (2) that consumers who submit personal information will receive eligibility determinations.

175.    In truth and in fact, (1) consumers cannot obtain public benefits eligibility determinations on Defendants' websites, and (2) consumers who submit personal information do not receive a public benefits eligibility determination.

176.    Therefore, Defendants' representations as set forth in Paragraph 174 are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

### <u>CONSUMER INJURY</u>

177.    Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

178.    Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and the Court's own equitable powers, requests that the Court:

A.    Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.    Enter a permanent injunction to prevent future violations of the FTC Act by Defendants;

C.    Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.    Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

46

Respectfully submitted,

Alden F. Abbott
General Counsel

Dated:  12/9/19

_Sarah Waldrop_

Sarah Waldrop (Special Bar No. A5502583)
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry (Special Bar No. A5502350)
(202) 326-2679; schaudhry@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197


Attorneys for Plaintiff
FEDERAL TRADE COMMISSION