**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-CV-25046-Scola**

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ON POINT GLOBAL LLC, *et al.*,

    Defendants.

**EXPEDITED MOTION TO EXTEND TEMPORARY RESTRAINING ORDER AS TO ROBERT ZANGRILLO, DRAGON GLOBAL LLC, DRAGON GLOBAL MANAGEMENT LLC, DRAGON GLOBAL HOLDINGS LLC, AND ON POINT CAPITAL PARTNERS LLC**

Pursuant to Federal Rule of Civil Procedure 65(b)(2), the Plaintiff Federal Trade Commission ("FTC") moves to extend the Temporary Restraining Order this Court entered on December 13, 2019 ("TRO," ECF No. 17), as to certain defendants, through the preliminary injunction hearing scheduled in this matter for January 10, 2020. The FTC filed its complaint and moved *ex parte* for a TRO on December 9, 2019, and the Court granted the FTC's motion on December 13. The TRO is scheduled to expire on Friday, December 27, 2019 (TRO p.22), but the hearing on the FTC's motion for a preliminary injunction is not scheduled until January 10, 2020, at 9 a.m. (TRO p.21). Pursuant to Local Rule 7.1(d)(2), the FTC therefore respectfully requests an expedited ruling on this Motion by December 27, 2019, to prevent a lapse between expiration of the TRO and a ruling on the FTC's motion for a preliminary injunction.

On December 23, 2019, all parties except Individual Defendant Robert Zangrillo and Corporate Defendants Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC (collectively, "Zangrillo Defendants") reached, and the FTC filed, stipulations to keep the TRO in place through the preliminary injunction hearing. ECF Nos. 20, 21. Counsel for the Zangrillo Defendants declined to stipulate

1

to an unmodified extension of the TRO and objected to the application of the TRO and its asset freeze to the Zangrillo Defendants. The FTC therefore makes this Motion.

As the FTC demonstrated in its TRO Motion (ECF No. 4) and exhibits in support, the FTC is likely to prevail on the merits of its action, and the balance of the equities favors entry of a TRO and preliminary injunction against the Zangrillo Defendants. *See FTC v. IAB Mktg. Assoc., LP*, 746 F.3d 1228, 1232 (11th Cir. 2014). The FTC's TRO Motion demonstrated in detail that the Defendants' websites, operating under the name "On Point Global," falsely claimed to offer government services, like driver's license renewals and eligibility determinations for public benefits. Instead they provided only PDFs of publicly available information. TRO Mot. pp.1-13. Defendants' websites violate the FTC Act because they made representations that were likely to mislead reasonable consumers and that were material to consumers' decisions. *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003).

Furthermore, the FTC's TRO Motion demonstrated that the Corporate Defendants, including the corporate Zangrillo Defendants, acted as a common enterprise and will thus be jointly liable for their deceptive activities. *See FTC v. Lanier Law, LLC*, 715 F. App'x 970, 979 (11th Cir. 2017); *FTC v. Pointbreak Media, LLC*, 376 F. Supp. 3d 1257, 1270 (S.D. Fla. 2019). As described in detail in the FTC's TRO Motion, pp.16-19, the entity Zangrillo Defendants (under the name "Dragon Global") and the other Corporate Defendants (under the name "On Point Global") operate under common control; share officers, employees, and office space; and commingle their funds. The three "venture partners" in the Dragon Global entities are Robert Zangrillo, Burton Katz, and Bob Bellack, PX1 Att. G p.2,[1] who are, respectively, the chairman, CEO, and CFO of On Point Global, PX1 Atts. E p.5, AU pp.46, 61. Dragon Global's website[2]

---

[1] Citations are to both exhibits filed with the FTC's TRO Motion as PX1 through PX17 (ECF No. 4), and to exhibits filed with this Motion as PX18 through PX22.

[2] On December 23, 2019, the FTC's investigator accessed Dragon Global's website and discovered it had been altered to remove references to Burton Katz and several references to On Point Global. PX18 ¶¶11-14, Att. B. A cached version of part of the site showed that on December 14, 2019 – two days before the TRO was served – it contained Katz's bio, which was later removed. *Id*. ¶13, Att. B; *see* p.5 *infra* (service of TRO). As of December 23, however, the Dragon Global site still referred to On Point Global as Dragon Global's "current early-stage control investment." PX18 ¶14, Att. B. Furthermore, Defendant Robert Zangrillo's LinkedIn page was altered to remove references to On Point Global. *Id*. ¶15, Att. C. The FTC continues to investigate these alterations; if they were made following service of the TRO on the Dragon Global entities, as appears likely, they constitute contempt of the TRO provision prohibiting the

