**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-CV-25046-Scola**

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ON POINT GLOBAL LLC, *et al.*,

    Defendants.

**PLAINTIFF FTC'S OPPOSITION TO DEFENDANTS' MOTION TO STAY PORTIONS OF PRELIMINARY INJUNCTION PENDING APPEAL**

    Based on a rehash of arguments this Court already rejected, Movants[1] seek to stay the Court's recently ordered asset freeze. Most egregiously, they urge this Court to defy longstanding Eleventh Circuit binding precedent on the slim hope that either the Eleventh Circuit or the Supreme Court will overturn that precedent on appeal. In fact, the Eleventh Circuit reaffirmed the precedent Movants seek to overturn just last month. Because Movants' motion fails to meet the standard for staying a preliminary injunction, it should be denied.

    **I.    Background and Legal Standard**

    The FTC filed its Complaint and ex parte motion for a temporary restraining order in December 2019. Complaint (ECF No. 1); TRO Mot. (ECF No. 4). The overwhelming evidence demonstrated the Defendants violated the FTC Act by using deceptive websites to trick consumers into believing the Defendants offered government services. *Id*. Instead, Defendants delivered only a PDF of general, publicly available information about those services. *Id*. This Court held a two-day preliminary injunction hearing in January 2020; at the conclusion of the hearing, the Court entered a preliminary injunction that included a freeze of Defendants' assets. Preliminary Injunction (ECF No. 126).

---

[1] Individual Defendants Burton Katz, Brent Levison, Elisha Rothman, and Christopher Sherman are the moving parties ("Movants").

Movants now seek to stay the asset freeze portions of the preliminary injunction pending appeal. Mot. (ECF No. 150). Movants bear the "heavy burden" of proving the "exceptional response" of a stay pending appeal is warranted. *Larios v. Cox*, 305 F. Supp. 2d 1335, 1336 (N.D. Ga. 2004) (quoting *United States v. Hamilton*, 963 F.2d 322, 323 (11th Cir. 1992); *Winston-Salem/Forsyth County Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971) (Burger, C.J., in chambers)). Specifically, Movants must prove: (1) they have made a strong showing that they are likely to succeed on the merits; (2) they will be irreparably injured absent a stay; (3) a stay would not substantially injure the other parties interested in the proceeding; and (4) the public interest favors the stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Democratic Executive Committee of Florida v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019); *FTC v. IAB Marketing Assocs., LP*, 972 F. Supp. 2d 1307, 1311 (S.D. Fla. 2013) (IAB I). These factors have "substantial overlap" with the factors the Court analyzed in granting the preliminary injunction, *Nken*, 556 U.S. at 435; *Lee*, 915 F.3d at 1317. Therefore, Movants' motion is essentially a request "that the Court reconsider its decision regarding some of those factors." *CBS Broadcasting Inc. v. EchoStar Communications Corp.*, Case No. 99-cv-6382, 2000 WL 36741130, at *1 (S.D. Fla. Oct. 27, 2000). As discussed below, the Movants provide no reason for the Court to disturb its previous ruling granting a preliminary injunction with asset freeze.

## II. Movants Have Not Made a Strong Showing They Are Likely to Succeed on the Merits

Movants cannot, and do not, make a strong showing they are likely to succeed on the merits, based on the same arguments and evidence the Court just found demonstrates the exact opposite. In order to prevail on the merits on appeal, Movants would have to show that this Court abused its discretion in granting a preliminary injunction with an asset freeze. *FTC v. IAB Marketing Assocs.*, 746 F.3d 1228, 1232 (11th Cir. 2014) (citing *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1343 (11th Cir. 2008); *CFTC v. Levy*, 541 F.3d 1102, 1110 (11th Cir. 2008). In attempting to meet this high standard, Movants: (1) make a statutory argument that Eleventh Circuit precedent directly contradicts; and (2) rehash factual arguments this Court already rejected.

