UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-CV-25046-SCOLA

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

ON POINT GLOBAL LLC, *et al.,*

    Defendants.

_____/

**RECEIVER'S MOTION TO APPROVE MODIFIED TEMPLATES
FOR ENTITY DEFENDANTS' WEBSITES PURSUANT TO COURT
ORDER DATED JANUARY 14, 2020 AND AUTHORIZATION TO MAKE
PAYMENTS TO ASSIST IN OPERATING GOING CONCERN**

    The Court-Appointed Receiver, Melanie E. Damian, Esq. (the "Receiver"), by and through her undersigned counsel, hereby moves this Court for an Order (i) approving the proposed modified templates for the entity Defendants' websites and granting authority to operate those websites pursuant to this Court's Order Granting Motion for Preliminary Injunction entered on January 14, 2020 [ECF No. 126] (the "Preliminary Injunction"), and (ii) authorizing the Receiver to make payments to certain Individual Defendants for prospective services provided to the Receiver, under her supervision in continuing to operate the Entity Defendants' business in a legal and profitable manner, and in support states as follows:

    1.    On December 13, 2019, the Court issued a Temporary Restraining Order ("TRO") and appointed Melanie E. Damian, Esq. as temporary Receiver of the Receivership Entities with full powers of an equity receiver. *See* ECF No. 17.

    2.    Pursuant to the TRO, the Receiver was to complete her summary report and deliver to the Court at or before the Preliminary Injunction hearing set for January 10, 2020. *See* ECF No. 17.

3. On January 9, 2020, the Receiver completed and delivered her summary report ahead of the Preliminary Injunction hearing. *See* ECF No. 108.

4. As required by the TRO, the Receiver, with assistance from outside compliance counsel, analyzed the Defendants' business practices to determine whether certain segments of the business could be operated legally and profitably. *See* ECF No. 17. In her report, the Receiver detailed the Defendants' "freemium" and "pay-for-services" websites. Using the "net impression" standard the Receiver expressed her concerns that the freemium and pay-for-services websites could be deceptive to consumers. However, the Receiver also reasoned that the information provided via the freemium sites as well as the various services provided to consumers via the pay-for-services sites could be beneficial to consumers if provided in a legal and nondeceptive way. *See* ECF No. 108.[1] The Receiver further analyzed the financial model of the freemium websites with her forensic accountants and opined that it was possible that modified websites could potentially be operated legally and profitably and given the size of the operation and the potential value of the going concern, the Receiver proposed modifications and evaluation.[2] *See id*. A similar analysis was made for the pay-for-services sites and the Receiver determined that, with modification, the pay-for-services sites could be operated nondeceptively, otherwise legally and profitably. *See id*. Based on this determination and the Receiver's corresponding charge to

---

[1] The Receiver discontinued the Paid-Guide Sites.

[2] In early 2019, The Receivership Entities established an enterprise valuation of approximately $154 million, raising millions of dollars at that valuation. At the time the TRO was entered in this case, based on correspondence reviewed by the Receiver and investigation by her team, the Entity Defendants were in discussions to raise institutional capital at a materially higher valuation with well-respected investment funds. The Receiver believes based on this information and her ongoing investigation, research and counsel, even with a portion of the business discontinued, that keeping the estate operating as a going-concern, if possible to do so legally, will serve to substantially enhance and preserve the value of the Receivership Estate.

"perform all acts necessary or advisable to preserve the value of those assets", the Receiver believed it was her obligation to attempt to operate the remaining going concern if it could be done legally and profitably. The Receiver is hopeful that with the modifications made and the additional modifications and enhancements she proposes herein and advocated by her compliance counsel the websites, rather than being deceptive to consumers could be a service providing value to consumers while preserving the value of the Receivership Estate, pending the ultimate determination of this lawsuit.

5. Based upon the above findings, the Receiver recommended that she be granted the opportunity to work with outside compliance counsel to propose modified templates for the freemium and pay-for-services websites that would allow them to operate legally and profitably. The Receiver further recommended that these proposed modified templates be vetted by the Federal Trade Commission ("FTC") and the Defendants and then presented to the Court for approval while providing the parties an opportunity to brief any objections they may have. *See id*.

