United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission,<br>Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 19-25046-Civ-Scola<br>) |
| On Point Global LLC and others,<br>Defendants. | )<br>)<br>) |

**Order Denying Motions to Dismiss**

Now before the Court are the Defendants' motions to dismiss. Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC (collectively the "Dragon Defendants") move to dismiss the Complaint for failure to state a claim (ECF No. 155). Burton Katz, Brent Levison, Elisha Rothman, Christopher Sherman, and the 49 Corporate Defendants identified in the motion (collectively the "On Point Defendants") move to dismiss the Complaint for lack of personal jurisdiction and for failure to state a claim (ECF No. 156). For the reasons set forth below, the Court **denies** both motions (**ECF Nos. 155, 156**).

**I. Personal Jurisdiction**

The On Point Defendants argue that the Court lacks personal jurisdiction over Carganet, Bronco, Cardozo, Mac Media, and 714 Media (collectively the "Foreign Defendants"). The Court does not agree.

"The Eleventh Circuit has held, consistent with other circuits, that federal statutes providing for nationwide service of process confer federal courts with personal jurisdiction over non-residents as long as such exercise of jurisdiction comports with the requirements of the Due Process Clause of the Fifth Amendment, including minimum contacts, fairness, and reasonableness." *FTC v. Alternatel, Inc.*, 2008 WL 11333090, at *1 (S.D. Fla. 2008) (Jordan, J.) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 939 (11th Cir. 1997)). Since the FTC Act allows for the defendants to be served in any judicial district in which they are found, the Florida long-arm statute does not apply, and all that remains is to examine whether personal jurisdiction over the Foreign Defendants in this case comports with the requirements of due process. 15 U.S.C. § 53(b); *see also, Alternatel, Inc.*, 2008 WL 11333090, at *1 (collecting cases).

The Eleventh Circuit uses a three-part due process test:

(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum;

(2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and

(3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (internal quotation marks omitted). As to the first prong (arising out of or relatedness) a court should "focus on the direct causal relationship between the defendant, the forum, and the litigation." *Id.* at 1355–56. As to the second prong (purposeful availment) a court may apply the traditional minimum-contacts test, or, in intentional-tort cases, may utilize the effects test. "Under the 'effects test,' a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Id.* at 1356 (citation omitted). "This occurs when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (internal punctuation & citation omitted). For cases bringing claims under FTC Act, "[t]he relevant forum for purposes of minimum contacts is the United States." *Alternatel, Inc.*, 2008 WL 11333090, at *1 (*SEC v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997)). As to the third prong (fair play and substantial justice) a court should "consider these factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the judicial system's interest in resolving the dispute." *Id.* at 1358 (quotation marks omitted).

Exercise of personal jurisdiction over the Foreign Defendants comports with due process. Carganet has maintained minimum contacts with the forum, and the remaining Foreign Defendants are alter egos of Individual Defendants who have minimum contacts with the forum.

Carganet developed, operated and advertised interactive websites in the United States. (ECF No. 1.) These websites were meant to target people in the United States by, for example, purporting to sell various United States licenses or offer other United States government services. (*see generally*, ECF No. 1.) The development of the allegedly misleading websites is central to this case, and thus it is sufficiently related. And, Carganet's conduct in developing and advertising these websites targeting United States citizens is sufficient to establish minimum

contacts. *See Scluptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996) (marketing activities in the forum are sufficient establish minimum contacts).

The other foreign companies, Bronco, Cardozo, Mac Media, and 714 Meida, are alter egos of the Individual Defendants in this case, Katz, Levison, Rothman, and Sherman respectively. Under the alter ego theory, the Court may impute the contacts of a resident to a non-resident when the two are alter egos. *Patin v. Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). "The theory underlying these cases is that, because the two corporations (or the corporation and its individual alter ego) are the *same entity*, the jurisdictional contacts of one *are* the jurisdictional contacts of the other for the purposes of the *International Shoe* due process analysis." *Id.* On entity is the alter ego of another entity or individual if the corporation is (1) "a mere instrumentality" of the defendant, and (2) the defendant engaged in "improper conduct" in the corporation's use or formation. *Vohra Health Services, P.A. v. Kane*, 2010 WL 11597976, *4 (S.D. Fla. Oct. 25, 2010) (Martinez, J.). The Complaint alleges that the Individual Defendants owned and controlled the companies, which "exist[ed] primarily to hold the Defendants' assets often offshore." (ECF No. 1 at ¶¶ 61-63, 64-66, 72-74, 75-77, 94.) This is sufficient to allege that the companies are mere instrumentalities of the Individual Defendants and that they are used for improper purposes. Since Katz, Levison, Rothman, and Sherman are all citizens of the United States (ECF No. 1 at ¶¶ 95-99), the remaining Foreign Defendants have minimum contacts with the United States.

Moreover, the exercise of jurisdiction in this case comports with traditional Fifth Amendment principles of fairness and reasonableness. A defendant challenging jurisdiction must demonstrate "a compelling case of constitutionally significant inconvenience." *Alternatel, Inc.*, 2008 WL 11333090, at *2 (citing *Republic of Panama*, 119 F.3d at 946-46). Here, the Defendants do not present a compelling case that defending this action in Miami will put them at a severe disadvantage. In fact, the Defendants do not even assert in their motion, (ECF No. 156 at 7-9), that it would be inconvenient to litigate in the Southern District of Florida.

