## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No. 19-CV-25046-Scola**

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

ON POINT GLOBAL LLC, *et al.*,

    Defendants.

**PLAINTIFF FTC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS' DEMAND FOR JURY TRIAL AND CERTAIN AFFIRMATIVE DEFENSES**

Certain Defendants opposed[1] the FTC's motion to strike their jury trial demand and specified affirmative defenses based on misinterpretations of both settled law and a recent Supreme Court decision. Because the FTC's Complaint seeks only equitable remedies, the Defendants have no right to a jury trial. Further, Defendants' opposition to striking their estoppel and waiver defenses ignores settled case law. The FTC therefore respectfully requests that the Court grant its motion to strike Defendants' jury demand and the specified affirmative defenses.

## I.  THE DEFENDANTS ARE NOT ENTITLED TO A JURY TRIAL BECAUSE THE FTC SEEKS ONLY EQUITABLE RELIEF.

The Supreme Court has held that jury trials are available only where: (1) the nature of the action and (2) the nature of the remedy are more analogous to an 18th century suit at common law than a suit in equity.[2] *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989); *Tull v. United States*, 481 U.S. 412, 417-18 (1987). None of the Defendants contends the nature of the FTC's action is legal rather than equitable. The Defendants, however, all contend that the disgorgement relief the FTC seeks is legal, not equitable.[3] Zangrillo Opp'n at 5; Katz Defs.' Opp'n at 1-2; Mahon Opp'n (adopting Katz Defs.' Opp'n). The Defendants' arguments are based primarily on misrepresentations of the Supreme Court's recent decision in *Liu v. SEC*, No. 18-1501, - U.S. -, 2020 WL 3405845 (June 22, 2020). In fact, the *Liu* opinion reinforced the long-settled fact that disgorgement is an equitable remedy, holding that the SEC Act authorizing

---

[1] Only the six individual defendants (Burton Katz, Brent Levison, Elisha Rothman, Christopher Sherman (collectively, "Katz Defendants"), Robert Zangrillo, and Arlene Mahon) and two corporate defendants (Waltham Technologies LLC and Dragon Global Management LLC) opposed the FTC's Motion. Collectively, this reply refers to these defendants as "Defendants." The remaining corporate defendants did not oppose the Motion, and the Katz Defendants and Mahon and Waltham no longer oppose the striking of their laches and delay-based defenses. Katz Defs.' Opp'n (ECF No. 255) at 1 n.1; Mahon Opp'n (ECF No. 256) at 1 n.1.

[2] While all the Defendants recognize this two-part test, Zangrillo attempts to import an additional "prejudice" requirement. Zangrillo Opp'n (ECF No. 257) at 2-4. In support of this novel theory, Zangrillo cites cases regarding the standards for striking *pleadings, factual allegations, and affirmative defenses*. Zangrillo Opp'n at 2-4 and cases cited. These cases have nothing to do with whether Defendants have a right to a jury trial.

[3] Defendants' argument is particularly absurd because no party disputes that Section 13 of the FTC Act, 15 U.S.C. § 53(b), does not authorize remedies at law, regardless of whether a jury trial is held. Defendants' arguments are thus simply a disguised attack on the FTC's ability to obtain monetary remedies at all.

"equitable relief" allowed awards of disgorgement. *Id.* at *2.

Further, the Court in *Liu* undercut the very foundation of Defendants' arguments. *See* 2020 WL 3405845, at *5. Defendants previously attacked the reasoning of *Porter v. Warner Holding Co.*, 328 U.S. 395 (1946), which underpins the FTC's authority to obtain equitable monetary relief. To do so, they relied on a Seventh Circuit case that claimed the Supreme Court had *sub silentio* overturned *Porter,* and the FTC thus could no longer obtain monetary relief.[4] However, the Court has now reaffirmed *Porter*, eviscerating the *sub silentio* basis upon which Defendants previously built their argument. *Liu*, 2020 WL 3405845, at *5 (relying on *Porter*). With their primary argument in tatters, the Defendants instead contend: (1) imposing joint and several liability converts disgorgement from an equitable remedy to a remedy at law; (2) a disgorgement award measured by gross revenues is not permitted in equity; (3) the FTC will not return recovered funds to consumers, making its remedy inequitable; and (4) all equitable remedies require tracing of funds.[5] None of these arguments defeats the FTC's motion to strike.

