United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Federal Trade Commission, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-25046-Civ-Scola |
| ) | |
| On Point Global LLC and others, ) | |
| Defendants. ) | |

### Order on Motions to Stay and Resolve Receivership Conflict

Now before the Court is the Plaintiff Federal Trade Commission's ("FTC") Motion to Resolve Receivership Conflict (ECF No. 272) and Defendants' Motions to Stay Proceedings (ECF Nos. 278, 280, 283). For reasons stated below, the Court **denies** the FTC's motion to resolve receivership conflict (**ECF No. 272**) and **denies** the Defendants' motion to stay proceedings (**ECF No. 278**).

### I. Background

The Parties' motions arise from the same legal question currently under consideration by the United States Supreme Court. (*See* ECF No. 272, at 3; ECF No. 278, at 7.) Specifically, on July 9, 2020, the Supreme Court granted petitions for certiorari in *AMG Capital Management, LLC v. FTC*, 910 F.3d 417 (9th Cir. 2018), *cert. granted* (U.S. July 9, 2020) (No. 19-508) and *FTC v. Credit Bureau Center, LLC*, 937 F.3d 764 (7th Cir. 2019), *cert. granted* (U.S. July 9, 2020) (No. 19-825) and consolidated the cases for briefing and oral argument to consider the question of whether Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b), by authorizing injunctions, also authorizes the Federal Trade Commission to demand monetary relief such as restitution—and if so, the scope of the limits or requirements for such relief. The Supreme Court's consideration of the question presented in *AMG Capital Management* and *Credit Bureau Center* follows on the heels of the Supreme Court's decision in *Liu v. Securities and Exchange Commission* where the Supreme Court considered what degree of equitable relief the SEC may obtain pursuant 15 U.S.C. § 78u(d)(5) of the Securities Exchange Act of 1934 when seeking disgorgement of net profits based on a defendant's wrongdoing. 140 S. Ct. 1936, 1942 (2020). The Supreme Court ultimately held that § 78u(d)(5) prevents the SEC from seeking an equitable remedy in excess of a defendant's net profits from wrongdoing. *Id.* at 1946.

Following the Supreme Court's decision in *Liu*, the Court appointed receiver (the "Receiver"), who represents 49 corporate entity Defendants in this matter (but not certain individual Defendants) filed a notice with the Eleventh Circuit that she intended to adopt certain portions of the individual Defendants' brief. (ECF No. 272-1, at 10.) The Receiver explained that, in order to "preserve the Entity Defendants' legal rights," the Receiver intended to adopt the portions of the individual Defendants' briefing, to the extent they argued that this Court's injunction exceeded its authority, that the injunction violates the *Liu* measure of net profits, and that the Eleventh Circuit should overrule or abrogate its precedent in light of *Liu*. (ECF No. 272-1, at 11; ECF No. 272-2, at 15-28.) As a result of the position taken by the Receiver, the FTC contends that the Receiver is faced with an irreconcilable conflict as the Receiver "needs to advance arguments on the Defendants' behalf that are directly contrary to her duty to 'protect the interests of consumers who have transacted with' those Defendants." (ECF No. 272, at 3 (quoting ECF No. 126, at 13.)) Accordingly, the FTC asks that the Receiver continue her duties preserving assets of the entities she represents, but asks this Court to appoint a new special receiver or independent counsel to represent the "Receivership Defendants in this litigation." (ECF No. 272, at 5.)

Concurrently, the Defendants ask this Court to stay proceedings in order to give the Supreme Court an opportunity render a decision in *AMG* and *Credit Bureau Center* which will determine the scope of equitable remedies under Section 13(b) of the FTC Act. (ECF Nos. 278, 280, 283.) The Defendants contend that absent a stay, the parties may end up unnecessarily wasting resources conducting discovery on monetary relief which may or may not be available to the FTC. (ECF No. 278, at 8.) Moreover, the Defendants argue that a stay would conserve judicial resources, serve the public interest, and would cause no harm to the FTC. (ECF No. 278, at 8.)

