UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-CV-25046-Scola

FEDERAL TRADE COMMISSION,

    Plaintiff,

v.

ON POINT GLOBAL LLC, *et al.*,

    Defendants.

**FTC'S OPPOSITION TO LIFTING THE ASSET FREEZE AS TO INDIVIDUAL DEFENDANTS BURTON KATZ, ROBERT ZANGRILLO, BRENT LEVISON, AND ELISHA ROTHMAN AND OPPOSITION TO A STAY OF THE ASSET FREEZE**

Defendants' motion to lift or stay the Preliminary Injunction's asset freeze following the Supreme Court's decision in *AMG Capital Mgmt., LLC v. FTC* should be denied for two reasons. First, as discussed further in the FTC's contempt and contempt-related temporary restraining order motions, the FTC has sought and is likely to recover compensatory monetary relief from defendants Burton Katz, Robert Zangrillo, Brent Levison, and Elisha Rothman ("Contempt Defendants"), and an asset freeze should therefore remain in place against the Contempt Defendants. *See FTC v. Acquinity Interactive, LLC, et al.*, No. 14-CV-60166, Mots. for Order to Show Cause (ECF Nos. 135 and 137) ("First and Second Contempt Motions"), Mot. for Temporary Restraining Order (ECF No. 138) ("Contempt TRO Motion"). Second, because the Preliminary Injunction is on appeal, jurisdiction is not presently with the District Court to lift it, and defendants' motion for a "stay" of the asset freeze is simply an end-run around that rule.[1]

    **1. The Asset Freeze Should Be Maintained Against Contempt Defendants.**

The FTC has alleged, and already demonstrated a likelihood of success in proving, that Contempt Defendants ran an operation that tricked consumers into paying money and turning over personal information in exchange for government services that Contempt Defendants never

---

[1] Once jurisdiction is re-conferred on this Court, the FTC does not object to the lifting of the asset freeze as to individual defendants Christopher Sherman and Arlene Mahon, who are not defendants in the FTC's contempt action.

1

delivered. Prelim. Inj. (ECF No. 126) at 1-3. The FTC has brought actions alleging that these misrepresentations make Contempt Defendants liable for violations of both the FTC Act, 15 U.S.C. § 45, ("*On Point*") and an order this Court entered in 2014 against Defendant Katz ("*Acquinity*"). *On Point*, Compl. (ECF No. 1); *Acquinity*, First and Second Contempt Motions. Indeed, the FTC alleged from the start that both violations required immediate injunctive relief. *On Point*, Mot. for TRO (ECF No. 4) at 1 (alleging the defendants' scheme violated both the FTC Act and the 2014 order and seeking preliminary relief, including an asset freeze). This Court initially entered a preliminary injunction with asset freeze after finding the FTC likely to prevail in proving the FTC Act violations. *On Point*, Prelim. Inj. (ECF No. 126) at 1-3, 5-8. During the course of the *On Point* and *Acquinity* actions, the Supreme Court overturned longstanding precedent and found that the section of the FTC Act on which the FTC relies in the *On Point* matter does not authorize monetary relief. *AMG Capital Mgmt., LLC v. FTC*, 141 S.Ct. 1341 (2021). However, as discussed below, the FTC's contempt claims provide an independent basis to award monetary relief and thus an asset freeze. The FTC has therefore moved for a new preliminary injunction in the *Acquinity* matter that maintains the asset freeze based on its likelihood of success in the contempt action. *Acquinity*, TRO Mot. The FTC also sought to either maintain the existing freeze or enter a new temporary restraining order with identical provisions until the Court rules on the FTC's requested preliminary injunction provisions. *Id*.

      a. **The FTC Has Sought, and Is Likely to Obtain, Monetary Relief in the Contempt Action.**

