## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 19-CV-25046-Scola

FEDERAL TRADE COMMISSION,

      Plaintiff,

      v.

ON POINT GLOBAL LLC, *et al.*,

      Defendants.

### JOINT PRETRIAL STIPULATION

Pursuant to Federal Rule of Civil Procedure 26(a)(3) and Southern District of Florida Local Rule 16.1(e), Plaintiff Federal Trade Commission ("FTC" or "Plaintiff") and Defendants[1] hereby file the following pretrial stipulation relating to the trial in *FTC v. On Point Global LLC*, Case No. 19-cv-25046 (S.D. Fla.) ("*On Point*") and the contemporaneously-scheduled show

---

[1] The Individual Defendants are Burton Katz, Robert Zangrillo, Brent Levison, Elisha Rothman, Christopher Sherman, and Arlene Mahon.  The Dragon Entity Defendants are Dragon Global LLC; Dragon Global Management LLC; Dragon Global Holdings LLC; and On Point Capital Partners LLC, and together with Mr. Zangrillo, are the "Dragon Defendants."  In the Defendants' separate statements below, the Corporate Defendants are On Point Global LLC; On Point Employment LLC; On Point Guides LLC; DG DMV LLC; On Point Domains LLC; Final Draft Media LLC; Cambridge Media Series LLC; Issue Based Media LLC; Bella Vista Media Ltd.; Carganet S.A.; Direct Market LLC; Bluebird Media LLC; Borat Media LLC; Bring Back the Magic Media LLC; Chametz Media LLC; Chelsea Media LLC; Coinstar Media LLC; Domain Development Studios LLC; Domain Dividends Media LLC; Eagle Media LLC; Falcon Media LLC; GNR Media LLC; Island Media LLC; Leatherback Media Group LLC; Macau Media LLC; CEG Media LLC; MBL Media Ltd. Inc.; Orange and Blue Media LLC; Orange Grove Media LLC; Panther Media LLC; Pirate Media LLC; Pivot Media Group LLC; PJ Groove Media LLC; Sandman Media Group LLC; Shadow Media LLC; Skylar Media LLC; Slayer Billing LLC; Spartacus Media LLC; Very Busy Media LLC; Wasabi Media LLC; Yamazaki Media LLC; Bronco Family Holdings LP; BAL Family LP; Cardozo Holdings LLC; 714 Media Ltd.; Mac Media Ltd.; License America Management LLC; License America Holdings LLC; and Blackbird Media LLC.  In the FTC's separate statements below, the Entity Defendants are the Corporate Defendants and Dragon Entity Defendants, collectively.

cause hearing in *FTC v. Acquinity Interactive, LLC*, Case No. 14-cv-60166 (S.D. Fla.) ("*Acquinity*").

1.     **A Short Concise Statement of the Case by Each Party in the Action**

       a.     **Plaintiff Federal Trade Commission's Statement**

Defendants operated websites that purported to offer government services, like renewing driver's licenses or checking consumers' eligibility for public benefits, to entice consumers to pay money and disclose their personal data.  However, Defendants did not deliver what they promised; instead, consumers received only a PDF "guide" containing general information about government services.  Defendants then sent consumers who disclosed their personal information an avalanche of spam text messages and emails, and sold their data to other scammers.  These actions violate Section 5 of the FTC Act, 15 U.S.C. § 45(a).  The entity Defendants acted as a common enterprise to carry out this scheme, and the individual Defendants had the requisite authority to control or direct participation to make them individually liable for injunctive relief.  Further, Defendant Burton Katz is subject to a permanent injunction prohibiting the making of material misrepresentations in the offering or sale of goods or services entered in 2014 by this Court in *FTC v. Acquinity Interactive, LLC*, *et al*., No. 14-CV-60166 (the "Order"), and certain of the Defendants had sufficient notice of the Order to bind them to it and acted in concert with Katz to violate it.  The FTC accordingly seeks injunctive relief against all Defendants pursuant to the FTC Act and compensatory contempt remedies against the contempt Defendants.

       b.     **Statement of Individual Defendants Burton Katz, Brent Levison, Elisha Rothman, and Christopher Sherman**

 The FTC alleges that websites operated by two business segments of On Point Global, LLC, and its affiliates ("OPG") violate Section 5(a) of the Federal Trade Commission Act (the "FTC Act") because the websites purportedly suggest to consumers that they can be utilized to conduct government transactions but do not deliver those services.  The FTC does not identify explicit misrepresentations appearing on the subject websites but argues that the websites give a false "net impression" regarding the goods or services offered. The FTC further seeks to impute liability to individual defendants Burton Katz, Brent Levison, Eli Rothman, and Chris Sherman ("Individual Defendants") on the theory that each directly participated in, or had authority to control, the allegedly deceptive content of the websites. The Individual Defendants deny that the websites are deceptive. The OPG websites identified by the FTC are explicit about the goods and

2

services provided—namely, valuable information about government services, including how to obtain those services, and other original content. Defendants further deny that they directly participated in the alleged deceptive acts or had authority to control such acts.