and On Point Global's website listed the same roster of "advisors" with the same head shots. *Compare* PX1 Att. G p.2 *with* Att. E p.5. Dragon Global's short roster of employees (Dede Loftus and Megan Black, PX1 Att. G p.2) signed documents and performed work for On Point Global and its subsidiaries, and On Point Global paid Dragon Global quarterly to cover Black's salary. PX1 Atts. AU p.26, BA pp.2-3 (Dede Loftus signed documents); PX18 Att. A p.13 (email from On Point officer to Megan Black (megan@dragonglobal.com) requesting "megan please add this document to the on point corporate data room"); PX18 Att. A pp.3-11 (invoices from Dragon Global to On Point Global for rent and "Salary for Megan Black"). In most instances, Dragon Global lists a UPS Store as its address, PX1 ¶¶197, 212, Att. BA pp.7-8, PX9 Att. E, but its LinkedIn page listed On Point Global's headquarters at 350 NE 60th Street in Miami as Dragon Global's address, PX1 Att. AU p.59. Indeed, Zangrillo acquired the headquarters building for On Point through a company called "Magic City Properties," which is Dragon Global's branding for its Miami real-estate development projects. PX1 Atts. AU p.46, BD pp.1, 3-4; PX12 Att. C pp.35-40; PX18 Att. A pp.138-141. Dragon Global also rents office space in California, but On Point Global and its subsidiary Issue Based Media have paid the rent. PX1 ¶¶199-200; PX18 Att. A pp.3-11; PX19 ¶5. Dragon Global sublets part of that space, but the subtenant pays rent interchangeably to On Point Global and Dragon Global. PX1 ¶¶197-199; PX19 ¶5. Inside that California office, the receiver's personnel found flyers and papers related to LivingHealthy.com,[3] a domain asset On Point Global recently purchased. PX18 ¶17, Att. A pp.75-77; PX19 ¶5; *see also* PX1 Att. AZ p.4 (On Point Global officer Brent Levison obtained privacy protection for the domain LivingHealthy.com).

Similarly, Individual Defendant Robert Zangrillo is individually liable for the common enterprise's deceptive actions and should thus be restrained by a TRO and, following a hearing, a preliminary injunction with asset freeze provisions. *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 469 (11th Cir. 1996) (asset freeze is appropriate to preserve the possibility of final relief). An

---

defendants from altering or erasing any website or webpage operated on the Defendants' behalf. TRO p.11.

[3] Like the Dragon Global website and Zangrillo's LinkedIn, the FTC's investigator visited LivingHealthy.com on December 23, 2019, and found that it had been altered to remove all content. PX18 ¶16. She determined via Google Cache that it contained content as recently as December 12, 2019, on which date it listed On Point Global's 350 NE 60th St. address on its contact page. PX18 ¶16, Att. D.

individual defendant is personally subject to injunctive and equitable monetary relief if he (1) "participated directly in the practices or acts or had the authority to control them" and (2) "had some knowledge of the practices." *Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996).

As described in detail in the TRO Motion, pp.21-22, Zangrillo participated in the common enterprise's deceptive activities, had the authority to control them, and knew what they were doing. He is the chairman and co-owner of On Point Global (through his holding company, On Point Capital Partners) and the partner and founder of Dragon Global. PX1 Atts. BA pp. 16, 7-9; PX12 Att. C p.115. On Point Global CEO Burton Katz wrote a letter to On Point's staff noting that "Dragon Global believes OnPoint can be one of the next big consumer internet plays and Bob [Zangrillo] will be personally involved joining us as our first Chairman. I would like you to give Bob a big "OnPoint" welcome when you see him around the office." PX18 Att. A pp.139-140. As chairman, Zangrillo approved On Point's corporate resolutions and activities, including a $7.2 million loan On Point obtained, domain purchases, personnel decisions, and more. PX18 Att. A pp.65-136. Zangrillo also co-owns DG DMV with Katz, which holds the website DMV.com, and the signature card for its bank account lists him as "Mgr/Owner with Control of the Entity." PX12 Att. F p.55; *see* PX13 p.2 (DG DMV owns dmv.com). Zangrillo obtained privacy services for the domain onpointguides.com, which hosted Defendants' "reference guides" prior to September 2019. PX1 ¶¶24, 138, 180, Atts. F, AZ p.13. Indeed, his social media posts demonstrated his knowledge of his companies' activities, describing On Point's sale of "reference guides" and monetization of consumer data. PX1 Att. AU pp.46-47. In addition, in January 2018, Zangrillo posted a picture on his Instagram profile featuring him and Katz in Uruguay, where On Point subsidiary G8 Labs operates. PX1 Atts. AS, AV p.2. Zangrillo profited handsomely from his companies' deceptive activities, as he held an On Point corporate card and charged thousands of dollars each month on both that card and his personal card for "expenses," including for expensive meals and trips all over the country. PX18 Att. A pp.19-22, 25-61; PX19 ¶4 (Zangrillo had company AmEx card). Wire records show that Zangrillo personally received at least $2,798,877.30 in transfers from On Point Global and its subsidiary Cambridge Media Series. PX1 ¶192.