### a. Movants' Statutory Argument Regarding Monetary Relief Is Foreclosed By Binding Eleventh Circuit Precedent

Movants' argument that the FTC Act does not authorize monetary relief or an asset freeze is squarely contrary to binding precedent. *FTC v. Gem Merchandising Corp.*, 87 F.3d 466, 470

(11th Cir. 1996); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984). The Eleventh Circuit has reaffirmed this precedent many times over the past three decades, including just last month. *Id.*; *see also FTC v. Simple Health Plans, LLC*, -- Fed. App'x --, 2020 WL 570811, at *2 (11th Cir. 2020); *FTC v. Washington Data Resources, Inc.*, 704 F.3d 1323, 1326 (11th Cir. 2013); *FTC v. Lalonde*, 545 Fed. App'x 825, 832 (11th Cir. 2013); *FTC v. USA Financial, LLC*, 415 Fed. App'x 970, 975 (11th Cir. 2011). Facing this dispositive precedent, Movants urge this Court to ignore it because they intend to challenge it on appeal, and because other defendants have challenged it in other circuits and at the Supreme Court. Mot. at 10. As recently as last month, the Eleventh Circuit rejected these very arguments, demonstrating the certainty that Movants will lose on appeal. *Simple Health Plans*, 2020 WL 570811, at *2. Further, despite Movants' protestations, Mot. at 10, the circuit court is fully capable of deciding legal issues while the preliminary injunction remains in effect.

Finally, the Movants argue this Court should pull out a crystal ball and assume not only the Eleventh Circuit, but also the Supreme Court, will overturn decades of precedent from multiple circuits, and should on that basis defy the Eleventh Circuit's existing precedent. Mot. at 10-11. At best, Movants' position is purely speculative. Moreover, it ignores longstanding Supreme Court precedent holding that a statutory grant of power to award injunctive relief includes the power to grant the full panoply of equitable remedies, including monetary remedies. *Porter v. Warner Holding Co.*, 328 U.S. 395, 399, 402 (1946). This precedent underpins decades of circuit court decisions approving monetary relief and asset freezes in FTC actions. Most of those decisions postdate the 2002 and 1996 Supreme Court decisions Movants claim "changed the inquiry" in FTC cases.[2] *See Simple Health Plans,* 2020 WL 570811, at *2 (2020); *Washington Data Resources*, 704 F.3d at 1326 (2013); *Lalonde*, 545 Fed. App'x at 832 (2013); *USA Financial*, 415 Fed. App'x at 975 (2011); *Gem Merchandising*, 87 F.3d at 470 (1996).

---

[2] Movants further cite a 2017 Supreme Court case that, contrary to their claim, did not hold that disgorgement is not an equitable remedy, but merely imposed a statute of limitations on the SEC's disgorgement remedies. *Kokesh v. SEC*, 137 S. Ct. 1635, 1645 (2017). Notably, the Court expressly stated that its ruling in that case should not be interpreted as a comment on the SEC's ability to seek disgorgement remedies under its statute. *Id.* at 1645 n.3. Movants also cite an entirely inapposite case regarding a federal statute that specifically excluded equitable remedies – unlike the FTC Act, in which Congress specifically created equitable remedies. *Compare Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1674-75 (2017) *with Gem Merch.*, 87 F.3d at 468-69.

3

Fundamentally, Movants' position rests on the idea that any defendant could stop all enforcement of existing law simply by challenging that law in the appellate courts. Movants do not and cannot provide any support for this position, as none exists.[3]

### b. Movants Misrepresent the Record and the Scope of the Court's Order

Movants make a number of false or legally irrelevant assertions about the asset freeze the Court ordered, including: (1) the Court froze assets not traceable to the underlying fraud; and (2) the Court froze assets beyond the amount needed for recovery. Mot. at 11-15. Movants elide the actual standard for, and purpose of, an asset freeze: because its purpose is "to make permanent relief possible," it requires only a "reasonable approximation of defendants' ill-gotten gains." *Gem Merch.*, 87 F.3d at 469; *SEC v. ETS Payphones, Inc.*, 408 F.3d 727, 735 (11th Cir. 2005); *FTC v. IAB Marketing Assocs. LP*, 746 F.3d 1228, 1234 (11th Cir. 2014) (IAB II). Employing that standard, Movants' motion should be denied for the following reasons.