6. On January 10, 2020 and January 13, 2020, the Court held the Preliminary Injunction hearing during which time the Receiver presented her findings including the recommendation as to the freemium and pay-for-services websites.

7. On January 13, 2019, at the conclusion of the Preliminary Injunction hearing, the Court issued an Order Granting the Preliminary Injunction ruling, among other things, that the Receiver was to draft the proposed modified freemium and pay-for-services website templates. *See* ECF No. 126.

8. The Court further directed the Receiver to seek input from the parties regarding the modified templates and to then submit them to the Court for consideration on or before January 31, 2020, while also providing the parties fourteen (14) days after submission by the Receiver to brief any objections to the proposed modifications. *See id*. Modifying these websites was

substantially more complicated than originally contemplated and this deadline was subsequently extended to March 13, 2020.

9. To assist in preparing the modified templates, the Receiver consulted with two separate outside compliance counsel as well as outside counsel that has acted as Receiver in other FTC enforcement actions related to similar business practices that were deemed deceptive to consumers.

## PROPOSED MODIFIED WEBSITES

10. Upon completion of a first group of proposed modified templates, the Receiver provided same to the FTC and the Individual Defendants to solicit their input. The Receiver worked diligently with the parties to implement the requested changes proposed by all and substantially modified the proposed templates from those that existed on December 13, 2019, the date of the Court's TRO. The final proposed modified templates for freemium websites are attached hereto as Composite **Exhibit A** (with the Guide as **Exhibit B**) and **Exhibit C** (and Guide as **Exhibit D**). The sites proposed to be operated under these general templates are attached hereto as **Exhibit E**. The proposed modified pay-for-services websites are attached hereto as **Exhibit F** (Car Registration), **Exhibit G** (Passport Courier Services), **Exhibit H** (Driver's License Application Assistance), and **Exhibit I** (Change of Address).

11. As more fully set forth in the Report from the Receiver's compliance counsel attached hereto as **Exhibit J**, the language and presentation of the freemium sites were re-evaluated. These websites provide users with a free guide on a relevant topic in exchange for their name and e-mail address. The revisions to the freemium sites **(1)** make clear that the user is not required to answer survey questions and receive the targeted advertisements in order to receive the free guide; **(2)** makes free content available under a pull-down called "Posts", so content is now available regardless of whether a consumer provides ANY personal information; **(3)** moved the

placement of the personal information exchange so that it is proximately displayed, easy to understand, and unavoidable; and **(4)** made extensive changes to improve the readability of certain sites for users who read below a high school graduate reading level. Compliance counsel also reexamined the language and presentation of OnPoint's e-Commerce sites, which provide concierge assistance to a user for a fee. In general, with the assistance and at the direction of the Receiver and compliance counsel the e-Commerce sites were revised to meet the following goals: **(1)** clearly identify for the user the steps involved in each process; **(2)** identify any fees charged by OnPoint at the beginning of the process, and explain when those fees are in addition to other fees charged by separate entities; **(3)** make clear that OnPoint is not part of or affiliated with any government entity; and **(4)** explain to the user that if the user does not wish to pay OnPoint's third-party fee, the user may complete the service on the official government website.

12. In addition, compliance counsel revised the Telephone Consumer Protection Act ("TCPA") disclosure language to: **(1)** provide clear disclosures to users regarding the consent users are giving to be contacted; **(2)** obtaining the express written consent of the user required by the TCPA; **(3)** providing the user a clear option to skip, so that the user is not required to provide telephone information or consent to phone marketing; and **(4)** comply with the FTC Do Not Call Registry.

13. To assist the Receiver in monitoring the consumer interaction with the websites, she now automatically receives copies of all consumer correspondence with the websites which is monitored by her and her team. The Receiver will also monitor potential indicia of consumer confusion through refunds and charge-backs rates on a weekly basis.