**II. Failure to State a Claim**

Both the On Point Defendants and the Dragon Defendants argue that the FTC failed to state a claim. However, the FTC has sufficiently pled allegations demonstrating that (1) the Defendants have acted deceptively; (2) the Corporate Defendants are liable for the conduct alleged in the Complaint; and (3) the Individual Defendants are liable for the conduct alleged in the Complaint. Thus, the FTC successfully stated a claim.

### A. Deceptive Acts

The Complaint sufficiently alleges that the Defendants acted deceptively. The FTC describes many of the websites the Defendants used to falsely offer government services in exchange for consumers' money and personal data, and it alleges that the Defendants' sites misrepresented that they offered government services or eligibility determinations, prompting consumers to pay money or submit data in exchange. (ECF No. 1 at ¶¶ 109-168.) These detailed allegations satisfy the Civil Rule of Civil Procedure 9(b) factors by explaining the "who, what, when, where, and how" of the Defendants' false representations. *Cf. Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Nevertheless, the Defendants argue (1) that the FTC only alleged that six of the websites are misleading and (2) that the Defendants' websites are not likely to mislead consumers. The Court addresses these principal arguments in turn.

First, the FTC alleged that all of the Defendants' motor vehicle, licensing, and benefits-related websites were misleading, and that the many websites within each category used identical, or very similar, designs and language. (CEF No. 1 at ¶¶ 109-115.) The FTC included examples of each category of websites, and stated that the allegations applied to all of the identical or very similar websites. *Id.* It would be impracticable or perhaps impossible to require the FTC to plead each misrepresentation that each website has ever made over a period of several years. *Cf. McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) (finding the FTC need not prove reliance by each consumer on widespread misrepresentations).

Second, the Defendants' argument that the misrepresentations are unlikely to mislead consumers is not an appropriate argument for the motion to dismiss stage. At this stage, this Court must consider the allegations of the Complaint in the light most favorable to the FTC, and should not require evidence that consumers were actually confused. *FTC v. USA Financial LLC*, 415 F. App'x 970, 973 (11th Cir. 2011) (proof of actual deception is not required).

### B. Corporate Defendants' Liability

The Complaint has sufficiently alleged that the Corporate Defendants formed a common enterprise and can thus be held liable for the enterprise's violations of the FTC Act. A common enterprise exists when Corporate Defendants "share office spaces and employees, commingle funds, coordinate advertising efforts, and operate under common control." *FTC v. Lanier Law, LLC*, 715 Fed. App'x 970, 979 (11th Cir. 2017). When a common enterprise exists, all members of the common enterprise are equally liable for the actions of the enterprise as a whole. *Id.* The Complaint describes how the Corporate Defendants share officers and employees (ECF No. 1 at ¶ 102), shared office

space (*id.* at ¶ 103), commingled funds (*id.* at ¶ 104), used unified marketing (*id.* at ¶ 105), and operated under common control (*id.* at ¶ 106). Moreover, the FTC grouped the many Corporate Defendants by their roles in the scam—*i.e.* "Transaction Entities," "Operating Entities," and "Holding Companies"—and describes each category of entities. (*Id.* at ¶¶ 80-107.) These allegations are sufficient to state a claim. *See Fried v. Stiefel Laboratories, Inc.*, 2012 WL 4364300, *7 (S.D. Fla. June 8, 2012) (King, J.) ("Where multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud"). Because the Complaint alleges the elements of common enterprise and details each Corporate Defendant's role in the scheme, it meets Rule 9(b)'s pleading standards.

### C. Individual Defendants' Liability

The FTC sufficiently alleges that the Individual Defendants are liable for the alleged deceptive acts detailed in the Complaint. In the Eleventh Circuit, an individual may be held liable for a violation of the FTC Act where (a) he participated in or had the authority to control the deceptive acts or practices and (b) had knowledge of the wrongful acts of practices. *FTC v. IAB Mktg. Assoc. LP*, 746 F.3d 1228, 1233 (11th Cir. 2014).

The Complaint makes allegations sufficient to state these elements. It says that Katz, Zangrillo, Levison, Rothman, Sherman, and Mahon were each an owner, manager, and officer of one or more specified Corporate Defendants. (ECF No. 1 at ¶¶ 61, 64, 67, 72, 75.) It describes how Katz, Zangrillo, Levison, Rothman, Sherman, and Mahon obtained merchant accounts to facilitate processing on the Corporate Defendants' websites and set up mail forwarding accounts, which allowed the Defendants to obscure the websites' ownership. (*Id.* at ¶¶ 62, 65, 70, 73, 76.) The Complaint alleges that all six Individual Defendants were signatories on depository bank accounts that handled funds from the sales of guides and customer data. (*Id.*) It states that they personally received distributions from the Corporate Defendants. (*Id.*) It also states that Katz, Levison, and Mahone organized entities for the alleged common enterprise and that Katz and Levison signed corporate documents on behalf of those entities. (*Id.* at ¶¶ 61, 64, 89-90.) The Complaint provides details regarding how each of the Individual Defendants knew or should have known of the alleged deceptive practices. (*Id.* at ¶¶ 61, 86-87 (Katz); ¶ 64 (Levison); ¶ 67 (Zangrillo); ¶¶ 69, 102 (Mahone); ¶¶ 93, 102 (Rothman; ¶ 76 (Sherman).) Finally, it alleges that each Individual Defendant has "formulated, directed, controlled, had the authority to control, or participated in the acts and practices" that the Complaint describes. (*Id.* ¶¶ 63, 66, 68, 71, 74, 77.)

In sum, the Court **denies** the Defendants' motions to dismiss (**ECF No. 155, 156**).

**Done and ordered** at Miami, Florida on April 9, 2020.

_____
Robert N. Scola, Jr.
United States District Judge