First, the Defendants claim the Supreme Court in *Liu* found joint and several liability cannot be equitable. Katz Defs.' Opp'n at 7-8; Zangrillo Opp'n at 8. This is false. The Court actually recognized that traditional equitable remedies "permit liability for partners engaged in concerted wrongdoing," allowing courts some "flexibility to impose collective liability." *Liu*, 2020 WL 3405845, at *11. Indeed, the Court observed that such liability may be appropriate in *Liu* itself, where petitioners were officers and managers of the fraudulent company, and where no evidence suggested any party was "a mere passive recipient of profits," that funds were not commingled, or any other circumstances that "would render a joint-and-several disgorgement

---

[4] *E.g.*, Zangrillo Mot. to Dissolve *Ex Parte* TRO (ECF No. 37) at 21 n.14 (citing *FTC v. Credit Bureau Center LLC*, 937 F.3d 764 (7th Cir. 2019); Zangrillo Opp'n to Prelim. Inj. (ECF No. 69) at 18-19; Katz Defs.' Mot. to Stay Prelim. Inj. (ECF No. 50) at 9-11; Katz Defs.' Mot. to Dismiss (ECF No. 156) at 19-20; Zangrillo Mot. to Dismiss (ECF No. 155) at 16-18; *see also Gem Merch. Corp.*, 87 F.3d at 469 (relying on *Porter* to find the FTC Act authorized equitable monetary relief); *FTC v. U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984) (same).

[5] The Supreme Court touched on joint-and-several liability, measuring awards, and the return of funds in dicta in *Liu*, observing that "[b]ecause the parties focused on the broad question whether any form of disgorgement may be ordered and did not fully brief these narrower questions, we do not decide them here. We nevertheless discuss principles that may guide the lower courts' assessment of these arguments on remand." *Liu*, 2020 WL 3405845, at *9. The "principles" the Court laid out support the remedies the FTC sought, as discussed herein. The Court in *Liu* did not mention or discuss tracing of assets.

order unjust." *Id*. Accordingly, the Court remanded to the Ninth Circuit to consider whether the petitioners were jointly and severally liable as "partners in wrongdoing." *Id*.

The joint-liability considerations described in *Liu* are consistent with longstanding law imposing joint and several liability on both entities that act as a common enterprise and individuals who control or participate in, and know of, the activities of that enterprise. *See, e.g., Gem Merch. Corp.*, 87 F.3d at 468 (affirming joint and several judgment against individual and company because individual had requisite control and knowledge); *FTC v. Lanier Law LLC*, 715 Fed. App'x 970, 975, 979-80 (11th Cir. 2017) (outlining factors demonstrating that businesses operated together as common enterprise); *FTC v. Pointbreak Media LLC*, 376 F. Supp. 3d 1257, 1270 (S.D. Fla. 2019) (holding common enterprise and its principals jointly liable for unlawful activity conducted while they "maintained an unholy alliance"). In this case, the Court has already ruled that the FTC pled sufficient facts to establish that the entity defendants formed a common enterprise, and that each individual had sufficient control of, participation in, and knowledge of that enterprise's activities; indeed, the FTC sufficiently demonstrated these facts to obtain a preliminary injunction as to all Defendants. Prelim. Inj. (ECF No. 126) at 2-3 (finding the FTC likely to prevail and entering asset freeze and preliminary injunction); Order Denying Mots. to Dismiss (ECF No. 194) at 4-5. These facts satisfy *Liu*'s "partners engaged in concerted wrongdoing" principle.