## II. Legal Standards
### A. Stay of Proceedings

District Courts have broad discretion to stay proceedings in the exercise of their good judgment. *Clinton v. Jones,* 520 U.S. 681, 706 (1997). Courts may enter stays for a variety of reasons, such as to control their dockets or pursuant to principles of abstention. *Trujillo v. Conover & Co. Commuc'ns, Inc.,* 221 F.3d 1262, 1264 (11th Cir. 2000). Alternatively, a stay may be warranted where "a federal appellate decision . . . is likely to have a substantial or controlling effect on the claims in the stayed case." *Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.,* 559 F.3d 1191, 1198 (11th Cir. 2009). This power, however, is not without limits. *Keim v. ADF Midatlantic, LLC,* Case No. 12-80577-Civ-Marra, 2015 WL 13858830, at *1 (S.D. Fla. Dec. 17, 2015) (Marra, J.) (noting a

District Court's power to force "'an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger' . . . is not unbridled.") (quoting *Landis v. N. Am. Water Works & Elec. Co.*, 299 U.S. 248, 254-55 (1936)). In considering the propriety of a stay, the Court must weigh several factors, including: (1) the harm that will be suffered by the applicant if the stay is not granted; (2) the harm that will be suffered by the party resisting the stay if the stay is granted; and (3) where the public interest lies. *Keim*, 2015 WL 13858830, at *1. The test is not mechanical, but rather must adapt to these varying conditions and the circumstances before the reviewing court. *Id.* Ultimately, it is the moving party's burden to prove the stay is warranted. *Landis*, 299 U.S. at 255 ("the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward.").

### B. Authority of Receiver

A District Court's power over a receiver is similarly a matter for the District Court's discretion. A receiver "is a creature of equity" whose powers "while extraordinary, are limited by the district judge's concept of equity." *In re Wiand*, No. 8:10-cv-71-T-17MAP, et al., 2012 WL 611896, at *5 (M.D. Fla. Jan. 4, 2012). Indeed, a receiver "receives h[er] power and authority directly from the court and therefore is subject to the court's directions and orders in the discharge of h[er] official duties." *SEC v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 424 (M.D.N.C. 2001); *see also Booth v. Clark,* 58 U.S. 322, 331 (1854) ("The receiver is but the creature of the court; he has no powers except such as are conferred upon him by the order of his appointment and the course and practice of the court."). Accordingly, a receiver must act in accordance with a court's order appointing that receiver and discharge the duties and responsibilities as described in such order.

Once appointed, a receiver is a "neutral officer of the Court." *Sterling v. Stewart,* 158 F.3d 1199, 1201 n.2 (11th Cir 1998). While a receiver must be impartial between parties, that impartiality "does not extend to h[er] relationship with the receivership estate" as receivers owe a "'fiduciary duty to the owners of the property under h[er] care' and thus must 'protect and preserve' the receivership's assets 'for the benefit of the persons ultimately entitled to it.'" *SEC v. Schooler,* No. 3:12-cv-2164-GPC-JMA, 2015 WL 1510949, at *3 (S.D. Cal. March 4, 2015) (quoting *Sovereign Bank v. Schwab,* 414 F.3d 450, 454 (3d Cir. 2005). As neutral officers of the court, receivers must avoid the appearance of impropriety or partiality in their actions. *Schooler,* 2015 WL 1510949, at *3.

### III. Analysis

#### A. Motion to Stay

Should the Court decide that a stay is warranted in this case, the FTC's motion to resolve receivership conflict would effectively become moot. While Defendants Burton Katz, Brent Levison, Elisha Rothman, Christopher Shearman, Robert Zangrillo, Dragon Global Management LLC, Arlene Mahon, and Waltham Technologies, LLC's[1] motion to stay was filed subsequent to the FTC's motion, the Court chooses to deal with the Defendant's motion to stay first given its potential impact on the FTC's motion.

In support of their motion to stay, the Defendants argue that a stay is warranted because the FTC seeks $85 million in equitable monetary remedies from various of the defendants pursuant to Section 13(b) of the FTC Act. (ECF No. 278, at 7-8.) They argue if the case is not stayed, the parties will need to conduct expensive and time-consuming discovery pertaining to disgorgement and the factual predicate of joint and several liability but if the Supreme Court extends its holding in *Liu* to Section 13(b) of the FTC Act, these time-consuming and expensive efforts will have been wasted. (ECF No. 278, at 8.) Even if the Supreme Court does not extend its *Liu* holding, the Defendants argue that the Supreme Court's ruling will help to "properly . . . tailor relief and related discovery." (ECF No. 278, at 8.) The Defendants also state that the FTC will not be harmed by a stay and that a stay will serve the public interest. (ECF No. 278, at 8.) Finally, the Defendants suggest that a stay will help to conserve judicial resources by reducing motion practice on issues that may soon become moot. (ECF No. 278, at 8.) Somewhat undermining the collective Defendants' stay request, Robert Zangrillo and Dragon Global Management LLC suggest in their briefing that any stay that may be entered by this court "should not encompass the pending appeals before the Eleventh Circuit, and if any of those appeals are decided prior to the Supreme Court decision(s) in *AMG* and *Credit Bureau Center*, it may be appropriate to resume some or all proceedings before this Court." (ECF No. 280, at 1.)