As discussed in the FTC's recent contempt and TRO motions, the Court's ability to order complete relief in contempt arises from the Court's "inherent power to police itself," as opposed to whether the moving party could obtain that relief from the underlying cause of action. *See, e.g.*, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991) (holding that court could impose monetary sanction for attorneys' fees even when the applicable statute and rule would not permit such fees; "We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the [contemptuous] conduct"); *McComb v. Jacksonville*, 336 U.S. 187, 193 (1949) ("We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree. We can lay to one side the question whether the Administrator, when suing to restrain violations of the Act, is entitled to a decree of restitution for unpaid wages. … The measure of the court's power in civil contempt

proceedings is determined by the requirements of full remedial relief."); *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000) (holding that the "district court did not abuse its discretion in deciding to award [the plaintiff] compensatory damages for the injuries caused by the defendants' civil contempt" from violation of a temporary restraining order even though such relief was unavailable to the plaintiff under the statute which provided the cause of action).[2]

Further, as the defendants acknowledge, and as the Supreme Court held in *AMG*, the FTC may still seek a permanent injunction in federal court under Section 13(b) of the FTC Act, as it did against Burton Katz in 2014. *See On Point*, ECF 369 at 3. From there, as noted above, "[v]iolation of a permanent injunction has traditionally sounded in contempt," the "FTC Act

---

[2] The Eleventh Circuit did not hold otherwise in *McGregor v. Chierico* (which, indeed, would have been contrary to the Supreme Court authority cited above). 206 F.3d 1378 (11th Cir. 2000). In that case, the Eleventh Circuit first held that "[t]he inherent equitable powers of the federal courts authorize the district court to order payment of consumer redress for injury caused by [the defendant's] contumacious conduct." *Id*. at 1387. The court then turned to the appropriate measure of compensatory sanctions. It observed "the sanctions imposed by the district court would have been authorized by Section 13(b) of the Federal Trade Commission Act," making cases interpreting that section "instructive in the case before us because the remedy for [the] contemptuous conduct is closely akin" to the then-existing statutory remedies. *Id*. at 1387-88; *see also FTC v. Trudeau*, 662 F.3d 947, 950 (7th Cir. 2011) (measure of remedies in FTC contempt action "is informed—but not limited—by the remedies available in the underlying FTC action."). Accordingly, other courts have noted in considering the potential effects of the *AMG* case that the FTC may recover monetary relief even absent the ability to seek equitable monetary relief under Section 13(b) of the FTC Act. *See, e.g.*, *FTC v. Noland*, 2020 WL 7075241, at *4 (D. Ariz. Dec. 3, 2020) ("the FTC may still seek monetary relief through the contempt action, regardless of the outcome of AMG Capital."); *In re Sanctuary Belize Litigation*, --- F. Supp. 3d ----, 2021 WL 1117763, at *1 (D. Md. Mar. 24, 2021) ("Moreover, this Court's findings of fact and determinations as to liability – including contempt of court . . . would not be affected by a decision in *AMG*.").

Further, even if a court's inherent contempt powers could be limited by the remedies in the statute that provided for the original injunction, the FTC Act continues to provide monetary relief against defendants who engage in unfair or deceptive acts or practices. 15 U.S.C. § 57b(b) (Section 19 of the FTC Act provides means for Commission to obtain "such relief as the court finds necessary to redress injury … resulting from the rule violation or the unfair or deceptive act or practice," including but not limited to "rescission or reformation of contracts, the refund of money or return of property, the payment of damages, and public notification respecting the rule violation or the unfair or deceptive act or practice"); *AMG*, 141 S. Ct. 1341 (noting monetary relief remains available under FTC Act). Moreover, in *Acquinity*, the FTC alleged violations of Section 19, as acknowledged in the final order the FTC now seeks to enforce. *Acquinity*, Stipulated Final Judgment and Order (ECF No. 132) at 1.

3

explicitly authorizes the Commission to seek injunctions, such as the one into which the defendants entered in this case," and "no reason exists to believe Congress intended to withhold the traditional remedy of compensation to those consumers victimized by the defendants' violations of [a] [p]ermanent [i]njunction." *FTC v. Kuykendall*, 371 F.3d 745, 764 (10th Cir. 2004).