In addition to seeking injunctive relief under the FTC Act, the FTC also seeks to hold Burton Katz in contempt for a purported violation of the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief with the Federal Trade Commission he entered into on or about August 14, 2014 in an unrelated case—*FTC v. Acquinity Interactive, LLC*; Case No. 14-60166-CIV-SCOLA/OTAZO-REYES. The FTC contends that OPG's allegedly deceptive websites also serve as a basis for a contempt finding against not only Mr. Katz, OPG's CEO, but also Mr. Levison and Mr. Rothman, who worked with Mr. Katz at OPG. Individual Defendants deny that their conduct constitutes contempt, that Mr. Levison or Mr. Rothman had actual notice of the subject injunction, that the law permits the FTC to proceed on its contempt claim, that the FTC is entitled to monetary damages for contempt, that the FTC's proposed injunctive remedy is proportional, and that the FTC's measure of damages, if any, is appropriate.

### c.      Statement of the Dragon Defendants

Robert Zangrillo is a private equity, venture capital, and real estate investor.  Mr. Zangrillo identifies and manages investments for both his family office and on behalf of third-party investors, all under the "Dragon Global" brand.  Dragon Global Management LLC is the management entity for all of Dragon Global's investments, overseeing investments across the seed, early-stage, and late-stage phases of corporate development in the technology, automotive, hospitality, and real estate sectors.  Dragon Global LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC are special purpose vehicles that are either defunct and currently serve no purpose, or hold Mr. Zangrillo or Dragon Global's equity in various investments.

One of Dragon Global's many venture investments is a minority, non-controlling interest in On Point Global LLC.  The Dragon Defendants' relationship with On Point was typical of an early stage venture investor: they invested capital, extended working capital loans, helped secure financing, and leveraged their experience, expertise, and strategic relationships to help On Point succeed.  The Dragon Defendants had absolutely no involvement in running, or authority to control, On Point's day-to-day business, including developing, reviewing, maintaining – or even ever seeing – the allegedly deceptive websites at issue.  If adopted, the FTC's overreaching theory

3

in this case would make every early-stage investor or outside director of a company liable for insider misconduct.  That result is neither consistent with the law or the facts.  Mr. Zangrillo is therefore not individually liable for any allegedly deceptive conduct.

Nor are the Dragon Global entities liable, because none of them operated as part of a "common enterprise" with On Point Global LLC and its corporate affiliates.  Dragon Global is its own independent private equity, venture capital, and real estate investment firm that existed long before On Point and has always maintained corporate separateness, including having separate bank accounts, advertising, brand identity, personnel, and office space.  It is not a division, affiliate, or alter ego of On Point or any of the other corporate defendants such that it should be automatically liable under the FTC Act for any allegedly deceptive conduct at On Point.

There is also no basis to hold certain of the Dragon Global entities (Dragon Global Management LLC, Dragon Global Holdings LLC, and Dragon Global LLC) liable for contempt of the 2014 final order in the *Acquinity* case.  Among other things, those entities had no notice of the order, and so were not bound by it.  The Court has already held that Mr. Zangrillo lacked notice of the order, and the FTC's remaining argument is that Burton Katz's knowledge should somehow be imputed to the Dragon Global entities.  But Katz had no formal or informal role that would make him an agent of Dragon Global, and his knowledge cannot be imputed to it.

### d.    Statement of the Corporate Defendants (other than the Dragon Entity Defendants)

The FTC alleges that websites operated by two business segments of On Point Global, LLC, and its affiliates ("OPG") violate Section 5(a) of the Federal Trade Commission Act (the "FTC Act") because the websites purportedly suggest to consumers that they can be utilized to conduct government transactions but do not deliver those services.  The FTC does not identify explicit misrepresentations appearing on the subject websites but argues that the websites give a false "net impression" regarding the goods or services offered. The Corporate Defendants deny that the websites are deceptive.  The OPG websites identified by the FTC are explicit about the goods and services provided—namely, valuable information about government services, including how to obtain those services, and other original content.  If the Court is inclined to determine that the websites were deceptive, then Corporate Defendants propose injunctive relief be tailored to meet the objective of the statute and enjoin the Corporate Defendants as follows:  (i) from misrepresenting that consumers can complete state motor vehicle or state licensing transactions

4

that may not be completed on the website; (ii) from misrepresenting that any website is affiliated with the government or any of its agencies; and (iii) from misrepresenting that the website itself provides eligibility determinations for public benefits.