Finally, Zangrillo and his companies are already in contempt of the TRO, and their contempt should not be rewarded with a free pass to dissipate assets and destroy evidence before the Court can rule on a preliminary injunction. A TRO binds parties who have actual notice of

the order, which may be given "by personal service or otherwise." Fed. R. Civ. P. 65(d)(2)(A). Indeed, the TRO itself provides that it may be served on parties and non-parties "by any means," including, among others, "electronic mail" or "private process servers." TRO p.21. Zangrillo received the TRO by email at several email addresses at 11:43 a.m. on December 16, 2019, and sent a read receipt confirmation from one of those emails at 11:49 a.m. on the same day.[4] PX20; PX18 Att. A p.63 (Zangrillo used email "bob@zangrillo.com"). Additionally, while Zangrillo's notice of the TRO is imputed to his companies, *see, e.g.*, *FTC v. Neiswonger*, 494 F. Supp. 2d 1067, n.18 (E.D. Mo. 2007), process servers delivered the TRO, summons, complaint, and motion papers to the registered agents for Zangrillo's four entities at 1:10 p.m. on December 16, 2019. PX21. Despite the TRO's clear and definite order to provide financial disclosures within 5 days of receipt of the TRO, TRO pp.9-10, none of the Zangrillo Defendants have provided the required disclosures. On the evening of December 23 – the deadline for the disclosures – counsel for the Zangrillo Defendants for the first time demanded a nearly two-week extension to January 3 to provide disclosures, which the FTC did not agree to. Furthermore, as noted above, the Dragon Global website, Zangrillo's LinkedIn page, and LivingHealthy.com were all altered in recent days, raising concerns that Zangrillo and his companies have already altered or destroyed evidence despite the TRO's order to the contrary. *See* n.2 and n.3 *supra*.

While the Zangrillo Defendants may at least partially purge their contempt before the preliminary injunction hearing by submitting financial disclosures, they cannot meet that burden

---

[4] About an hour after Zangrillo received service of the TRO, a process server arrived at Zangrillo's home with an additional copy of the TRO, plus the complaint, summons, and motion papers. PX22. The server determined, both visually and by speaking with Zangrillo's boat captain, attorney, and an unidentified woman, that Zangrillo was home, and repeatedly told all of these individuals the purpose of his visit. *Id*. Zangrillo attempted to evade service by refusing to come to the door, but the server left the papers at Zangrillo's home. *Id*. Through his counsel, Zangrillo has indicated he intends to contest service. Such a challenge would be unfounded, as Florida courts have held that service of process is not "a game of tag" in which a defendant "might gain instantaneous immunity by calling 'King's X.'" *Haney v. Olin Corp*., 245 So. 2d 671, 673 (Fla. 4th DCA 1971). Where the defendant is present and aware of the purpose of the server's visit, he cannot evade service simply by refusing to open the door; under such circumstances, Florida courts and district courts following Florida law find service proper when the server leaves the papers at the door. *See Scotlynn US Division, Inc. v. Valdez*, 2015 WL 13734078, at *3-4 (M.D. Fla. Sept. 2, 2015) (and cases cited therein); *Kennedy v. Grova*, 2012 WL 1368139, at *2-3 (S.D. Fla. April 19, 2012) (and cases cited therein). Furthermore, even if Zangrillo challenges service of process, there is no dispute that he received the TRO by email before noon on December 16, 2019, which is the only trigger for the obligations of the TRO.

either by attacking the Court's TRO, *see Maggio v. Zeitz*, 333 U.S. 56, 69 (1948) ("a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed") or asserting Zangrillo's Fifth Amendment right against self-incrimination (which the entity defendants do not possess). *United States v. Rylander*, 460 U.S. 752, 758 (1980) (assertion of the Fifth Amendment "has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production."); *Braswell v. United States*, 487 U.S. 99, 116 (1988) (corporations do not possess Fifth Amendment right against self-incrimination). Should the Zangrillo Defendants ultimately refuse to comply with the TRO's disclosure provisions, the FTC will seek to hold them in contempt.