First, as this Court has previously held, a defendant's assets need not be derived from or traceable to the alleged fraud to be frozen. *IAB I*, 972 F. Supp. 2d at 1315; *see also ETS Payphones*, 408 F.3d at 736 (approving freeze of "all of [defendant's] assets"); *FTC v. Bronson Partners, LLC*, 654 F.3d 359, 374 (2d Cir. 2011) (it is now "uncontroversial" that tracing is not required in public agency cases seeking equitable monetary relief). As this Court explained, if assets not derived from the fraud were exempt from a freeze, a defendant could immunize himself from a freeze simply by spending the traceable assets and husbanding the rest. Thus, "[t]he better rule is that the amount of assets that should be frozen before liability is conclusively established 'is determined not by whether the funds themselves are traceable to the fraudulent activity underlying the lawsuit, but by showing a reasonable approximation of the amount, with interest, [that] the defendant was unjustly enriched.'" *IAB I*, 972 F. Supp. 2d at 1315 (quoting *SEC v. Lauer*, 445 F. Supp. 2d 1362, 1369-70 (S.D. Fla. 2006) (discussing rule and collecting

---

[3] Movants misrepresent the sole authority they cite for their view that a circuit split supports a stay. In *California v. Am. Stores Co.*, the Supreme Court granted a stay pending appeal not simply because a circuit split existed, but because the party seeking the stay was likely to prevail. 492 U.S. 1301, 1306-07 (1989). It is an unexceptional proposition that the Supreme Court may stay a case where it concludes the proponent is likely to prevail. In no way does that proposition support Movants' contention that a district court should ignore its circuit's binding precedent because another circuit has held to the contrary.

cases)). Because assets need not be traceable to the alleged fraud to be frozen,[4] Movants' arguments that some of their revenues were "unrelated" to their deceptive practices are inapposite. *See* Mot. at 11-12.

Second, Movants are simply incorrect that the FTC sought, or the Court froze, assets beyond the amount of likely liability.[5] Mot. at 13. In fact, as the evidence at the preliminary injunction hearing demonstrated, Defendants' likely liability for their deceptive activities – both the sale of guides and information gathering through "freemium" guide websites – exceeds $80 million. *See* Preliminary Injunction (ECF No. 126) at 1-2 (describing violative websites), 4-6 (enjoining further violations); Receiver's Report (ECF No. 108) at 20-23 (calculating net revenues from paid-guide and freemium websites). Contrary to Movants' assertions, this figure includes only revenues from their websites that deceptively sold or distributed online guides. Indeed, the Receiver separately analyzed the revenues and assets Defendants obtained through their challenged activities (guide sales and sale of leads from "freemium" sites) and activities the FTC did not challenge in its initial Complaint (sale of services, sale of advertising through Avenue I, and purchase of domains). Receiver's Report (ECF No. 108) at 20-27. Focusing only on the challenged paid-guide and freemium sites, the Receiver's report showed that, just since January 2018, the corporate Defendants' net revenues from paid guides totaled $63.2 million, *id*. at 20-21, Att. E, and just in 2019, revenues from the "freemium" sites totaled $17,297,754.90, *id*. at 22-23, Att. G. Even net revenues from the enjoined activities in just these truncated time

---

[4] Movants apparently recognize that the law does not support a tracing argument, despite arguing vigorously that only assets attributable to the fraud should be frozen. *Compare* Mot. at 11-12 *with* Mot. at 15. It seems they seek only to preserve for appeal their right to ask the Eleventh Circuit to impose a tracing requirement. Mot. at 15 n.6. In doing so, they cite an unpublished Middle District of Florida decision, *FTC v. Washington Data Resources*, whose reasoning this Court has already thoroughly rejected. *IAB I,* 972 F. Supp. 2d at 1315-16. Moreover, the district court's *Washington Data Resources* decision rests on an unpublished Eleventh Circuit decision, *FTC v. Bishop*, whose reasoning the Eleventh Circuit likewise later rejected. *IAB II*, 746 F.3d at 1234.