14. Compliance counsel also reviewed privacy practices already in place at OnPoint. OnPoint has implemented several good privacy practices to help safeguard the privacy of consumer information in its care, some of which are critical to OnPoint's ongoing ability to comply

with privacy regulations and continue to safeguard consumers' personal information. With the assistance of compliance counsel, OnPoint has revised and posted an entirely new Privacy Policy and the Receiver will continue to implement the steps recommended to enhance and monitor use of data and its privacy protection culture. As part of that process, compliance counsel has reviewed and revised the Marketing Partner Agreements to add specific requirements to protect users' personal information and OnPoint, at the direction of the Receiver, is in the process of implementing. The Receiver also reviewed the marketing partners themselves and removed two partners that appeared to be improper partners. The Receiver also reviewed the complete flow of data collected, how used at every question and "offers" that are provided by the affiliates and marketing partners and removed those that appeared to be deceptive to consumers. The Receiver is able to provide this detailed voluminous information to the Court, if the Court deems necessary to this determination. The Receiver, with the assistance of compliance counsel and her team, will continue to monitor the marketing partners, affiliates and offers that interact with consumers by way of OnPoint's websites or targeted advertisements.

15. In the coming 30-60 days (depending on COVID-19 restrictions following the World Health Organization's declaration of a pandemic) the Receiver and compliance counsel will focus on the following priorities to ensure that the company is operating legally: (1) training employees regarding ad-content; (2) call center training; (3) reviewing and updating Free Guides and ensuring periodic updates; (4) updating free content to provide value add to consumers; (5) monitoring use of consumer personal data; (6) ensuring data gathered under the former websites is not used prospectively; and (7) comparing and updating freemium site content as needed to conform to information provided in free guides.

16. Through extensive work with various outside counsel and the parties to this litigation, it is the opinion of the Receiver that the Defendants' freemium and pay-for-services

business may operate legally and profitably through the implementation of the attached proposed modified website templates. The Receiver will continue to monitor the business on a daily basis to determine if the modified business may continue to be operated legally and profitably going forward. If the Receiver's opinion changes, she will abide by this Court's Orders and take the appropriate action.

17. Individual Defendants have cooperated substantially in assisting the Receiver to understand and analyze the Defendants' business, which is being operated out of 5 different offices in 5 different cities in 3 countries and is a relatively complicated business model. To continue to operate the business, the Receiver would be benefited by the assistance, on an as-needed basis, of individual Defendants Brent Levison, Chris Sherman and Elisha Rothman to assist her in understanding historic and ongoing business information.

18. While there is no prohibition against the Receiver compensating Individual Defendants in assisting her in operating a business legally, in an abundance of caution, the Receiver requests the authority of this Court to compensate Mr. Levison, Mr. Sherman and Mr. Rothman to serve as consultants in an hourly contractor role ($50/hr.) to continue to assist the Receiver in the fulfillment of her duties and responsibilities on an "as needed" basis under the Receiver's strict supervision.

WHEREFORE, the Receiver respectfully requests this Court enter an Order granting this motion and: (i) approving the use of the attached proposed modified templates to legally and profitably operate the Defendants' freemium and pay-for-services websites for the sites listed on Exhibits E, and the sites contained at Exhibits F, G, H and I attached; (ii) requiring that the Receiver consult with the FTC if any material changes are made to the approved website templates or the Receiver proposes to expand the Receivership Entities' business; (iii) if the FTC objects to such changes or expansion, requiring such changes to be presented to this Court for approval; (iv) authorizing the Receiver to

compensate certain Individual Defendants for work performed assisting the Receiver as hourly contractor consultants compensating each $50 per hour as the Receiver deems their services necessary to fulfill her duties; and (v) for such further relief as this Court deems just and proper.

### CERTIFICATION OF CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the undersigned counsel certifies that prior to filing this Motion the Receiver conferred with counsel for the parties regarding the relief requested in this Motion but is unable to represent the position of the Individual Defendants or the FTC at this time, the Receiver remains available to discuss the subject matter of this motion with the Parties during the coming weeks to resolve objections, if any.

Respectfully submitted this 13th day of March, 2020.

Respectfully submitted,

/s/Kenneth Dante Murena
Kenneth Dante Murena, Esq.
Florida Bar No. 147486
DAMIAN & VALORI LLP
1000 Brickell Avenue, Suite 1020
Miami, Florida 33131
Telephone: (305) 371-3960
Facsimile: (305) 371-3965
Email: kmurena@dvllp.com
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via electronic transmission via this Court's CM/ECF filing system on March 13, 2020 on all counsel or parties who have appeared in the above-styled action.

/s/Kenneth Dante Murena
Kenneth Dante Murena,
*Counsel for Melanie E. Damian,*
*Court-Appointed Receiver*