Second, the Defendants claim *Liu* requires deduction of the expenses they incurred in running the fraud from their total revenues. Zangrillo Opp'n at 8-9; Katz Defs.' Opp'n at 7. Again, this is false. In fact, the Court in *Liu* recognized that "when the 'entire profit of a business or undertaking' results from the wrongdoing, a defendant may be denied 'inequitable deductions' such as for personal services." *Liu*, 2020 WL 3405845 at *11 (internal citations omitted). The principles the Supreme Court outlined in *Liu* are consistent with longstanding law in the Eleventh Circuit and elsewhere regarding the calculation of equitable relief. The Eleventh Circuit has held that "defendants in a disgorgement action are not entitled to deduct costs associated with committing their illegal acts" – mirroring the Supreme Court's disapproval of "inequitable deductions" where an undertaking's profits result from wrongdoing. *Compare FTC v. Wash. Data Res., Inc.*, 704 F. 3d 1323, 1327 (11th Cir. 2013) (quoting *FTC v. Bronson Partners, LLC*, 654 F.3d 539, 375 (2d Cir. 2011)), *with Liu*, 2020 WL 3405845, at *11.

Indeed, the potential deductions the Supreme Court identified in *Liu* illustrate why

3

deducting the costs of a fraudulent marketing scheme would be inequitable. In *Liu*, the petitioners defrauded investors by promising to invest their money in the construction of a hospital, then diverting much of it to other uses. *Liu*, 2020 WL 3405845, at *4. The Supreme Court noted it may be proper to deduct money that was *actually invested as promised* from the total. *Id*. at *12. However, most FTC cases, including this one, concern false representations about products or services the defendants *do not deliver as promised,* tainting the entire transaction. *See FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, (11th Cir. 2014) ("the salient issue in fraudulent-misrepresentation cases 'is whether the seller's misrepresentations tainted the customer's purchasing decisions'") (citation omitted); *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir.2000); *FTC v. Figgie Int'l, Inc*., 994 F.2d 595, 606 (9th Cir. 1993) ("The fraud in the selling, not the value of the thing sold, is what entitles consumers in this case to full refunds or to refunds for each [product] that is not useful to them."). The FTC's fraudulent marketing cases thus fall squarely into the Supreme Court's category of undertakings whose "entire profit . . . results from the wrongdoing." *Liu*, 2020 WL 3405845 at *11 (citation omitted).

Third, the Katz Defendants claim the remedies the FTC seeks are not equitable because the FTC will not return the money to defrauded consumers. Katz Defs.' Opp'n at 8-9. This claim is simply factually false. Throughout this case, the FTC has sought to preserve Defendants' ill-gotten gains to return them to Defendants' victims.[6] *E.g*., FTC's Mot. for *Ex Parte* TRO (ECF No. 4) at 33 (seeking asset freeze to preserve the possibility of redress to consumers); FTC's Opp'n to Mot. to Dissolve TRO (ECF No. 38) at 10 (noting that purpose of asset freeze is to preserve funds for consumer redress); FTC's Opp'n to Mot. to Stay Prelim. Inj. (ECF No. 167) at 8 ("The purpose of an asset freeze is to preserve assets to redress the consumers Defendants harmed."). Further, as in *Liu*, the Katz Defendants' arguments are at best premature, as there is no order in this case "directing any proceeds to the Treasury." *Liu*, 2020 WL 3405845, at *10. This Court, like the Supreme Court, "need not address" whether it would violate equitable principles should a hypothetical order direct the FTC's future recovery to the

---

[6] Redressing injured consumers has long been a central part of the FTC's mission; from 2016 to 2019, the Commission obtained and returned approximately $1 billion to consumers under 15 U.S.C. § 53(b), and caused defendants to directly return billions more. *See* Data on Refunds to Consumers, *available at* https://www.ftc.gov/enforcement/cases-proceedings/refunds/data-refunds-consumers.

Treasury.[7] *Id*.