The FTC disagrees with the Defendants on the propriety of a stay. The FTC argues first that the basis for the Defendants' request was already presented to this Court and the Eleventh Circuit both of which rejected the Defendants' arguments. (ECF No. 289, at 5; ECF No. 150, at 9-11 (arguing the Eleventh

---

[1] Burton Katz, Brent Levison, Elisha Rothman and Christopher Sherman filed the initial motion to stay on August 10, 2020. (ECF No. 278.) Their motion was adopted in full by Arlene Mahon and Waltham Technologies, LLC (ECF No. 283) and in part by Robert Zangrillo and Dragon Global Management LLC (ECF No. 280). The Receiver does not oppose a stay. (ECF No. 278, at 7.)

Circuit's approach to Section 13(b) is "outmoded" and a "circuit split" interpreting Section 13(b) and the Supreme Court's grant of certiorari in *Liu* warranted a stay).) Second, the FTC argues that a grant of certiorari is not a valid basis on which to seek a stay, and even if it were, the Supreme Court's decision in *AMG* and *Credit Bureau Center* will not impact any questions of liability in this case. (ECF No. 289, at 6-13.) Finally, the FTC argues that a balance of the equities, public interest, and the interests of judicial economy, all weigh against the granting of a stay in this case. (ECF No. 289, at 13-17.)

### 1. Balance of Equities

In evaluating the stay request, the Court now considers the following factors stated above: (1) the harm that will be suffered by the applicant if the stay is not granted; (2) the harm that will be suffered by the party resisting the stay if the stay is granted; and (3) where the public interest lies. *Keim*, 2015 WL 13858830, at *1. In undertaking this analysis, the Court is mindful that "[o]nly in rare circumstances will a litigant . . . be compelled to stand aside" while a separate matter is settled "to which he is a stranger." *Landis*, 299 U.S. at 255.

Pursuant to the first factor, in support of their motion, the Defendants state that they will be harmed because the absence of a stay may cause the Defendants to be subjected to time-consuming and costly discovery relating to damages, which may or may not be available to the FTC depending on the scope of the Supreme Court's forthcoming ruling relating to the scope of damages under Section 13(b) of the FTC Act. This argument, considered alone, is well taken. *See Ray v. Wal-Mart Stores, Inc.*, No. 19-80963-Civ-Scola, 2019 WL 9075965, at *1 (S.D. Fla. Oct. 10, 2019) (Scola, J.) (quotations omitted) ("The court must . . . weigh the harm produced by a delay in discovery against the likely costs and burdens of proceeding with discovery.") Indeed, the Defendants are correct that requiring them to proceed with discovery that may ultimately be unnecessary could subject the Defendants to costs that could otherwise be avoided. While the FTC argues this point is ultimately moot because the FTC is pursuing claims against certain of the defendants for civil contempt "based on the same facts alleged in this case" in the case styled as *FTC v. Acquinity Interactive, LLC*, No. 14-60166-Civ-Scola (S.D. Fla filed Feb. 12, 2020), the scope of this Court's authority to order sanctions is likely limited by the bounds of Section 13(b). *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000) ("the sanctions imposed by the district court would have been authorized by Section 13(b) of the Federal Trade Commission Act"); *see also FTC v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010) (upholding "a contempt sanction that required disgorgement of gross receipts" based on *McGregor*).