Finally, the Court issued its original preliminary injunction in part pursuant to the All Writs Act, 28 U.S.C. § 1651(a), *see* ECF 126 at 3. The All Writs Act empowers the federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The Supreme Court has noted that the "statute has served since its inclusion, in substance, in the original Judiciary Act as a legislatively approved source of procedural instruments designed to achieve the rational ends of law." *Harris v. Nelson*, 394 U.S. 286, 299 (1969) (quotation marks omitted). Indeed, "[u]nless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 273 (1942); *see also United States v. New York Telephone Co.*, 434 U.S. 159, 172-74 (1977); *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404 (2d Cir. 2002) (collecting cases).

The Court in this matter thus enjoys "wide discretion to fashion an equitable remedy for [civil] contempt that is appropriate to the circumstances." *EEOC v. Guardian Pools Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987). "These sanctions may serve one of two broad purposes: (1) coercing the contemnor to comply with a court order, or (2) compensating a party for losses suffered as a result of the contemptuous act." *United States v. City of Miami*, 195 F.3d 1292, 1298 (11th Cir. 1999) (citing *Jove Engineering Inc. v. IRS*, 92 F.3d 1539, 1557 (11th Cir.1996)). In serving these ends, a court's civil contempt power is measured solely by the "'requirements of full remedial relief.'" *Guardian Pools*, 828 F.2d at 1515 (quoting *United States v. United Mine Workers*, 330 U.S. 258, 304 (1947)).

In FTC matters, full remedial relief is measured by the amount required to reimburse the injured consumers for harm the contemnor caused, *e.g.*, the contemnor's gross revenue. *McGregor*, 206 F.3d at 1389; *Trudeau*, 662 F.3d at 950 ("It was within the district court's discretion to decide that unless the remedial sanction was measured by consumer loss, the victims of Trudeau's contempt would not receive full relief for their actual loss. This conclusion

4

is informed—but not limited—by the remedies available in the underlying FTC action."); *Kuykendall*, 371 F.3d at 765. With multiple contemnors, the monetary relief is joint and several. *FTC v. Leshin*, 618 F.3d 1221, 1237 (11th Cir. 2010) ("Where . . . parties join together to evade a judgment, they become jointly and severally liable for the amount of damages resulting from the contumacious conduct.") (quoting *NLRB v. AFL-CIO*, 882 F.2d 949, 955 (5th Cir. 1989)).

### b. An Asset Freeze is Proper to Preserve Assets for Contempt Remedies.

The Court has inherent authority to issue preliminary orders preserving the status quo pending final determination on contempt remedies. *See United Mine Workers*, 330 U.S. at 290 (finding that court has authority to issue orders to maintain status quo and approving issuance and extension of TRO pending ruling on contempt motion); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."). Courts in this district and throughout the United States have repeatedly granted such preliminary relief to preserve assets before hearing civil contempt matters.[3]

The FTC is not reiterating here the facts and arguments laid out fully in its contempt and related TRO motions. *Acquinity*, First and Second Contempt Mots.; TRO Mot. As those motions describe, there is clear and convincing evidence that the "violated order was valid and lawful; . . . the order was clear and unambiguous; and the . . . alleged violator had the ability to comply." *Leshin*, 618 F.3d at 1232 (ellipses original); *McGregor*, 206 F.3d at 1383. Furthermore, there is clear and convincing evidence that the three nonparty Contempt Defendants – Zangrillo, Levison, and Rothman – had "actual notice" of the order and were "in