In addition to seeking injunctive relief under the FTC Act, the FTC also seeks to hold the Corporate Defendants in contempt for a purported violation of the Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief which Defendant Burton Katz had entered into on or about August 14, 2014 in an unrelated case—*FTC v. Acquinity Interactive, LLC*; Case No. 14-60166-CIV-SCOLA/OTAZO-REYES (the "Acqunity Order"). The FTC contends that OPG's allegedly deceptive websites serve as a basis for a contempt finding against the Corporate Defendants because Burton Katz was their CEO and, thus, his knowledge of the *Acquinity* Order is imputed to the Corporate Defendants.  The Corporate Defendants deny that their operating the websites constitutes contempt of the *Acquinity* Order or any other order or regulation applicable to the websites or any representations made therein, that the law permits the FTC to proceed on its contempt claim, that the FTC is entitled to monetary damages for contempt, that the FTC's proposed injunctive remedy is proportional, and that the FTC's measure of damages, if any, is appropriate.  In the event the Court determines that the FTC has met its evidentiary burden of establishing by clear and convincing evidence that the Order is clear and unambiguous as it relates to Corporate Defendants' business and that Corporate Defendants are in contempt of the *Acquinity* Order, in fashioning a contempt sanction, the Court should consider the Corporate Defendants' good faith and reasonable efforts to comply with that Order and any other orders and regulations applicable to the websites, including without limitation by seeking, receiving and following the advice of legal counsel regarding the compliance of such representations with the Order and regulations applicable thereto.  Further, under the totality of the circumstances, including the fact that under the Receiver's and the Court's supervision, the Corporate Defendants have revised the websites to ensure they are in compliance with applicable law, regulations and the Court's orders, the Corporate Defendants propose establishing a claims process through which actual consumer harm could be compensated as an alternative sanction to the FTC's proposal.

**2.      The Basis of Federal Jurisdiction**

This Court has subject matter jurisdiction over the FTC Act claims pursuant to 28 U.S.C.
§§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a) and 53(b).  Further, the Court has
jurisdiction over the FTC's contempt claims pursuant to the 2014 stipulated order in the
*Acquinity* matter and the Court's ongoing power to enforce its own orders.  Stipulated Final
Judgment and Order, *Acquinity*, No. 14-CV-60166 (ECF 132 ("2014 Order")) at 13 (retention of
jurisdiction); *Shillitani v. United States*, 384 U.S. 364, 370 (1966).

**3.      The Pleadings Raising the Issues**

The pleadings raising the issues for trial in the *On Point* matter are:

(i)      FTC's Complaint (*On Point* ECF 1);

(ii)     Defendant Dragon Global Management LLC's Answer and Affirmative Defenses
         (*On Point* ECF 219);

(iii)    Defendant Robert Zangrillo's Answer and Affirmative Defenses (*On Point* ECF
         220);

(iv)     Defendant Arlene Mahon's Answer and Affirmative Defenses (*On Point* ECF
         221);

(v)      Defendant Christopher Sherman's Answer and Affirmative Defenses (*On Point*
         ECF 222);

(vi)     Defendant Brent Levison's Answer and Affirmative Defenses (*On Point* ECF
         223);

(vii)    Defendant Burton Katz's Answer and Affirmative Defenses (*On Point* ECF 224);

(viii)   Defendant Elisha Rothman's Answer and Affirmative Defenses (*On Point* ECF
         225);

(ix)     Corporate Defendants' Answer and Affirmative Defenses (*On Point* ECF 239);
         and

(x)      Defendant Waltham Technologies LLC's Answer and Affirmative Defenses (*On
         Point* ECF 240).

The pleadings raising the issues for the show cause hearing in the *Acquinity* matter are:

(i)      FTC's Motion for an Order to Show Cause Why Defendant Burton Katz and
         Twelve Business Entities Should Not Be Held In Contempt (*Acquinity* ECF 135)
         and Third Party Entity Defendants' Omnibus Response to FTC's Motions for
         Contempt and for a Temporary Restraining Order (*Acquinity* ECF 158); and

(ii)    FTC's Motion for an Order to Show Cause Why Robert Zangrillo, Brent Levison, and Elisha Rothman Should Not Be Held In Contempt (*Acquinity* ECF 137) and responses and replies thereto (*Acquinity* ECF 159, 162, 163, 168).

**4.**    **A List of All Undisposed of Motions or Other Matters Requiring Action by the Court**

The following is a list of all undisposed of motions in the *On Point* matter:

(i)    FTC's Motion for Summary Judgment (*On Point* ECF 454);

(ii)    Defendant Arlene Mahon's Motion for Summary Judgment (*On Point* ECF 406);

(iii)    Defendants Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, On Point Capital Partners LLC, and Dragon Global Holdings LLC's Motion for Summary Judgment (*On Point* ECF 410); and

(iv)    Defendants Burton Katz, Brent Levison, Elisha Rothman, And Christopher Sherman's Second Motion to Dissolve Asset Freeze and Motion to Wind Up Receivership (*On Point* ECF 464).