For the foregoing reasons, the FTC respectfully requests that the Court extend the Temporary Restraining Order through January 10, 2019, to restrain the Zangrillo Defendants until the Court holds a hearing and rules on the FTC's motion for a preliminary injunction as to all defendants.

## CERTIFICATION OF COUNSEL

The undersigned counsel conferred by e-mail with counsel for the Zangrillo Defendants on December 21, 22, and 23, but was unable to reach resolution of the issues presented in this motion. Specifically, undersigned counsel sought a stipulation to extend the TRO as entered by e-mail at 11:07 a.m. on December 21. Counsel for the Zangrillo Defendants and the FTC exchanged emails on December 22 and 23 regarding the parties' positions on the Temporary Restraining Order. By 6 p.m. on December 23, the parties were unable to reach agreement, and the FTC stated that it would file this motion. Counsel for the Zangrillo Defendants requested that the FTC note their objection to an unmodified TRO and asset freeze as to their clients.

Dated: December 24, 2019          Respectfully submitted,

*/s/ Sarah Waldrop*
Sarah Waldrop, Special Bar No. A5502583
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry, Special Bar No. A5502350
(202) 326-2679; schaudhry@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197
Attorneys for Plaintiff, Federal Trade Commission

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 24, 2019, a true and correct copy of the foregoing was served on all counsel of record via the method indicated below.

**Counsel for Defendants Burton Katz, Brent Levison, Elisha Rothman, Christopher Sherman, On Point Global LLC, On Point Employment LLC, On Point Guides LLC, DG DMV LLC, On Point Domains LLC, Final Draft Media LLC, Cambridge Media Series LLC, Issue Based Media LLC, Bella Vista Media Ltd., Carganet S.A., Direct Market LLC, Bluebird Media LLC, Borat Media LLC, Bring Back the Magic Media LLC, Chametz Media LLC, Chelsea Media LLC, Coinstar Media LLC, Domain Development Studios LLC, Domain Dividends Media LLC, Eagle Media LLC, Falcon Media LLC, GNR Media LLC, Island Media LLC, Leatherback Media Group LLC, Macau Media LLC, CEG Media LLC, MBL Media Ltd. Inc., Orange and Blue Media LLC, Orange Grove Media LLC, Panther Media LLC, Pirate Media LLC, Pivot Media Group LLC, PJ Groove Media LLC, Sandman Media Group LLC, Shadow Media LLC, Skylar Media LLC, Slayer Billing LLC, Spartacus Media LLC, Very Busy Media LLC, Wasabi Media LLC, Yamazaki Media LLC, Bronco Family Holdings LP, BAL Family LP, Cardozo Holdings LLC, 714 Media Ltd., Mac Media Ltd., License America Management LLC, License America Holdings LLC, and Blackbird Media LLC** *(via mail (to be sent 12/26/19 due to mail holiday) and email)*:

Jonathan B. New (jnew@bakerlaw.com)
Linda A. Goldstein (lgoldstein@bakerlaw.com)
Robert W. Thielhelm, Jr. (rthielhelm@bakerlaw.com)
Jimmy Fokas (jfokas@bakerlaw.com)
Patrick Campbell (pcampbell@bakerlaw.com)
Lauren P. Lyster (llyster@bakerlaw.com)
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111

**Counsel for Defendants Arlene Mahon and Waltham Technologies LLC**
*(via mail (to be sent 12/26/19 due to mail holiday) and email)*:

Xavier A. Franco (xfranco@mcper.com)
McArdle, Pérez & Franco, P.L.
255 Alhambra Cir, Suite 925
Coral Gables, FL 33134

Justin B. Kaplan (jkaplan@difalcofernandez.com)
DiFalco, Fernandez & Kaplan
777 Brickell Ave, Suite 630
Miami, FL 33131

1

**Counsel for Defendants Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC** *(via mail (to be sent 12/26/19 due to mail holiday) and email)***:**

Matthew Schwartz (mlschwartz@bsfllp.com)
John Zach (jzach@bsfllp.com)
Sara Winik (swinik@bsfllp.com)
Boies Schiller Flexner LLP
55 Hudson Yards, 20th Floor
New York, NY 10001

**Counsel for Receiver Melanie E. Damian** *(via CM/ECF)***:**

Kenneth D. Murena (kmurena@dvllp.com)
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

                                                                                    */s/ Sarah Waldrop*
                                                                                     Sarah Waldrop