[5] Movants apparently misinterpret the FTC's argument that each individual's asset freeze should not be limited by the amount he or she received from the fraudulent business, as their ultimate liability will not be limited to assets traceable to the fraud. *See* Mot. at 13; FTC's Opp. to Dragon Global Defs.' Mot. to Dissolve TRO (ECF No. 38) at 11. As discussed above, it is "uncontroversial" that defendants' liability is not limited to assets traceable to the fraud, making a freeze of all of Movants' assets, however derived, appropriate. *Bronson Partners*, 654 F.3d at 374.

periods thus totaled $80,472,421.53. Corroborating this calculation, Defendants' own bank account showed they received a net of $71,700,906.10 from credit-card payment processors (*i.e.*, payments for guides) and $13,541,319.31 from lead buyers (*i.e.*, for information obtained on freemium sites), for a total of $85,242,225.41, between April 2016 and August 2019 – amounts consistent with the Receiver's findings in an overlapping time period. PX4 (ECF No .4-16) ¶¶4, 9-10.

Movants' liability plainly exceeds the amounts frozen. As the Receiver reported, as of the preliminary injunction hearing, the receivership estate – which includes all corporate Defendants – had less than $3 million in cash on hand, with an expectation of marshalling an additional $1.5 million from payment processors.[6] Receiver's Report (ECF No. 108) at 33. That amount will be diminished once the Receiver's fees are paid. *Id*. at 34. Further, the individual Defendants, including the four Movants, reported holding cash and money in frozen bank accounts of $2,535,658.74.[7] All told, frozen cash and bank accounts thus total less than $10 million. Even if the Court agreed with Defendants' proposed total liability of $26 million, *see* Mot. at 15, which, as described below, is far too low, an asset freeze covering all of Defendants' frozen assets would still be appropriate. *See IAB I*, 972 F. Supp. 2d at 1315 (asset freeze amount should be measured by amount of ill-gotten gains).

Finally, Movants argue that the FTC has not proved that its websites were deceptive before February 2019, and that only revenues past that date should be included in asset freeze calculations. Mot. at 14-15. This misstates the record. In fact, the FTC provided evidence

---

[6] The Receiver further reported non-liquid assets, including a collection of cars and artwork, office furniture and equipment, domain names, and intellectual property. Receiver's Report (ECF No. 108) at 33-34. The values of such assets are inherently uncertain until the assets are sold and converted into cash, particularly for the intangible assets, such as domain names and intellectual property.

[7] All Defendants submitted their financial statements with requests that the statements be kept confidential. The FTC therefore has not filed Defendants' statements with this opposition or itemized frozen funds by Defendant. Should the Court wish to review Defendants' financial statements, the FTC will submit them in any fashion the Court orders (*e.g*., under seal, in camera, or on the public docket).

Further, the FTC notes that Defendants' individual financial statements listed total holdings of publicly traded stock at approximately $11 million as of December 2019 and January 2020, plus additional non-cash assets, including cars, real estate, and ownership stakes in private companies. As noted above, the values of such assets – or any assets other than frozen bank accounts and cash – fluctuate and are inherently unpredictable until they are sold.

dating as far back as 2011 that the Defendants' websites were intentionally designed to trick consumers into believing that their sites offered government services. *See* PX1 Att. BG (ECF No. 4-15) ("I eliminated the questions about child support. Why? I believe if someone is filling out this info under the auspices or belief of getting his or her license, the child support could cause them to abandon the registration process. Who wants to admit to being in trouble when all they want is a license?"). The FTC provided evidence dating back to 2014 demonstrating that merchant processors terminated Defendants' accounts for high chargebacks, and evidence dating back to 2016 that their accounts constantly exceeded chargeback thresholds. *See* PX5 Atts. A-C (ECF No. 4-17); PX11 (ECF No. 4-20). The FTC provided evidence dating back to 2013 of complaints related to Defendants' deceptive websites. PX1 ¶217 (ECF No. 4-7); PX5 Att. E (ECF No. 4-17). The Court relied on these records, along with recent copies of Defendants' websites, in finding that the FTC is likely to prevail in showing that Defendants violated the FTC Act. Preliminary Injunction (ECF No. 126) at 2. Movants simply ignore the record and the Court's findings in an effort to claw back their ill-gotten gains from the asset freeze the Court already ordered.