Fourth, the Defendants claim that equity prohibits the FTC from recovering any funds unless they can be traced to the Defendants' fraud. Katz Defs.' Opp'n at 8; Zangrillo Opp'n at 5-6. This argument, unlike the Defendants' first three points, is not based on *Liu*. In fact, the majority in *Liu* never mentions tracing. Instead, Defendants simply rehash arguments this Court and others have already rejected. *See* Order Denying Mot. to Stay Asset Freeze Pending Appeal (ECF No. 174) at 2 (rejecting Defendants' arguments that assets cannot be frozen unless they are traced to the fraud); *FTC v. IAB Mktg. Assocs., LP*, 972 F. Supp. 2d 1307, 1315 (S.D. Fla. 2013) (Scola, J.) (same). Indeed, as the Second Circuit thoroughly discussed in *FTC v. Bronson Partners*, tracing is required where a private plaintiff seeks to impose constructive trust, because the basis of such a plaintiff's claim is that he or she retains superior title to the property in question. 654 F.3d at 373-74. In contrast, a public agency seeking equitable monetary relief under statutory authority claims no priority of title and thus need not trace specific assets. *Id.*; *see also FTC v. Williams, Scott & Assocs. LLC*, No. 1:14-cv-1599, 2015 WL 7351993, at *1 (N.D. Ga. Sept. 22, 2015) (applying *Bronson* and finding tracing unnecessary in analyzing asset freeze); *FTC v. Lanier Law LLC*, No. 3:14-CV-786, 2015 WL 9302786, at *2 (M.D. Fla. Dec. 22, 2015) (same). As it is "by now … uncontroversial" that tracing is not required in FTC disgorgement cases, *Bronson*, 654 F.3d at 374, the Court need not revisit its prior rulings merely to find that the remedies the FTC seeks are equitable and a jury trial is not warranted.[8]

---

[7] Additionally, the Supreme Court's dicta in *Liu* regarding the disposition of recovered funds rested on its interpretation of a clause in the SEC Act that "restricts equitable relief to that which 'may be appropriate or necessary for the benefit of investors.'" *Liu*, 2020 WL 3405845, at *9-10 (quoting 15 U.S.C. § 78u(d)(5)). No such restriction exists in the FTC Act section at issue, 15 U.S.C. § 53(b), rendering *Liu's* discussion of this issue particularly irrelevant here.

[8] Nor does *Kokesh v. SEC*, 137 S. Ct. 1635 (2017) support Defendants' request for a jury trial here. As one court in this district has explained, "the Supreme Court expressly limited *Kokesh* to the 'sole question' of 'whether disgorgement, as applied in SEC enforcement actions, is subject to § 2462's limitation period.' . . . The Supreme Court does not state in *Kokesh* that its ruling determines that disgorgement is a penalty in all contexts. And, *Kokesh* certainly did not discuss or overrule the longstanding precedent of categorizing disgorgement as an equitable remedy." *United States v. Meyer*, 376 F. Supp. 3d 1290, 1295 (S.D. Fla. 2019) (denying defendant's request for jury trial) (citing *Kokesh*, 137 S. Ct. at 1642 n.3; *United States v. Rapower-3, LLC*, 294 F. Supp. 3d 1238, 1241 (D. Utah 2018), *aff'd*, 960 F.3d 1240 (10th Cir. 2020)).