While it is possible the Defendants could be subjected to unnecessary expense depending on the Supreme Court's decisions in *AMG* and *Credit Bureau Center,* existing Eleventh Circuit precedent is clear, and as stated in the Court's prior order, the court is bound to abide by and apply that precedent. (ECF No. 174, at 1-2); *FTC v. Simple Health Plans, LLC,* 801 F. App'x 685, 687-88 (11th Cir. 2020) (the Eleventh Circuit's "binding precedent" is that Section 13(b) "carries with it the full range of equitable remedies, including the power to grant consumer redress and compel disgorgement of profits"). Indeed, under the Eleventh Circuit's prior panel rule subsequent panels of the Eleventh Circuit, and the District Courts that are required to apply Eleventh Circuit precedent, "are bound to follow" a prior panel's decision unless there is an "intervening Supreme Court decision" that is "clearly on point." *Id.* at 688 (internal citations omitted); *see also Levesque v. Gov't Emps. Ins. Co.,* No. 15-14005-Civ-Marra, 2015 WL 6155897, at *6 (S.D. Fla. Oct. 20, 2015) (Marra, J.) ("[w]here controlling circuit precedent exists on an issue before a district court, a grant of certiorari on the same issue by the United States Supreme Court does not justify a stay because certiorari grants do not change the law."). The Eleventh Circuit has warned that extrapolating holdings "on an issue that was not before [the Supreme] Court in order to upend settled circuit law" is improper. *Id.* While the Defendants argue that *Liu* may impact this proceeding, this Court cannot extrapolate that fact when the Supreme Court's holding in *Liu* dealt with "the wrong agency, the wrong statute, and the wrong remedy." (ECF No. 289, at 12); *see also FTC v. Noland,* No. cv-20-00047-PHX-DWL, 2020 WL 4530459, at *4 (D. Ariz. Aug. 6, 2020) (noting it is improper to read *Liu*, which dealt with the SEC, as curtailing the FTC's authority). Given that the discovery the Defendants are trying to avoid is consistent with longstanding Eleventh Circuit law and given that such law is not incompatible with the Supreme Court's *Liu* decision, the Court finds Defendants' arguments as to harm inapposite. While the Court could end its inquiry here and deny the stay request, the Court will continue to consider the remaining factors.

Next, the Court considers the harm that would be suffered by the FTC if it were subjected to a stay over its objections. The FTC argues that a stay, which would extend through June 2021, would impede discovery in this case and would increase the risk of "evidence being lost or destroyed." (ECF No. 289, at 13.) While this may hypothetically be the case, the Court finds the FTC's argument conclusory because the FTC "does not identify any specific evidence that will be spoliated." *Barr v. Harvard Drug Group, LLC,* No. 13-cv-62019-KAM, 2015 WL 11181968, at *4 (S.D. Fla. Dec. 4, 2015) (Marra, J.). Accordingly, this second factor does not move the needle one way or another with regards to the propriety of a stay in this matter.

Finally, the Court considers where the public interest lies. The FTC argues that a stay in this matter would "delay resolution of the FTC's claims and correspondingly delay relief for thousands of consumer victims whose money and personal information Defendants stole over the course of at least the last five years." (ECF No. 289, at 14-15.) The Defendants cite a number of cases in their briefing that support the proposition that the public interest lies in remediation of illegal practices and in there being clear and correct rulings on legal questions. (*See* ECF No. 278, at 19.) The Defendants seem to contend that the Court cannot serve that public interest until the Supreme Court issues a ruling in *AMG* and *Credit Bureau Center*. The Court agrees with these general propositions, but notes that they do not support Defendants' position. As stated above, the Court is bound by the Eleventh Circuit's clear precedent. The public interest will be served by the Court applying that precedent to the matter now before the Court without undue delay. Moreover, regardless of Supreme Court's decision in *AMG* and *Credit Bureau Center*, the Court must, at some point, decide issues of liability in this dispute, which are separate and independent from any monetary remedies the FTC may collect under Section 13(b) of the FTC Act. A stay until June 2021 does not serve the public interest.  Accordingly, the Court finds that this final factor weighs against a stay in the instant case.

In light of the above, the Court finds that the Defendants have failed to carry their burden in support of a stay. Indeed, it appears the Defendants cannot even agree if a stay is in their best interest. (ECF No. 280, at 1.) Rather, the public interest, the established law of the Eleventh Circuit, and this Court's duty to uphold that law strongly support this case proceeding. The Court does not reach the question of whether this Court's prior decision constitutes law of the case as it is not necessary to do so. The Court therefore **denies** the Defendants' motion to stay. (**ECF No. 278**.)

### B. Receivership Conflict

Given that the Court has denied the Defendants' stay motion, it is now necessary for the Court to consider the FTC's motion to resolve receivership conflict. In support of its motion, the FTC states that the Receiver is in the middle of an "irreconcilable" conflict between her duties to "determine, adjust, and protect the interests of consumers" as required by Section § XII.L of this Court's order appointing receiver on the one hand, (ECF No. 126, at 13) and to the Receivership Entities[2] on the other. The FTC argues the Receiver's responsibilities to the latter have caused her "to argue for a change in existing law that would overturn decades of precedent entitling defrauded consumers to

---

[2] *See* Order Appointing Receiver (ECF No. 126, at 4) for definition of Receivership Entities.

monetary relief, and has directed her counsel to make those arguments." (ECF No. 272, at 4.) The FTC contends that in adopting this position, the Receiver is unable to continue to act as a neutral officer of the Court. (ECF No. 272, at 4.) The FTC suggests the only way for the Court to resolve this conflict is for the Court to appoint a special receiver or independent counsel with the limited purpose of advancing the Receivership Entities' arguments to overturn existing precedent. (ECF No. 272, at 5.)