---

[3] *See, e.g.*, *McGregor*, 206 F.3d at 1381 (citing trial court's order for asset freeze, along with other equitable relief, pending resolution of contempt proceeding); *FTC v. Vocational Guides, Inc.*, No. 3:01-cv-00170, Docs. 103, 120 (M.D. Tenn. Oct. 21, 2008, Nov. 12, 2008) (TRO and PI with asset freeze available as Exhibits A and B); *FTC v. Int'l Prod. Design, Inc.*, No. 97-cv-1114, Docs. 81, 84 (E.D. Va. Jan. 9, 2007, Jan. 17, 2007) (same) (Exhibits C and D); *FTC v. Zuccarini*, No. 01-cv-04854 (E.D. Pa. Dec. 21, 2006) (TRO) (Exhibit E); *FTC v. Gill*, 183 F. Supp. 2d 1171, 1176-77 (C.D. Cal. 2001) (noting court previously issued TRO with asset freeze in contempt matter) (TRO is Exhibit F); *FTC v. Neiswonger*, No. 06-cv-2225, Docs. 29, 140 (E.D. Mo. July 17, 2006) (TRO and PI are Exhibits G and H); *FTC v. Dayton Family Prods., Inc.*, No. 97-cv-00750, Docs. 133, 173 (D. Nev. Jan. 28, 2013, March 5, 2013) (same) (Exhibits I and J); *FTC v. Latrese & Kevin Enters. Inc.*, No. 08-cv-1001, 2012 WL 12952608, at *2 (M.D. Fla. Nov. 19, 2012) (same; TRO and PI are Exhibits K and L); *FTC v. Data Med. Cap. Inc.*, No. 99-cv-1266, 2010 WL 1049977, at *2-3 (C.D. Cal. Jan. 15, 2010) (same, Exhibits M and N).

active concert or participation" with a party Contempt Defendant (Katz) to violate it.[4] Fed R. Civ. P. 65(d)(2)(C). Finally, the balance of the equities favors compensating Contempt Defendants' victims over preserving their interests in their ill-gotten money. *FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir. 1989) ("[W]hen a district court balances the hardships of the public interest against a private interest, the public interest should receive greater weight."); *FTC v. USA Beverages, Inc.*, 2005 WL 5654219, at *5 (S.D. Fla. Dec. 6, 2005) ("In balancing the equities, private concerns may be considered, but public equities must receive far greater weight."); *FTC v. Thomsen-King & Co.*, 109 F.2d 516, 519 (7th Cir. 1940) (court is under no duty "to protect illegitimate profits or advance business which is conducted (illegally)."). As described in the FTC's TRO and contempt motions, an asset freeze is therefore proper and supported to preserve assets for final compensatory contempt sanctions.

### 2. The Court Lacks Jurisdiction to Materially Alter the Asset Freeze While It Is On Appeal.

Because the asset freeze sections of the Preliminary Injunction are currently on appeal before the Eleventh Circuit, *see* ECF 147, 154, this Court does not currently have jurisdiction to materially alter the asset freeze. "As a general rule, '[t]he filing of a notice of appeal … divests the district court of control over those aspects of the case involved in the appeal.'" *Pacific Ins. Co. v. General Development Corp.*, 28 F.3d 1093, 1096 n. 7 (11th Cir. 1994) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)); *see also Green Leaf Nursery v. E.I. DuPont de Nemours and Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) ("A district court does not have the power to alter the status of the case as it rests before the Court of Appeals." (citations omitted)).

Federal Rule of Civil Procedure 62(d) (formerly 62(c)) creates a limited exception to this rule involving appeals of an injunction, including interlocutory injunctions. It permits "a district court to modify an injunction that has been appealed only to the extent necessary to maintain the status quo, and the modification cannot be such that it moots the appeal and divests the appellate court of jurisdiction." *FTC v. Vylah Tec LLC*, No. 2:17-CV-228-FtM-99MRM, 2017 WL 10844699, at *2 (S.D. Fla. Oct. 27, 2017) (quoting *Sammons Polk City Sch. Bd.*, No. 8:04-CV-

---

[4] The FTC also named 12 of the entity defendants as contemnors and seeks to maintain the asset freeze as to those entities as well. *See Acquinity*, First Contempt Mot. However, because the Court-appointed receiver remains in control of the receivership entities' assets, the maintenance or lifting of the freeze on the entities' assets will have less immediate effect as to those defendants than as to the individuals.