The following is a list of all undisposed of motions in the *Acquinity* matter:

(i)    FTC's Motion for Summary Contempt Rulings (*Acquinity* ECF 181);

(ii)    Defendants Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC's Motion for Summary Contempt Ruling (*Acquinity* ECF 184);

(iii)    Defendants Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC's Motion for Reconsideration or, in the Alternative, Clarification of Preliminary Injunction Order (*Acquinity* ECF 186);

(iv)    FTC's Motion to Strike and Exclude Contempt Defendants' Advice of Counsel Defense (*Acquinity* ECF 209).  This motion is not yet fully-briefed;

(v)    Defendants Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC's Motion to Strike New Evidence or for Leave to file a Sur-Reply (*Acquinity* ECF 221).  This motion is not yet fully-briefed.

**5.**    **A Concise Statement of Uncontested Facts Which Will Require No Proof at Trial, With Reservations, If Any**

1.    On July 29, 2013, the FTC commenced an action in the U.S. District Court for the Southern District of Florida, Case No. 14-60166-CIV-SCOLA ("Acquinity Action"), against Defendants Acquinity Interactive, LLC; 7657030 Canada, Inc.; Garry Jonas; Revenue Path E-Consulting Private Limited; RevenuePath Limited; Worldwide Commerce Associates, LLC; Sarita Somani; Firebrand Group, S.L., LLC; and Matthew Beucler ("Acquinity Defendants"). ECF No. 1.  Mr. Katz was not named. *Id.*

2.      Just a few months after the FTC filed its Amended Complaint naming Mr. Katz as a defendant, all parties reached a settlement of the FTC's allegations.  ECF Nos. 88; 125.

3.      In connection with the settlement, the Court entered a Stipulated Final Judgment and Order for Permanent Injunction as to Mr. Katz ("the *Acquinity* Order").  ECF No. 132.

4.      Defendant Robert Zangrillo is a private equity, venture capital, and real estate investor.

5.      Mr. Zangrillo identifies and manages investments for both his family office and on behalf of third-party investors, all under the "Dragon Global" brand.

6.      Dragon Global's business model, as an investment firm, is to identify potential investments, and then create special purpose vehicles to make investments in particular ventures.

7.      Defendant Dragon Global Management LLC is the management entity for all of the entities under the Dragon Global brand.

8.      Dragon Global Management LLC also manages, through separate management entities, Dragon Global's real estate investments.

9.      On Point Capital Partners LLC is Dragon Global's special purpose vehicle for investing in On Point Global LLC.

10.     On Point Capital Partners LLC has a minority interest in On Point Global LLC of approximately 27.74%.

11.     On Point Capital Partners LLC, in turn, is owned approximately 97% by Dragon Global Holdings LLC, with third-party investors making up the other approximately 3%.

12.     Dragon Global Holdings LLC is the principal investment vehicle for Mr. Zangrillo's family office.

13.     Dragon Global Holdings LLC is owned by Mr. Zangrillo personally (74%), the AAA 2012 trust (25%), and DGM GP LP (1%).

14.     Dragon Global LLC owns 100% of Dragon Global Management LLC, but holds no other assets and has no operations, employees, or physical presence.

15.     On Point Capital Partners LLC's $3,232,000 of equity in DG DMV, LLC, plus $1,022,323.46 of debt that DG DMV, LLC owed to On Point Capital Partners LLC was contributed to On Point Global LLC.

6.    **A Statement in Reasonable Detail of Issues of Fact Which Remain to be Litigated at Trial**

The parties were unable to reach agreement on a description of the issues of fact which remain to be litigated at trial.  The parties' separate statements of the issues to be litigated are as follows:

**PLAINTIFF**:  The FTC contends the following issues of fact currently remain to be litigated at trial in the *On Point* matter:

(i)     Whether the Entity Defendants made representations that consumers can complete state motor vehicle or state licensing transactions on their websites, and that consumers who submit payment and personal information on their sites will receive a state motor vehicle service or state license.

(ii)    Whether the Entity Defendants made representations that consumers can obtain eligibility determinations for public benefits on their websites, and that consumers who submit personal information will receive eligibility determinations.

(iii)   If the Entity Defendants' sites made the representations described in paragraphs (ii)-(iii):

(a)    whether the representations were likely to mislead a consumer acting reasonably under the circumstances; and

(b)    whether the representations were material.

(iv)    Whether the Entity Defendants operated as a common enterprise.

(v)     Whether the Individual Defendants had authority to control or directly participated in the Entity Defendants' deceptive acts or practices.

(vi)    Whether Defendants' conduct indicates that there is a reasonable likelihood of further violations in the future.

The FTC further contends that the following issues of fact currently remain to be litigated at the show cause hearing in the *Acquinity* matter:

(i)     Whether Burton Katz violated the 2014 Order (*Acquinity* ECF 132).