### III. Movants Cannot Establish the Final Three Factors for a Stay

Having failed to make a strong showing, or even a weak one, of likely success on the merits of an appeal, Movants also seek to relitigate the Court's findings regarding irreparable harms and the balance of the equities. *See* Preliminary Injunction (ECF No. 126) at 2-3. The Court has already held that consumers will be irreparably harmed absent an injunction and asset freeze, and that the balance of the equities favors the public, not Defendants. *Id.* Movants address these findings with a series of misdirections and misrepresentations.

First, Movants argue the asset freeze – the only portion of the Preliminary Injunction they challenged, *see* Mot. at 1 – will harm them by destroying their business. This is nonsense. Their business is in the hands of a Court-appointed Receiver, whose authority Movants do not challenge. Mot. at 2. The Receiver has full authority to conduct any business activity she believes can be made lawful, and is attempting to do so, as made clear in her report. *See* Preliminary Injunction (ECF No. 126) at 11-18 (authority and duties of receiver); Receiver's Report (ECF No. 108) at 6, 23-24 (Receiver's proposal to modify websites to make them non-deceptive and thus operable). Movants' complaints of layoffs and interruptions at their business,

Mot. at 16-17, are thus in no way attributable to the asset freeze, but to the Court's prohibition on deceptive activity and the independent business judgment of the Court's Receiver.

Second, the Movants' complaints that the asset freeze prevents them from "obtaining" money are mystifying, as the freeze does no such thing. In fact, as Movants admit, the preliminary injunction expressly excludes assets obtained after entry of the TRO that are unrelated to the allegations in the FTC's Complaint. Mot. at 18; Preliminary Injunction at 6. Defendants are thus free to seek new employment and pay their expenses from their earnings. *See IAB I*, 972 F. Supp. 2d at 1314 (denying release of asset freeze because "nothing in the Preliminary Injunction prevents [defendants] from working to support themselves."). Further, Defendants' complaints that the asset freeze prevents them from spending assets they acquired before the TRO are irrelevant, as such a restraint is precisely the point of an asset freeze. Indeed, as this Court previously held, "it is axiomatic that an asset freeze, set forth in the interest of preserving illegal proceeds from dissipating before there has been a final disposition on the merits, may have unpleasant consequences for the defendant, including foreclosures on real estate, injury to legitimate business enterprises and other personal hardship." *Id.* at 315 (quoting *SEC v. Schiffer*, Case No. 97-CV-5853, 1999 U.S. Dist. LEXIS 9723, at *3 (S.D.N.Y. June 30, 1999)).

Third, Movants' assertion that no other parties will be harmed if they are allowed to dissipate their frozen funds is simply not true. The purpose of an asset freeze is to preserve assets to redress the consumers Defendants harmed. *FTC v. World Patent Marketing, Inc.*, Case No. 17-cv-20848, 2017 WL 3508639, at *16 (S.D. Fla. Aug. 16, 2017) (citing *IAB II*, 746 F.3d at 1234; *Gem Merch.*, 87 F.3d at 469; *U.S. Oil & Gas*, 748 F.2d at 1433-34). By definition, allowing Defendants to spend frozen assets "constitutes a dissipation of assets, as [it] would deplete the assets available for consumer redress." *Id.* at *17. This would perpetuate the very harm to consumers that the Court sought to address by granting the asset freeze. Further, "staying" the asset freeze is no different in practice than fully reversing it, because if the freeze were stayed, Movants could simply move their ill-gotten gains beyond the Court's and the FTC's reach. Consumers would thus be irreparably harmed, as the money would be unrecoverable once the Eleventh Circuit rejected Movants' appeal and the asset freeze was reinstated.