## II. THE COURT SHOULD STRIKE LEGALLY INSUFFICIENT DEFENSES.

### a. Courts Routinely Grant Motions to Strike in the Interest of Judicial Economy and to Prevent Prejudice to a Party

The Katz Defendants argue that the Court should not dismiss their defenses before they have the opportunity to take discovery. Katz Defs.' Opp'n at 3, 12, 16. According to their reasoning, the Court should allow them to go on a fishing expedition, and wait to reject their legally unsustainable defenses closer to trial. This waste of money and resources on legally deficient defenses is exactly the harm that Rule 12(f) is intended to avoid. *Blake v. Batmasian*, 318 F.R.D. 698, 700 (S.D. Fla. 2017) ("The purpose of a motion to strike is to clean up the pleadings, remove irrelevant or otherwise confusing materials, and avoid unnecessary forays into immaterial matters."). Indeed, eliminating meritless defenses early "may be extremely valuable to all concerned in order to avoid the needless expenditures of time and money in litigating issues which can be seen to have no bearing on the outcome." *Aidone v. Nationwide Auto Guard, LLC*, 295 F.R.D. 658, 660-61 (S.D. Fla. 2013) (citation omitted). Here, the Katz Defendants' insufficient defenses only seek to distract from the real issue – Defendants' illegal conduct.

Moreover, courts have recognized that in an enforcement action brought by a government agency, "[a]n increase in the time, expense and complexity of a trial may constitute sufficient prejudice to warrant granting a plaintiff's motion to strike." *SEC v. Thrasher*, No. 92-cv-6987, 1995 WL 456402, at *6 (S.D.N.Y. Aug. 2, 1995) (striking affirmative defense that could "unnecessarily broaden discovery" by requiring additional depositions of otherwise uninvolved persons); *SEC v. Sarivola*, No. 95 CIV 9270, 1996 WL 304371, at *1 (S.D.N.Y. June 6, 1996) (striking laches and estoppel defenses and noting that "[c]ourts must not be oblivious to the caseload pressure and budgetary restrictions on government enforcement agencies"). Allowing discovery on the Kat Defendants' specious defenses would unnecessarily consume the agency's time and resources. For example, Katz Defendants' Opposition already suggests they will seek discovery regarding the FTC's investigative process and will likely seek to depose uninvolved FTC staff – facts completely unrelated to the merits of this case.

### b. The Katz Defendants' Defenses Are Insufficient as a Matter of Law

As a preliminary matter, Katz Defendants' lengthy argument about the pleading standard is irrelevant because even under their proposed liberal pleading standard, conclusory defenses that state no facts cannot survive a Rule 12(f) motion. *See Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1195 (S.D. Fla. 2019) (citation omitted); *see also* Mot. at 6

6

(ECF No. 242). In addition, defendants' estoppel and waiver defenses are legally insufficient because courts have overwhelmingly rejected them in enforcement actions brought by the government. *See, e.g.*, *SEC v. Silverman*, No. 04-80153, 2009 WL 1376248, at *4 (11th Cir. 2009); *Meyer*, 376 F. Supp. 3d at 1296-97; *FTC v. Nat'l Urological Group, Inc.*, No. 04-CV-3294, 2005 WL 8155166, at *5 (N.D. Ga. June 24, 2005); *SEC v. KPMG LL*P, No. 03 cv 671, 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (striking estoppel defense based on Commission actions during an investigation and noting that "the doctrine of equitable estoppel . . . is applied with the utmost caution and restraint"); *see also* Mot. at 8-9. The Katz Defendants argue in the alternative if the Court finds their defenses insufficient as pled, it should permit them to move to amend their Answers. Katz Defs.' Opp'n at 16-17. Defendants' proposed amended estoppel and waiver defenses, however, offer nothing that makes them legally sufficient, making amendment futile and wasting the Court's and the parties' valuable time and resources. *See Guarantee Ins. Co. v. Brand Mgmt. Serv.*, Inc., No. 12-61670-CIV, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013) (explaining that "courts have found amendments to defenses futile if they would necessarily fail" and "in the context of affirmative defenses, the futility standard necessarily merges with the standard for striking defense under Rule 12(f)") (citations and quotations omitted).