The Defendants[3] advance various arguments contesting the FTC's position. Defendants argue that there is in fact no conflict that requires resolution because the FTC presents a distorted view of the Receiver's duty. (ECF No. 277.) The Defendants argue that the Receiver has duties to both consumers and the Receivership Entities and the Receiver's actions to preserve assets for the Receivership Entities by disagreeing with the FTC "on the availability of broad monetary damages for consumers" does not represent a conflict. (ECF No. 277, at 4.) Even if there was a conflict, the Defendants argue the Court lacks the authority to appoint a special counsel. (ECF No. 277, at 8-12.)

The Receiver also filed a response. (ECF No. 282.) In the Receiver's response to the FTC's motion, the Receiver noted that while she does not object to the relief sought by the FTC, she does however disagree with the FTC's characterization of her actions in adopting arguments "related to recent case law regarding Section 13(b) of the FTC Act." (ECF No. 282, at 2.) The Receiver explains, "as she was obligated to do" she sought only "by her counsel's filing to preserve the Corporate Entity Defendants'[4] rights to adopt certain arguments set forth in the Individual Defendants' briefs to the Eleventh Circuit" relating to the monetary damages that may or may not be available to consumers under Section 13(b) of the FTC Act. (ECF No. 282, at 2.) The Receiver further explained that she is not, as the FTC "and other papers have suggested . . . taking a particular position in this lawsuit." (ECF No. 282, at 2.)

The Court disagrees with the FTC that the Receiver, by taking actions to preserve arguments for certain of the Defendants, without taking a position on the validity of those arguments, has subjected herself to an irreconcilable conflict. If the Receiver had failed to adopt these arguments on behalf of the Corporate Entity Defendants these Defendants would have been prejudiced by being deprived of an argument to potentially preserve their property. Indeed, the

---

[3] Defendants Burton Katz, Brent Levison, Elisha Rothman, and Christopher Sherman filed an initial response to the FTC's motion. (ECF No. 277.) Thereafter, Defendants Robert Zangrillo and Dragon Global Management LLC filed a response adopting the arguments raised in the initial brief and raising several additional arguments that largely echoed the initial arguments. (ECF No. 279.)

[4] The Corporate Entity Defendants are the 49 entities the Receiver represents, as discussed generally in the FTC's motion. (ECF No. 272, at 2.)

Receiver represents *both* the interests of the Defendants she represents and consumers. The FTC acknowledges this in its own briefing. (*See* ECF No. 272, at 4 ("under receivership law . . . the Receiver owes a fiduciary duty to both: (1) the defendants, who retake their property if the agency does not prove it case; and (2) . . . consumers[] who are entitled to the assets if the agency does prove its case.") The Receiver's actions are consistent with her duties as this Court empowered the Receiver to "engage . . . attorneys . . . as the Receiver deems advisable or necessary in the performance of [the Receiver's] duties and responsibilities" which includes the responsibility to "[c]onserve, hold, manage, and prevent the loss of all Assets of the Receivership Entities, and perform all acts necessary or advisable to preserve the value of those Assets." (ECF No. 126, at 11-12.) Contrary to the FTC's argument, had the Receiver failed to preserve a colorable argument for the Defendants she represents, the Receiver would arguably have shown bias against the Defendants by prejudicing the Defendants in favor of consumers. Moreover, the Receiver has not chosen to favor the Defendants she represents over consumers as the Receiver has adopted the complained of arguments "without taking a particular position" and for the sole purpose of "preserv[ing] the Corporate Entity Defendants' rights." (ECF No. 282, at 2.) By preserving certain arguments for the Defendants, the Receiver has faithfully discharged her duties as a neutral officer of the Court, representing both the interests of consumers and the Defendants she represents.

Defendants raise arguments as to this Court's authority to appoint a special receiver or independent counsel. (ECF No. 277, at 8-12.) Given that the Court has found the Receiver is not subject to an irreconcilable conflict, the Court does not reach the Defendant's question as to the Court's authority to appoint a special receiver or independent counsel as it is not necessary for the Court to do so.

In consideration of the above, the Court **denies** the FTC's motion to resolve receivership conflict. (**ECF No. 272**.)

## IV.   Conclusion

The Court therefore **denies** the FTC's motion to resolve receivership conflict. (**ECF No. 272**.) The Court also **denies** the Defendants' motion to stay proceedings. (**ECF No. 278**.)

**Done and ordered** at Miami, Florida, on September 30, 2020.

_____
Robert N. Scola, Jr.
United States District Judge