2657-T24EAJ, 2006 WL 82606, at *2 (M.D. Fla. Jan 12, 2006)). In other words, "the powers of the district court over an injunction pending appeal should be limited to maintaining the status quo and ought not to extend to the point that the district court can divest the court of appeals from jurisdiction while the issue is before us on appeal." *Coastal Corp. v. Texas Eastern Corp.*, 869 F.2d 817, 820 (5th Cir. 1989); *accord, e.g., Ideal Toy Corp. v. Sayco Doll Corp.*, 302 F.2d 623 (2nd Cir. 1962); *Lewis v. Tobacco Worker's Int'l Union*, 577 F.2d 1135 (4th Cir. 1978); *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir.1990); *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

Where, as here, an appeal has divested the district court of jurisdiction over provisions of a preliminary injunction and a party seeks wholesale changes to that injunction, Rule 54(b)'s provision permitting the alteration of an interlocutory order "at any time" before entry of a final judgment is simply inapplicable. *See* Fed. R. Civ. P. 54(b). In contrast, the Court's previous modifications of the Preliminary Injunction – *e.g.*, permitting defendants to sell real estate or securities and place the proceeds in frozen accounts, ECF No. 262, 294; releasing the proceeds of insurance payments to permit the making of insured repairs, ECF No. 144; and releasing small amounts to pay defendants' immediate living expenses, ECF No. 146, 252 – maintained the status quo and were thus permissible under Rule 62(c).[5] Further, the defendants' claim that they seek only a "stay" of the asset freeze rather than an improper dissolution is unavailing. If the asset freeze is stayed, even briefly, the Contempt Defendants may quickly and irrevocably transfer their assets beyond the reach of future creditors, including the FTC, should it obtain monetary relief against the Contempt Defendants. Any "stay" would thus operate as an impermissible dissolution of the asset freeze, "moot[ing] the appeal and divest[ing] the appellate court of jurisdiction." *Vylah Tec*, 2017 WL 10844699, at *2.[6]

---

[5] Similarly, the FTC's motion for a new TRO and preliminary injunction maintaining the asset freeze based on the contempt action is not jurisdictionally barred because it does not "moot[] the appeal," but instead maintains the "status of the case as it rests before the Court of Appeals." *Green Leaf Nursery*, 341 F.3d at 1309; *Vylah Tec*, 2017 WL 10844699, at *2.

[6] While the defendants' motion to "stay" the asset freeze is jurisdictionally barred, as discussed above, it should also be denied on its merits once jurisdiction is returned to the Court. The four factors defendants must show for a stay – likelihood of success on the merits, irreparable injury, lack of injury to other parties, and the public interest – "substantial[ly] overlap" with the factors the FTC must show to obtain the freeze in the first place. *Nken v.*

Courts' management of Rule 60(b) motions for relief from judgments while those judgments are on appeal is instructive here. In such circumstances, district courts may hear, but not grant, motions that would change the status of the appealed judgment; they may either deny the motion or make an indicative ruling that they are inclined to grant it, because granting such a motion outright would impermissibly alter the status quo during the appeal. *Mahone v. Ray*, 326 F.3d 1176, 1179-80 (11th Cir. 2003). The appellate court considering the appeal may then determine whether to return jurisdiction to the district court to make any required new findings. *Id.; see also NORML v. Mullen*, 796 F.2d 276, 276 (9th Cir. 1986) (circuit court sent appealed preliminary injunction back to district court for reconsideration in light of new Supreme Court law). In this instance, where, as described above, the FTC can still obtain monetary relief and good cause thus exists to maintain the freeze as to the Contempt Defendants, this procedure is particularly appropriate. The Eleventh Circuit must first return jurisdiction over the asset freeze to this Court to avoid "a federal district court and a federal court of appeals … attempt[ing] to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). Once jurisdiction is returned, which may occur if the appellants dismiss their appeal of the Preliminary Injunction or seek to have jurisdiction returned for proceedings in this Court, the Court may lift the asset freeze as to defendants Christopher Sherman and Arlene Mahon,[7] while maintaining it as to the Contempt Defendants named in the FTC's contempt actions.