(ii)    Whether the Corporate Contempt Defendants[2] had notice of the 2014 Order and violated it "in active concert or participation" with Katz.

---

[2] The Corporate Contempt Defendants are On Point Global LLC, On Point Employment LLC, and On Point Guides LLC; Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC; Waltham Technologies LLC; Cambridge Media Series LLC; Issue Based Media LLC; DG DMV LLC; Direct Market LLC; and Bronco Family Holdings LP (together,

(iii)     Whether the Individual Contempt Defendants[3] Brent Levison and Elisha Rothman had notice of the 2014 Order and violated it "in active concert or participation" with Katz.

(iv)     Whether the FTC has shown that the Contempt Defendants "made material misrepresentations, that they were widely disseminated, and that consumers purchased the [Defendants'] product," such that the FTC is entitled to a presumption that consumers relied on the misrepresentations. *McGregor v. Chierico*, 206 F.3d 1378, 1388 (11th Cir. 2000).

(v)      The amount of the gross sales, less refunds, chargebacks, and returns, from the Contempt Defendants' guide-sales or billing sites.

(vi)     The amount of gross revenues from the Contempt Defendants' public benefits or freemium sites.

**DEFENDANTS**:  The Defendants contend that the following issues of fact currently remain to be litigated at trial in the *On Point* matter:

(i)      Whether any Corporate Defendant made false or misleading representations that consumers can complete state motor vehicle or state licensing transactions on their websites, and that consumers who submit payment and personal information on their sites will receive a state motor vehicle service or state license.

(a)      If so, which one(s)?

(ii)     Whether any Corporate Defendant made false or misleading representations that consumers can obtain eligibility determinations for public benefits on their websites, and that consumers who submit personal information will receive eligibility determinations.

(a)      If so, which one(s)?

(iii)    If any Corporate Defendant's site(s) made the representations described in paragraphs (ii)-(iii), for each such Defendant:

(a)      whether the representations were likely to mislead a reasonable consumer acting reasonably under the circumstances; and

(b)      whether the representations were material to the consumer's decision.

(iv)     If any Corporate Defendant's site(s) made the representations described in paragraphs (i)-(iii), if the representations were likely to mislead consumers acting

---

"Corporate Contempt Defendants").  Dragon Global LLC, Dragon Global Management LLC, and Dragon Global Holdings LLC are the "Dragon Contempt Defendants."

[3] The Individual Contempt Defendants are Burton Katz, Brent Levison, and Elisha Rothman (together with the Corporate Contempt Defendants and the Dragon Contempt Defendants, "Contempt Defendants").

reasonably under the circumstances, and if the representations were material to the consumer's decision, whether any of the remaining Corporate Defendants and/or any of the Dragon Entity Defendants operated as a common enterprise with the Corporate Defendant responsible for making such representations.

    (a)    If so, which ones?

(v)    If any Corporate Defendant's site(s) made the representations described in paragraphs (i)-(iii), if the representations were likely to mislead consumers acting reasonably under the circumstances, and if the representations were material to the consumer's decision, whether any of the Individual Defendants had authority to control or directly participated in such Corporate Defendant's deceptive representations as described in paragraphs (i)-(iii).

    (a)    If so, which ones?

(vi)    If any Corporate Defendant's site(s) made the representations described in paragraphs (i)-(iii), if the representations were likely to mislead consumers acting reasonably under the circumstances, and if the representations were material to the consumer's decision, whether any of the Individual Defendants knew about such Corporate Defendant's deceptive representations.

    (a)    If so, which ones?

(vii)    Whether any Defendant's conduct indicates that there is a reasonable likelihood of further violations in the future by that Defendant.

    (a)    If so, which ones?

The Contempt Defendants further contend that the following issues of fact currently remain to be litigated at the show cause hearing in the *Acquinity* matter:

(i)    Whether Burton Katz violated the 2014 Order (*Acquinity* ECF 132).

(ii)    Whether any of the Corporate Contempt Defendants had notice of the 2014 Order.

    (a)    If so, which ones?

(iii)    If any Corporate Contempt Defendant had notice of the 2014 Order, whether such Corporate Defendant violated the 2014 Order by "making, or assisting others in making, expressly or by implication, any false or misleading material representation, including representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service."

    (a)    If so, which one?

(iv)    If any Corporate Contempt Defendant had notice of and violated the 2014 Order, whether the Corporate Contempt Defendants made a good faith and reasonable effort to comply with that Order and any other orders and regulations applicable

to "representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service[,]" including without limitation by seeking and receiving advice of legal counsel regarding the compliance of such representations with the Order and any other orders and regulations applicable thereto.

(v)     If any Corporate Contempt Defendant had notice of the 2014 Order and violated the 2014 Order, whether they did so "in active concert or participation" with Katz.

(a)     If so, which one?