Finally, as the Court already held, the balance of the equities favors the consumers Defendants harmed, not the Movants. Preliminary Injunction at 3. Inexplicably, Movants argue

that it is in the public interest to allow them to spend their ill-gotten gains even after this Court held that the FTC is likely to prevail in holding them liable for tens of millions in consumer harm. Mot. at 19-20. In fact, as this Court previously ruled, "Equity favors the injured consumers over the Defendants who did the injuring and are now suffering the consequences of their conduct." *IAB I*, 972 F. Supp. 2d at 1315.

### IV.  Conclusion

Movants cannot show any of the four factors required for a stay of the preliminary injunction pending appeal, let alone all four. Accordingly, the FTC respectfully requests that the Court deny the Movants' motion and maintain the asset freeze for the duration of this litigation.

Dated:  March 12, 2020                                     Respectfully submitted,

*/s/ Sarah Waldrop*
Sarah Waldrop, Special Bar No. A5502583
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry, Special Bar No. A5502350
(202) 326-2679; schaudhry@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197


Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that, on March 12, 2020, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

**Counsel for Defendants Burton Katz, Brent Levison, Elisha Rothman, Christopher Sherman, On Point Global LLC, On Point Employment LLC, On Point Guides LLC, DG DMV LLC, On Point Domains LLC, Final Draft Media LLC, Cambridge Media Series LLC, Issue Based Media LLC, Bella Vista Media Ltd., Carganet S.A., Direct Market LLC, Bluebird Media LLC, Borat Media LLC, Bring Back the Magic Media LLC, Chametz Media LLC, Chelsea Media LLC, Coinstar Media LLC, Domain Development Studios LLC, Domain Dividends Media LLC, Eagle Media LLC, Falcon Media LLC, GNR Media LLC, Island Media LLC, Leatherback Media Group LLC, Macau Media LLC, CEG Media LLC, MBL Media Ltd. Inc., Orange and Blue Media LLC, Orange Grove Media LLC, Panther Media LLC, Pirate Media LLC, Pivot Media Group LLC, PJ Groove Media LLC, Sandman Media Group LLC, Shadow Media LLC, Skylar Media LLC, Slayer Billing LLC, Spartacus Media LLC, Very Busy Media LLC, Wasabi Media LLC, Yamazaki Media LLC, Bronco Family Holdings LP, BAL Family LP, Cardozo Holdings LLC, 714 Media Ltd., Mac Media Ltd., License America Management LLC, License America Holdings LLC, and Blackbird Media LLC:**

Robert W. Thielhelm, Jr. (rthielhelm@bakerlaw.com)
Jonathan B. New (jnew@bakerlaw.com)
Jimmy Fokas (jfokas@bakerlaw.com)
Patrick T. Campbell (pcampbell@bakerlaw.com)
Jeffrey D. Martino (jmartino@bakerlaw.com)
Lauren P. Lyster (llyster@bakerlaw.com)
Denis Durkin (ddurkin@bakerlaw.com)
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111


**Counsel for Defendants Arlene Mahon and Waltham Technologies LLC:**

Justin B. Kaplan (jkaplan@difalcofernandez.com)
DiFalco, Fernandez & Kaplan
777 Brickell Ave, Suite 630
Miami, FL 33131

Xavier A. Franco (xfranco@mcper.com)
McArdle, Perez & Franco, PL
255 Alhambra Circle, Suite 925
Coral Gables, FL 33134

**Counsel for Defendants Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC:**

Matthew Schwartz (mlschwartz@bsfllp.com)
John Zach (jzach@bsfllp.com)
Sara Winik (swinik@bsfllp.com)
Marshall Dore Louis (mlouis@bsfllp.com)
Boies Schiller Flexner LLP
55 Hudson Yards, 20th Floor
New York, NY 10001


**Counsel for Defendant Elisha Rothman:**

Solomon B. Genet (sgenet@melandrussin.com)
Joshua W. Dobin (jdobin@melandrussin.com)
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131


**Counsel for Receiver Melanie E. Damian:**

Kenneth D. Murena (kmurena@dvllp.com)
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

*/s/ Sarah Waldrop*
Sarah Waldrop