      First, the Eleventh Circuit has repeatedly held that an estoppel claim against the government will lie "only in the most extreme circumstances." *Gibson v. Resolution Trust Corp.*, 51 F.3d 1016, 1025 (11th Cir. 1995).[9] The court's narrow view of the defense is consistent with the Supreme Court's jurisprudence. *See CFTC v. S. Trust Metals, Inc.*, 894 F.3d 1313, 1323 (11th Cir. 2018), cert. denied sub nom. *S. Trust Metals, Inc. v. CFTC*, 139 S. Ct. 1464 (2019) ("The Supreme Court has never established that the doctrine of equitable estoppel can be applied against the government and, in fact, has implied that it can not [sic] be.") (quoting

---

[9] In fact, some courts in this Circuit have opined that a defendant may only plead an estoppel defense where the government is acting in a proprietary capacity, *i.e.*, acting for the commercial benefit of a particular agency, and not in a sovereign capacity to enforce a public right, as here. *See, e.g.*, *In re Turtle Creek, Ltd*, 194 B.R. 267, 272 (Bankr. N.D. Ala. 1996) (citing *FDIC v. Harrison*, 735 F.2d 408, 410-11 (11th Cir. 1984)); *see also United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir. 1988) ("This Court has held that for estoppel to apply against the Government (1) the traditional private law elements of estoppel must have been present; (2) the Government must have been acting in its private or proprietary capacity as opposed to its public or sovereign capacity; and (3) the Government's agent must have been acting within the scope of his or her authority.") (citation omitted); *United States v. Qurashi*, No. 8:03-CV-1002-T-27EAJ, 2004 WL 1771071, at *2 (M.D. Fla. June 16, 2004).

*Tovar-Alvarez v. U.S. Attorney Gen.*, 427 F.3d 1350, 1353–54 (11th Cir. 2005)); *Silverman*, 2009 WL 1376248, at *4 (affirming dismissal of defendants' estoppel claim alleging the SEC waited too long to bring a motion). Accordingly, a litigant asserting estoppel against the government "must establish the traditional requirements for equitable estoppel and that the Government engaged in affirmative and egregious misconduct; that is, conduct which at least exceeds a level the Supreme Court already has deemed insufficient to trigger equitable estoppel." *Sanz v. U.S. Sec. Ins. Co.*, 328 F.3d 1314, 1320 (11th Cir. 2003). The traditional elements of equitable estoppel are: "(1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; [and] (3) detrimental reliance." *United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003).

The Katz Defendants acknowledge the high standard applicable to estoppel, but contend their conclusory, one-line defense, which fails to allege any governmental misconduct, is sufficient. It is not. Indeed, even defendants' proposed amendment, which comes six months after the FTC served its complaint, fails to plead key elements of estoppel. Katz Defs.' Opp'n at 16-18; Proposed Am. Answer (ECF No. 255-1). In particular, defendants plead no facts indicating that the FTC engaged in affirmative and egregious wrongdoing, nor do they indicate how the FTC caused them serious injury. The defense apparently rests on Katz Defendants' claim that an FTC staff member did not disclose a different office's investigation into defendants' business practices when defendants' representative contacted the staff member in March 2019 and May 2019.[10] Notably, defendants do not allege the contacted staff member's purported failure to disclose even reached – let alone exceeded – the level of mere negligence, which cannot support estoppel against the government. *McCorkle*, 321 F.3d at 1297 ("[a]ffirmative misconduct requires more than governmental silence, acquiescence or even negligence"). They do not allege that the staffer told them their conduct was legal. Even if defendants could prove intentional concealment of a nonpublic investigation (which they cannot

---

[10] The import of the proposed amended allegations is that the FTC staff did not disclose its nonpublic investigation to the Defendants. This does not come close to "exceed[ing] a level the Supreme Court already has deemed insufficient" for estoppel. *See Sanz*, 328 F.3d at 1319-20 (discussing the Supreme Court's consistent denial of estoppel claims based on misinformation from government agents and citing *Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 434, (1990); *Schweiker v. Hansen*, 450 U.S. 785, 786 (1981); and *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384-85 (1947)).