---

*Holder*, 556 U.S. 418, 434-35 (2009); Order Denying Motion to Stay Asset Freeze Pending Appeal ("Stay Denial"), ECF No. 174 at 1 (Mar. 23, 2020). Regarding likelihood of success, the defendants rely entirely on arguments premised on Section 13(b) of the FTC Act. As discussed throughout the April 30, 2021 filings, the FTC instead seeks to maintain the asset freeze based on its contempt motions, which are likely to succeed. *See Acquinity*, First and Second Contempt Mots.; TRO Mot. Regarding the remaining factors, as this Court previously held in denying a stay of the existing asset freeze, "the balance of the equities favors the consumers because the purpose of the asset freeze is to preserve assets to redress the consumers that the defendants harmed. Allowing the Contempt Defendants to spend their ill-gotten gains 'would deplete the assets available for consumer redress.' *FTC v. World Patent Marketing, Inc.*, 2017 WL 3508639, at *17 (S.D. Fla. Aug. 16, 2017) (Gayles, J.)." *On Point*, Stay Denial at 2.

[7] Defendant Arlene Mahon, who is not named as a contempt defendant, did not appeal the entry of the Preliminary Injunction. While it is not clear whether a district court may lift an appealed order only as to non-appellants without violating the jurisdictional boundaries outlined above, the Court may at minimum make an indicative ruling regarding the freeze of Mahon's assets.

| | |
|---|---|
| Dated:  May 7, 2021 | Respectfully submitted,<br>*/s/ Christopher J. Erickson*<br>Sarah Waldrop, Special Bar No. A5502583<br>(202) 326-3444; swaldrop@ftc.gov<br>Sana Chaudhry, Special Bar No. A5502350<br>(202) 326-2679; schaudhry@ftc.gov<br>Christopher Erickson, Special Bar No. A5502434<br>(202) 326-3671; cerickson@ftc.gov<br>Federal Trade Commission<br>600 Pennsylvania Ave. NW, CC 9528<br>Washington, DC 20580<br>Facsimile: (202) 326-3197<br>Attorneys for Plaintiff, Federal Trade Commission |

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2021, I served a true and correct copy of the foregoing and all related documents via this Court's CM/ECF filing system on all counsel or parties who have appeared in the above-styled action, including the counsel and parties listed below.

**Counsel for Defendants Burton Katz, Brent Levison, Elisha Rothman, and Christopher Sherman:**

Robert W. Thielhelm, Jr. (rthielhelm@bakerlaw.com)
Jonathan B. New (jnew@bakerlaw.com)
Tom Donaho (tdonaho@bakerlaw.com)
Baker Hostetler
45 Rockefeller Plaza
New York, NY 10111


**Counsel for Defendants Arlene Mahon and Waltham Technologies LLC:**

Justin B. Kaplan (jkaplan@difalcofernandez.com)
DiFalco, Fernandez & Kaplan
777 Brickell Ave, Suite 630
Miami, FL 33131

Xavier A. Franco (xfranco@mcper.com)
McArdle, Perez & Franco, PL
255 Alhambra Circle, Suite 925
Coral Gables, FL 3313

**Counsel for Defendants Robert Zangrillo and Dragon Global Management LLC:**

Matthew Schwartz (mlschwartz@bsfllp.com)
John Zach (jzach@bsfllp.com)
Marshall Dore Louis (mlouis@bsfllp.com)
Boies Schiller Flexner LLP
55 Hudson Yards, 20th Floor
New York, NY 10001


**Counsel for Defendant Elisha Rothman:**

Solomon B. Genet (sgenet@melandrussin.com)
Joshua W. Dobin (jdobin@melandrussin.com)
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131


**Counsel for Receiver Melanie E. Damian and Corporate Defendants (except Dragon Global Management LLC and Waltham Technologies LLC):**

Kenneth D. Murena (kmurena@dvllp.com)
Jonathan Groth (jgroth@dvllp.com)
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

                                               */s/ Christopher J. Erickson*
                                               Christopher Erickson