(vi)    Whether the Individual Contempt Defendants Brent Levison and Elisha Rothman had notice of the 2014 Order.

(vii)   If any of the Individual Contempt Defendants had notice of the 2014 Order, whether the Individual Contempt Defendants Brent Levison and Elisha Rothman violated the 2014 Order by "making, or assisting others in making, expressly or by implication, any false or misleading material representation, including representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service."

(viii)  If any Individual Contempt Defendant had notice of and violated the 2014 Order, whether the Individual Contempt Defendants made a good faith and reasonable effort to comply with that Order and any other orders and regulations applicable to "representations concerning the cost, performance, efficacy, nature, characteristics, benefits, or safety of any product or service, or concerning any consumer's obligation to pay for charges for any product or service[,]" including without limitation by seeking and receiving advice of legal counsel regarding the compliance of such representations with the Order and any other orders and regulations applicable thereto.

(ix)    If any of the Individual Contempt Defendants had notice of the 2014 Order and violated the 2014 Order, whether they did so "in active concert or participation" with Katz.

(x)     If the Court determines monetary relief is appropriate, what is the correct calculation for said relief.

**7.     A Concise Statement of Issues of Law on Which There is Agreement**

All parties agree on the following issues of law:

(i)     The following records of regularly conducted activity with a properly executed certification pursuant to Fed. R. Evid. 902(11) are authentic under Fed. R. Evid. 902(11) and are records of a regularly conducted activity under Fed. R. Evid. 803(6).  The parties, however, reserve their right to object to any hearsay within hearsay in these records pursuant to Fed. R. Evid. 805.

    (a)    PX8

    (b)    PX9 Atts. A through N

    (c)    PX10 Atts. A through C

    (d)    PX11 Att. A page 8 through Att. B page 117, Att. C pages 1 through 6, Att. D, Att. E, Att. F pages 1 through 7, and Att. G

    (e)    PX12 Atts. A through F

    (f)    PX50 Att. I

    (g)    FTC-PROD-0040792 - FTC-PROD-0040799

    (h)    FTC-PROD-0040802 - FTC-PROD-0040896

    (i)    PX74 Att. F

(ii)    The following documents the Receiver provided to the Individual Defendants pursuant to the Order Granting Motion for Preliminary Injunction entered in the *On Point* case (ECF 126), including the from certain of the Corporate Defendants' storage devices and cloud storage accounts, are authentic copies of the applicable Corporate Defendant's records, meeting the standard set forth in Fed. R. Evid. 901.  For any such document created by third parties but transmitted to and maintained by Corporate Defendants, the FTC stipulates solely that such document is a true and correct copy of the record the applicable Corporate Defendant received and maintained:

    (a)    OPG000001-OPG000027

    (b)    OPG000029-OPG000047

    (c)    OPG000049-OPG000050

    (d)    000052-000088

    (e)    OPG000090-OPG000152

    (f)    OPG000154

    (g)    OPG000156

    (h)    OPG000159-OPG000160

    (i)    OPG000162-OPG000175

    (j)    OPG000177

    (k)    OPG000181-OPG000184

    (l)    OPG000189-OPG000190

    (m)    OPG000195

(n)     OPG000213-OPG000214

(o)     OPG000216

(p)     OPG000219

(q)     OPG000224- OPG000259

(r)     OPG000261- OPG000262

(s)     OPG000266

(t)     OPG000337- OPG000339

(u)     OPG000341- OPG000349

(v)     OPG000352- OPG000353

(w)     OPG000357- OPG000512

(x)     OPG000514- OPG000521

(y)     OPG000524- OPG000531

(z)     OPG000533- OPG000534

(aa)    OPG000537- OPG000868

(bb)    OPG000870-OPG000907

(iii)    The hard-copy documents the Receiver provided to the Individual Defendants pursuant to the Order Granting Motion for Preliminary Injunction entered in the *On Point* case (ECF 126) are authentic copies of the applicable Corporate Defendant's records, meeting the standard set forth in Fed. R. Evid. 901.  For any such document created by third parties but transmitted to and maintained by Corporate Defendants, the FTC stipulates solely that such document is a true and correct copy of the record the applicable Corporate Defendant received and maintained.

(iv)    To establish liability under Section 5 of the FTC Act, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material to the consumer's decision.

(v)     Under the FTC Act, a corporate entity can be held liable for the conduct of other entities where the structure, organization, and pattern of a business venture reveal a common enterprise or a maze of integrated business entities.  *FTC v. Lanier Law, LLC*, 715 F. App'x 970 (11th Cir. 2017).