because no such concealment took place), such facts would not support estoppel because they do not constitute "affirmative and egregious misconduct." *Wade Pediatrics v. Dep't of Health & Human Servs.*, 567 F.3d 1202, 1207 (10th Cir. 2009) ("Silence, of course, does not rise to the level of giving erroneous advice-which is still insufficient to warrant estoppel against the government-let alone to the level of 'affirmative misconduct' required to warrant estoppel against the government.") Moreover, defendants cannot claim detrimental reliance because there is no allegation that the FTC staff member the defendants say they contacted knew anything about their conduct, let alone assured them it was legal.[11] Thus, defendants' assertion that FTC staff's purported failure to disclose an investigation caused them to believe that "the FTC did not consider [their] business practices to be illegal" is absurd and unjustified.[12] Katz Defs.' Opp'n at 17. Because defendants cannot articulate even a suggestion of affirmative and egregious governmental misconduct, their estoppel defense is unviable and the proposed amendment is futile.

Second, Katz Defendants' equitable waiver defense is similarly specious. The law is clear that the government cannot waive its sovereign capacity to vindicate the public interest. *See e.g., SEC v. Morgan, Lewis & Bockius*, 209 F.2d 44, 49 (3d Cir. 1953) (the SEC "may not waive the requirement of an act of Congress . . ."); *FTC v. Leshin*, No. 06-civ-61851, 2007 WL 9703567, at *4 (S.D. Fla. Oct. 9, 2007); *FTC v. Bronson Partners, LLC*, No. 04-1866, 2006 WL 197357, at *2 (D. Conn. Jan. 25, 2006); *SEC v. Keating*, No. 91-6785, 1992 WL 207918, at *3 (C.D. Cal. July 23, 1992). As the FTC noted in its Motion, this Court has already held so in an FTC enforcement action. *FTC v. Premier Precious Metals, Inc.*, No. 12-cv-60504-RNS, slip op. at 1-2 (S.D. Fla. Dec. 5, 2012) (ECF No. 86). Defendants attempt to overcome this fatal deficiency by

---

[11] To be clear, as defense counsel is well aware, the authority to determine whether particular business practices violate the FTC Act lies exclusively with the Commission, not with FTC staff.

[12] Katz Defendants' proposed amended allegations are markedly distinct from the cases they cite where courts did not strike an estoppel defense. *FTC v. Directv, Inc.*, No. 15-CV-01129, 2015 WL 9268119 (N.D. Cal. Dec. 21, 2015) (alleging that FTC delayed its suit for years after it was invited to participate in a resolution of the acts at issue in its claims and that defendant relied on its settlement agreement with state authorities in designing its subsequent disclosures); *FTC v.Alcoholism Cure Corp.*, No. 10-CV-266J34, 2010 WL 11474441, at *3 (M.D. Fla. Dec. 13, 2010) (alleging that defendant was led to believe his conduct was not illegal because the FTC stopped its investigations multiple times). Unlike these unusual fact patterns, here, there is no conceivable allegation that the FTC staff member indicated any position whatsoever on defendants' business practices.

9

conflating waiver with estoppel. Unsurprisingly, defendants cite no authority for evaluating the two separate doctrines under the same standard. Indeed, equitable waiver has distinct legal requirements. Namely, waiver requires that the FTC voluntarily and intentionally relinquished a known right to enforce the law – which would be so farfetched not even defendants assert it. *See Nat'l Urological Group*, 2005 WL 8155166, at *12 (citing *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994) (noting that waiver "is a distinct claim from equitable estoppel")). Even assuming waiver were available here (it is not), Katz Defendants' sparse and convoluted allegations – in their Answer and their proposed amended answer – do not even create an inference of implicit abandonment of a known right, let alone of "intentional relinquishment." In particular, the Katz Defendants do not and cannot assert the Commission ever indicated it was waiving its right to enforce the law. The Court should thus strike the waiver defense as utterly deficient, and deny leave to amend due to futility.