All parties except the Dragon Defendants agree on the following issues of law.  The Dragon Defendants believe that the following points relate to issues of fact, to which they are unable to stipulate because the FTC has not provided all of the necessary underlying

information.  The Dragon Defendants will continue to meet and confer with the FTC to try to streamline the presentation of evidence at trial, but for the avoidance of doubt do not believe that a stipulation involving fewer than all of the parties has any force, except possibly with respect to documents that the FTC does not seek to introduce against the Dragon Defendants:

      (i)     The electronically stored information the FTC forensically copied from the business premises of the Corporate Defendants pursuant to the Temporary Restraining Order entered in the *On Point* case (ECF 17), including the Corporate Defendants' storage devices and cloud storage accounts, are authentic copies of the applicable Corporate Defendant's records, meeting the standard set forth in Fed. R. Evid. 901.  For any such document created by third parties but transmitted to and maintained by Corporate Defendants, the stipulating Defendants stipulate solely that such document is a true and correct copy of the record the applicable Corporate Defendant received and maintained.

      (ii)    The hard-copy documents the FTC copied from the business premises of the Corporate Defendants pursuant to the Temporary Restraining Order entered in the *On Point* case (ECF 17) are authentic copies of the applicable Corporate Defendant's records, meeting the standard set forth in Fed. R. Evid. 901.  For any such document created by third parties but transmitted to and maintained by Corporate Defendants, the stipulating Defendants stipulate solely that such document is a true and correct copy of the record the applicable Corporate Defendant received and maintained.

      (iii)    Records of regularly conducted activity with a properly executed certification pursuant to Fed. R. Evid. 902(11) are authentic under Fed. R. Evid. 902(11) and are records of a regularly conducted activity under Fed. R. Evid. 803(6).  The stipulating parties, however, reserve their right to object to any hearsay within hearsay in these records pursuant to Fed. R. Evid. 805.

**8.**    **A Concise Statement of Issues of Law Which Remain for Determination by the Court**

      The parties were unable to reach agreement on a description of the issues of law that remain for determination by the Court.  The parties' separate statements of the issues to be determined are as follows:

      **PLAINTIFF**:  The FTC contends the following issues of law remain for determination by the Court:

      (i)     Whether under the FTC Act, the Individual Defendants are liable for injunctive relief for the Entity Defendants' unlawful acts and practices if they (1) participated directly in the acts or practices, or (2) had the authority to control them.

(ii)     Whether the FTC must show some knowledge to establish individual liability for injunctive relief where it is not seeking a monetary remedy under Section 13(b) of the FTC Act.

(iii)    If the FTC is required to show some knowledge for individual liability for injunctive relief, whether it may satisfy this requirement by showing that the Individuals Defendants (a) had actual knowledge of material misrepresentations, (b) reckless indifference to the truth or falsity of such representations, or (c) an awareness of a high probability of fraud along with an intentional avoidance of the truth.

(iv)     Whether the FTC Act authorizes permanent injunctive relief when a defendant violates any law enforced by the FTC and the defendant's past conduct indicates a reasonable likelihood of further violations in the future.

(v)      Whether the FTC is entitled to the injunctive relief it is seeking for Defendants' violations of the FTC Act.

(vi)     Whether the FTC is entitled to the amount of compensatory contempt sanctions it is seeking in the *Acquinity* matter.

**DEFENDANTS**:  The Defendants contend the following issues of law remain for determination by the Court:

(vii)    Whether, under the FTC Act, an Individual Defendant is liable for any Corporate Defendant's unlawful acts and practices if he or she (1) participated directly in the unlawful acts or practices, or (2) had the authority to control the unlawful acts or practices.  Defendants contend that, in order to demonstrate authority to control, the FTC must demonstrate that the Individual Defendant knew of the unlawful acts or practices and had the authority to control those unlawful acts or practices, but allowed the unlawful acts or practices to proceed.  *See, e.g.*, *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 170 (2d Cir. 2016); *FTC v. IAB Mktg. Assocs., LP*, 746 F.3d 1228, 1233 (11th Cir. 2014).  Defendants contend that, here, the alleged "unlawful acts or practices" are, as stated in the FTC's Complaint:

(a)     Representations "that (1) consumers can complete state motor vehicle or state licensing transactions on their websites, and (2) consumers who submit payment and personal information on their sites will receive a state motor vehicle service or state license" (ECF No. 1 ¶ 171); and

(b)     Representations that "(1) consumers can obtain eligibility determinations for public benefits on Defendants' websites; and (2) that consumers who submit personal information will receive eligibility determinations" (*id.* ¶ 174).

(viii)   Whether the FTC Act requires the FTC to show the Individual Defendants had some knowledge of the Corporate Defendants' deceptive acts or practices to obtain injunctive relief against the Individual Defendants in the *On Point* case. (except as to those Individual Defendants as to whom the FTC is pursuing an

16

"authority to control" theory of individual liability, because "authority to control" requires proof of knowledge of the deceptive practices, as set forth above).