### c. The Defendants' Reservation of Rights Is Not a Valid Affirmative Defense

The Defendants apparently recognize they must obtain the leave of Court to amend their Answers to raise new or amend existing affirmative defenses. Katz Defs.' Opp'n at 18; Zangrillo Opp'n at 10 n.1. Nor do they dispute that a reservation of right to amend is a nullity, and not the proper legal mechanism to raise additional defenses. *See id*. They nonetheless contend that the Court should deny the FTC's motion because it is a waste of resources, and the FTC did not demonstrate prejudice.[13] Notably, courts, including this one, have exercised their discretion to strike reservation of rights clauses without requiring a showing of prejudice. *See, e.g.*, *Premier Precious Metals*, No. 12-cv-60504-RNS, slip op. at 2. Further, Defendants could have saved the Court's and the parties' time and resources by simply excluding this meritless defense. Because Defendants' attempts to reserve the right to introduce new defenses has "no effect" and is contrary to the Federal Rules of Civil Procedure, the Court should strike these clauses. *See id.*; *see also Achievement & Rehab. Centers, Inc. v. City of Lauderhill*, No. 12-61628-CIV, 2012 WL 6061762, at *2 (S.D. Fla. Dec. 6, 2012); Mot. at 9-10.

---

[13] Zangrillo also assert that the FTC's Motion should be denied because it is "confused" due to the FTC's contention that Defendants have waived any defenses not yet asserted and that Defendants may, in any event, obtain the Court's leave to amend their answers. Zangrillo Opp'n at 10. The FTC's position is entirely consistent with the Federal Rules of Civil Procedure: while Defendants may seek the Court's leave to assert new defenses, the FTC may rightfully argue that their failure to timely assert defenses constitutes waiver.

Dated: July 6, 2020

Respectfully submitted,

*/s/ Sana Chaudhry*
Sarah Waldrop, Special Bar No. A5502583
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry, Special Bar No. A5502350
(202) 326-2679; schaudhry@ftc.gov
Nicholas Cartier, Special Bar No. A5501510
(202) 326-2014; ncartier@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

## CERTIFICATE OF SERVICE

I hereby certify that, on July 6, 2020, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

**Counsel for Defendants Burton Katz, Brent Levison, Elisha Rothman, and Christopher Sherman:**

Robert W. Thielhelm, Jr. (rthielhelm@bakerlaw.com)
Jonathan B. New (jnew@bakerlaw.com)
Jimmy Fokas (jfokas@bakerlaw.com)
Patrick T. Campbell (pcampbell@bakerlaw.com)
Jeffrey D. Martino (jmartino@bakerlaw.com)
Lauren P. Lyster (llyster@bakerlaw.com)
Denis Durkin (ddurkin@bakerlaw.com)
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111


**Counsel for Defendants Arlene Mahon and Waltham Technologies LLC:**

Justin B. Kaplan (jkaplan@difalcofernandez.com)
DiFalco, Fernandez & Kaplan
777 Brickell Ave, Suite 630
Miami, FL 33131

Xavier A. Franco (xfranco@mcper.com)
McArdle, Perez & Franco, PL
255 Alhambra Circle, Suite 925
Coral Gables, FL 3313


**Counsel for Defendants Robert Zangrillo and Dragon Global Management LLC:**

Matthew Schwartz (mlschwartz@bsfllp.com)
John Zach (jzach@bsfllp.com)
Sara Winik (swinik@bsfllp.com)
Marshall Dore Louis (mlouis@bsfllp.com)
Boies Schiller Flexner LLP
55 Hudson Yards, 20th Floor
New York, NY 10001

**Counsel for Defendant Elisha Rothman:**

Solomon B. Genet (sgenet@melandrussin.com)
Joshua W. Dobin (jdobin@melandrussin.com)
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131


**Counsel for Receiver Melanie E. Damian and Corporate Defendants (except Dragon Global Management LLC and Waltham Technologies LLC):**

Kenneth D. Murena (kmurena@dvllp.com)
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131


*/s/ Sana Chaudhry*
Sana Chaudhry