(ix)  Whether, should the Court find that the FTC is required to show knowledge, the FTC may satisfy this requirement by showing that the relevant Individual Defendant (a) had actual knowledge of material misrepresentations, (b) was recklessly indifferent to the truth or falsity of such representations, or (c) was aware of a high probability of material misrepresentations along with an intentional avoidance of confirming the truth of those representations, such that the individual willfully blinded him or herself to the misrepresentation.

(x)  Whether the FTC Act authorizes permanent injunctive relief as to each Defendant.

(xi)  Whether, "[i]n determining whether a permanent injunction is appropriate, the court should consider the egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of his conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *FTC v. Partners In Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1369–70 (S.D. Fla. 2016) (Scola, J.).

(xii)  Whether "[i]njunctive relief should be limited in scope to the extent necessary to protect the interests of the parties," meaning "[i]njunctive relief should be narrowly tailored to fit the specific legal violations adjudged." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003).

(xiii)  Whether the FTC is entitled to the injunctive relief it is seeking.

(xiv)  Whether the FTC is entitled to a presumption of authority to control the unlawful acts or practices based on any Individual Defendant's title or position at On Point Global LLC.

**9.  Trial Exhibits (Other Than Impeachment Exhibits)**

The FTC's Exhibit List, and Defendants' objections, are attached as **Exhibit A**.

The Defendants' Exhibit Lists, and the FTC's objections, are attached as **Exhibits C, E, and G**.

**10.  Trial Witnesses**

The FTC's Witness List is attached as **Exhibit B**.

The Defendants' Witness Lists are attached as **Exhibits D, F, and H**.

**11.  Estimated Trial Time**

The parties anticipate needing 14-21 days for trial.

12.     **Where Attorney's Fees May Be Awarded to the Prevailing Party, an Estimate of Each Party as to the Maximum Amount Properly Allowable**

a.      **Plaintiff's Estimate**

The FTC will not seek attorney's fees from the Defendants.

b.      **Defendants' Estimate**

The Dragon Defendants reserve their right to file a motion for attorney's fees pursuant to 28 U.S.C. § 2412.  Their attorney's fees to date total approximately $3 million.

The Individual Defendants reserve their right to file a motion for attorney's fees pursuant to 28 U.S.C. § 2412.  Their attorney's fees to date total approximately $6,100,000.

Dated:  September 27, 2021                    Respectfully submitted,

*/s/ Sarah Waldrop*
Sarah Waldrop, Special Bar No. A5502583
(202) 326-3444; swaldrop@ftc.gov
Sana Chaudhry, Special Bar No. A5502350
(202) 326-2679; schaudhry@ftc.gov
Christopher Erickson, Special Bar No. A5502434
(202) 326-3671; cerickson@ftc.gov
Federal Trade Commission
600 Pennsylvania Ave. NW, CC 9528
Washington, DC 20580
Facsimile: (202) 326-3197

Attorneys for Plaintiff, Federal Trade Commission

---

/s/ *Kenneth D. Murena*
Kenneth D. Murena (kmurena@dvllp.com)
Jonathan Groth (jgroth@dvllp.com)
Damian & Valori, LLP
1000 Brickell Avenue, Suite 1020
Miami, FL 33131

*Counsel for Corporate Defendants (excluding Dragon Entity Defendants)*

---

18

/s/ *Robert W. Thielhelm, Jr. Esq.*
ROBERT W. THIELHELM, JR., ESQ.
Florida Bar No. 889679
rthielhelm@bakerlaw.com
BAKER & HOSTETLER, LLP
200 S. Orange Ave., Suite 2300
Orlando, Florida 32801
Telephone: (407)649-4000
Facsimile: (407)841-0168

-and-

Jonathan B. New*
jnew@bakerlaw.com
Linda Goldstein*
lgoldstein@bakerlaw.com
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200

William Oxley*
woxley@bakerlaw.com
Meghan Kelly*
mkelly@bakerlaw.com
11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025

Thomas Donaho*
tdonaho@bakerlaw.com
811 Main Street
Suite 1100
Houston, TX 77002


---

/s/ *Marshall Dore Louis*
Marshall Dore Louis
Fla. Bar No. 512680
BOIES SCHILLER FLEXNER LLP
100 SE Second Street, Suite 2800
Miami, Florida 33131
Tel.: (305) 357-8438
E-mail: mlouis@bsfllp.com

Matthew L. Schwartz (pro hac vice)

19

John T. Zach (pro hac vice)
Sabina Mariella (pro hac vice)
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, New York
Tel.: (212) 446-2300
E-mail: mlschwartz@bsfllp.com
       jzach@bsfllp.com
       smariella@bsfllp.com

*Counsel for Robert Zangrillo, Dragon Global LLC, Dragon Global Management LLC, Dragon Global Holdings LLC, and On Point Capital Partners LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 27, 2021, a true and correct copy of the foregoing was served on all counsel of record via CM/ECF.

                                        */s/ Sarah Waldrop*
                                        Sarah Waldrop